1.

U.S. Armed Services Board of Contract Appeals, ASBCA No. 26362, et al.

BEFORE THE
ARMED SERVICES BOARD OF CONTRACT APPEALS
ALEXANDRIA, VIRGINIA 22332-0700

| | | |
|---|---|---|
| Appeal of | : | |
| M. BIANCHI OF CALIFORNIA | : | |
| Under Contract Numbers: | : | ASBCA Nos. 26362, et al. |
| DLA100-79-C-2894<br>DLA100-80-C-2290<br>DLA100-80-C-2972 | : | |

STIPULATION TO BOARD DECISION

The parties to the above-listed appeals agree to stipulate to the following decision by the Board:

"1. The parties agree that Mr. Maurice Bianchi, as the successor to M. Bianchi of California, is entitled to recover $617,500.00 on his claims in the following appeals: ASBCA Nos. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933 and 29934; that the government is entitled to take nothing on its claims in the following appeals: ASBCA Nos. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933 and 29934; that Mr. Bianchi is entitled to interest computed in accordance with Clauses L78 (Disputes (1979 MAR)) of the contracts, at the rates prescribed by the Secretary of the Treasury, under the Renegotiation Act, Public Law 92-41, on the principal amount of $617,500, such interest to run from June 18, 1981 until the date of payment; and that the parties waive their rights to seek reconsideration of this stipulated decision of the Board or to appeal that stipulated decision;

"2. This settlement is without prejudice to Mr. Bianchi's right to pursue any and all Value Engineering Change Proposal Claims under his contracts with DPSC; and

"3. This settlement is without prejudice to Mr. Bianchi's right to pursue an application under the Equal Access to Justice Act to recover whatever legal fees and litigation expenses to which he may be entitled in connection with these claims and appeals. The parties stipulate that the issues of prevailing party and substantial justification will be decided on the basis of the record made at the first trial. The parties agree that the application for legal fees and litigation expenses under the Equal Access to Justice Act will be submitted within thirty days of receipt by Appellant of the agreed-upon settlement payment."

Except as noted above, Appellant and the government agree to stipulate to the dismissal of these appeals with prejudice.

Respectfully submitted,

D. Michael Fitzhugh
D. Michael Fitzhugh
McKENNA, CONNER & CUNEO
1575 Eye Street, N.W.
Washington, D.C. 20005

Attorney for Appellant
M. Bianchi of California

Dated: 9/27/88

Michael J. McGonigle
Chief Trial Attorney
DPSC-GA
2800 South 20th Street
Philadelphia, Pennsylvania 19101-8419

Attorney for the Government

Dated: ______________

"2. This settlement is without prejudice to Mr. Bianchi's right to pursue any and all Value Engineering Change Proposal Claims under his contracts with DPSC; and

"3. This settlement is without prejudice to Mr. Bianchi's right to pursue an application under the Equal Access to Justice Act to recover whatever legal fees and litigation expenses to which he may be entitled in connection with these claims and appeals. The parties stipulate that the issues of prevailing party and substantial justification will be decided on the basis of the record made at the first trial. The parties agree that the application for legal fees and litigation expenses under the Equal Access to Justice Act will be submitted within thirty days of receipt by Appellant of the agreed-upon settlement payment."

Except as noted above, Appellant and the government agree to stipulate to the dismissal of these appeals with prejudice.

Respectfully submitted,

D. Michael FH [signature]
D. Michael Fitzhugh
McKENNA, CONNER & CUNEO
1575 Eye Street, N.W.
Washington, D.C. 20005

Attorney for Appellant
M. Bianchi of California

Dated: 9/27/88

Michael J. McGonigle [signature]
Michael J. McGonigle
Chief Trial Attorney
DPSC-GA
2800 South 20th Street
Philadelphia, Pennsylvania 19101-8419

Attorney for the Government

Dated: 9/27/88

ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of —

M. Bianchi of California

Under Contract Nos. DLA100-79-C-2394, DLA100-80-C-2290, DLA100-80-C-2972

ASBCA Nos. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933, and 29934

APPEARANCES FOR THE APPELLANT: D. Michael Fitzhugh, Esq.
McKenna, Conner & Cuneo
Washington, D. C.

APPEARANCES FOR THE GOVERNMENT: Michael J. McGonigle, Esq.
Chief Trial Attorney
Defense Personnel Support Center (DLA)
Philadelphia, Pennsylvania

OPINION BY ADMINISTRATIVE JUDGE BURG

The parties to the above-listed appeals have agreed to the following stipulation:

> The parties agree that Mr. Maurice Bianchi, as the successor to M. Bianchi of California, is entitled to recover $617,500.00 on his claims in the following appeals: ASBCA Nos. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933, and 29934; that the Government is entitled to take nothing on its claims in the following appeals: ASBCA Nos. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933, and 29934; that Mr. Bianchi is entitled to interest computed in accordance with Clauses L78 (Disputes (1979 MAR)) of the contracts, at the rates prescribed by the Secretary of the Treasury, under the Renegotiation Act, Public Law 92-41, on the principal amount of $617,500, such interest to run from June 18, 1981 until the date of payment; and that the parties waive their rights to seek reconsideration of this stipulated decision of the Board or to appeal that stipulated decision;

G



Exhibit Q

~~000612~~ 1

This settlement is without prejudice to Mr. Bianchi's right to pursue any and all Value Engineering Change Proposal Claims under his contracts with DPSC; and

This settlement is without prejudice to Mr. Bianchi's right to pursue an application under the Equal Access to Justice Act to recover whatever legal fees and litigation expenses to which he may be entitled in connection with these claims and appeals. The parties stipulate that the issues of prevailing party and substantial justification will be decided on the basis of the record made at the first trial. The parties agree that the application for legal fees and litigation expenses under the Equal Access to Justice Act will be submitted within thirty days of receipt by Appellant of the agreed-upon settlement payment.

DECISION

It is the Board's decision, pursuant to 41 U.S.C. § 607(d), § 612(b), and the parties' stipulation and agreement, that the appeals are sustained. In the nature of a consent judgment the Board makes a monetary award in the amount of $617,500 with interest from 18 June 1981.

Dated: 29 September 1988

RUTH C. BURG
Administrative Judge
Member of the Armed Services
Board of Contract Appeals

I concur

WILLIAM J. RUBERRY
Administrative Judge
Acting Chairman, Armed Services
Board of Contract Appeals

I concur

ALAN M. SPECTOR
Administrative Judge
Vice Chairman, Armed Services
Board of Contract Appeals

C90513

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933, and 29934, Appeals of M. Bianchi of California, rendered in conformance with the Board's Charter.

Dated: 30 SEP 1988

JOE D. MILLER
Recorder, Armed Services
Board of Contract Appeals

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Application Under Equal Access to Justice Act -- M. Bianchi of California | ) | ASBCA Nos. 26362 26363 26364 26365 26366 26505 26506 26513 26642 29932 29933 29934 |
| Under Contract Nos. DLA100-79-C-2894 DLA100-80-C-2990 DLA100-80-C-2972 | ) | |

APPEARANCE(S) FOR THE APPLICANT: Michael A. Hordell, Esq.
Petrillo & Hordell
Washington, D.C.

APPEARANCE(S) FOR THE GOVERNMENT: Alvin M. LaCoste, Esq.
Wayne J. Bober, Esq.
Trial Attorneys
Defense Personnel Support Center (DLA)
Philadelphia, PA

OPINION BY ADMINISTRATIVE JUDGE BURG

On 29 September 1989 the Board issued its opinion on many of the issues involved in this application for attorney's fees and expenses under the Equal Access to Justice Act, 5 U. S. C. § 504, and remanded the matter to the parties for negotiation in accordance with that decision (ASBCA No. 26362, et al, 90-1 BCA ¶ 22,369). The parties were unable to reach agreement on quantum. Since a settlement conference with the parties and the presiding judge also proved unsuccessful, the Board will resolve quantum based upon the extensive documentation filed by the parties.

In our decision on the merits of this application, we set forth a detailed discussion about the contracts involved in the dispute, the settlement of which resulted in this application. We see no necessity for a detailed repetition in this opinion. We concluded (1) that the Government's position was not substantially justified in failing to grant applicant an extension of time for imposition of a first article inspection requirement, (2) that the Government's position was substantially justified as to the pattern problems arising under these contracts, (3) that the Government was not substantially justified in refusing to extend delivery dates under Contract 2894, so that the contractor was forced to accelerate production under that contract, (4) that the Government was not responsible for costs incurred in prioritizing Contract 2990 before Contract 2894, (5) that applicant is limited in its recovery of attorney fees to a maximum of $75.00 per hour, (6) that the parties should negotiate the impact on legal fees caused by the applicant's change of attorneys three (now four) times during the course of this litigation and the impact of assignment and reassignment

of Government counsel numerous times during the course of this litigation, (6) that the parties should negotiate whether any discovery in these appeals was unnecessary and should not be subject to reimbursement to applicant, (7) that fees and expenses for Mr. Bianchi were not reimbursable under this application, (8) that, under current regulations, expert witness fees are limited to $33.53 per hour plus travel and per diem expenses, (9) that professional accounting fees and expenses should be recalculated limiting professional fees to $75.00 per hour and eliminating any clerical services, such as word processing or typing which are considered office overhead expenses typically subsumed in professional hourly rates, and (10) that reasonableness of the number of accounting hours claimed should be negotiated by the parties.

When the parties were unable to resolve the quantum by negotiation, they submitted extensive briefs and documentation setting forth the specific amounts and items upon which they were unable to agree. Following the settlement conference, applicant made another submission in which it made additional adjustments to reflect matters raised by the Government. Applicant's revised claim is $925,441.83, reduced from its original claim of $1,998,720.15 prior to our opinion on entitlement. We shall only discuss those items still in dispute between the parties.

Allocation and Reasonableness of Legal Fees

The major area of dispute between the parties concerns the allocation of the fees and expenses among the various matters involved in these appeals. As recited in our prior opinion, only five of the numerous issues before the Board in these appeals were the subject of a hearing and the appeals were settled, reserving several matters, prior to issuance of a formal decision on the litigated issues. One reservation was:

> c. [T]his settlement is without prejudice to Mr. Bianchi's right to pursue an application under the Equal Access to Justice Act to recover whatever legal fees and litigation expenses to which he may be entitled in connection with these claims and appeals. The Parties stipulate that the issues of prevailing party and substantial justification will be decided on the basis of the record made at the first trial.

The parties are not in agreement as to the impact of this reservation on allocation of allowable fees and litigation expenses. The Government's position is that allocation should be based solely on our determinations of prevailing party and substantial justification on the litigated issues without any consideration of the issues which were not tried but which were part of the settlement. Therefore, it proposes that the allocation should be on some objective basis such as the ratio of proposed findings of fact in applicant's post-hearing brief for issues in which we concluded the Government's position was substantially justified or applicant was not the prevailing party (80 percent) or the ratio of the number of exhibits introduced into evidence at the hearing using the same approach (which calculates to approximately 74 per cent).

Applicant maintains that this was not the intent of the parties in entering into the reservation set forth above and that the allocation must take into consideration all issues which were included in the settlement and the various stages at which the fees and expenses were incurred. Neither of the present Government counsel participated in the actual settlement of these appeals on the merits or in the drafting of the settlement agreement or release language set forth above. We conclude that the Government's proposal for an allocation on either basis set forth above or some similar basis is too mechanical for the resolution of this issue. It also fails to recognize substantial Government claims totalling over $2,500,000 (for excess costs of reprocurement, recovery of alleged unliquidated progress payments, costs of unreturned Government furnished material, and reduction in price for delivery of substandard items) which were not pursued by the Government as a result of the settlement of these appeals. We, therefore, conclude that recovery of fees and expenses is not to be based solely on our determinations concerning the litigated issues.

Nor can we agree with the Government that the applicant has failed to properly itemize or segregate its application on the basis of the various issues or that the amounts charged are unreasonable. This is not a situation where the applicant has presented us with unsupported figures. The application is supported with in excess of a file drawer of data, including detailed, itemized statements from each of the law firms and experts involved in these appeals. To require the depth of detail demanded by the Government would require that an entire new accounting system be developed for any appeal which would potentially have an application filed under the Equal Access to Justice Act and, in our view, would go far beyond the types of detail necessary for us to reach a jury verdict. We recognize that the most difficult types of allocation involve situations where the parties have settled their disputes, but that does not preclude recovery under the Equal Access to Justice Act.

In our decision on the merits of this application, we indicated that the claims involved in the underlying appeals were intertwined and difficult of segregation. By the same token, we cannot use any of the mechanistic approaches suggested by the Government in allocating legal fees and expenses. Nor were many of the legal fees and expenses incurred capable of the type of billing segregation which the Government argues should have been maintained. Applicant, recognizing that some allocation must be made, has suggested the total amount it seeks in this application be reduced by $100,000. There is no rationale or basis for using this amount to reach a jury verdict and we decline to do so.

The problems involved in allocating between the fees and expenses which are recoverable under EAJA is the reason that the parties were urged to negotiate a settlement based on our entitlement opinion. Their failure to do so will not preclude this Board from reaching a jury verdict since the detailed and carefully prepared submittals by the applicant do give us a basis for reaching such a verdict.

Analysis of the services of each of the three law firms which represented the applicant up to and including the final briefings of quantum under this application makes it possible to reach a jury verdict for that portion of the legal fees and expenses which we conclude are recoverable under this application. Applicant's first legal counsel, Paul, Gordon & Friedland, was involved in early stages of the appeals. This included the initial discovery, including depositions, and the designation of issues which the parties considered the major areas of dispute. As previously noted, it was anticipated at the time of such designation that, if those issues were resolved, the parties would probably be able to negotiate settlements as to the remainder. A great amount of time was spent reviewing documentary evidence - a necessary exercise before one could even begin to determine to which issue or issues particular evidence pertained. This discovery was not limited to the issues which did go to hearing but encompassed all of the issues, including the Government claims of $2.5 million. We estimate that about half of this firm's efforts pertained to matters as to which appellant was the prevailing party and the Government's position was not substantially justified. Therefore, we conclude that appellant is entitled to recover 50 per cent of allowable legal fees for the services of Paul, Gordon & Friedland.

That firm was replaced prior to the oral hearing of the litigated issues by the legal firm of Rogers and Wells. At its request, an additional issue was added and it prepared, tried and briefed the litigated issues and attempted to negotiate a settlement before and after post-hearing conferences concerning probable outcome of the litigated issues. Since most of its efforts concerned the issues for which we have reached conclusions as to who was the prevailing party and for which the Government's position was or was not substantially justified, we conclude that - based on our earlier decision as to prevailing party and substantial justification - 30 per cent of the allowable legal fees of Rogers & Wells are recoverable under this application.

Applicant was then represented by McKenna, Conner & Cuneo, who became involved after unsuccessful settlement negotiations by the parties after hearing, briefing and post-hearing negotiations. They were involved in settlement negotiations with and without the presiding judge, preparation for trial of all remaining issues, including quantum, ultimate settlement of the appeals and preparation and presentation of the application for legal fees and litigation expenses for these appeals. The applicant argues that all of the efforts of McKenna, Conner & Cuneo were after litigation and briefing and were directed toward preparation for hearing of the remaining issues and of quantum and the fees and expenses involved in this application. However, recovery can be had only for that portion of the fees and expenses involved in this application in which applicant is considered the prevailing party and the Government's position was not substantially justified. It is for this reason that we do not agree with applicant's segregation of expenses into those incurred before 30 June 1986 (the date of the last submittal of proposed findings of fact following the oral hearing

on a portion of the issues involved in the appeals) and those incurred after that date or that all time in compiling and submitting the EAJA claim is recoverable. We conclude - again based on our estimate of what work pertained to matters as to which appellant was the prevailing party and the Government's position was not substantially justified - that the applicant is entitled to recover 75 per cent of the allowable legal fees of McKenna, Conner & Cuneo.

In summary, we have reached the following conclusions regarding the percentage of allowable fees which should be recovered by applicant:

| | |
|---|---|
| Paul, Gordon & Friedland | 50% |
| Rogers & Wells | 30% |
| McKenna, Conner & Cuneo | 75% |

The Government further argues that applicant's fees are unreasonable since they include additional hours generated because of two changes in counsel by applicant and because of unnecessary depositions taken by appellant. The hours are challenged in the abstract. No specific number of hours are designated. Because of the number of appeals and the complexity of issues presented, we conclude that the number and length of depositions was not unreasonable. To the extent that there might have been additional billable hours caused by change in counsel, they have been included in the jury verdict percentages set forth above. The Government also challenges estimated legal and accounting fees for additional services anticipated as a result of this opinion. The application includes five hours for such legal and six hours for such accounting fees. Since the applicant again changed its counsel after closing of the record for this application, we have allowed one hour for a telephone conference call between counsel and the presiding judge on this matter on 12 July 1990, and have reduced the total fees for McKenna, Conner & Cuneo by four hours ($500.00), resulting in claimed legal fees of $160,598 for that firm.

The hours claimed have been adjusted by applicant to reflect the other amounts which the Government has challenged. We see no need to set them forth here since they are clearly delineated in the schedules attached to applicant's submittal of 3 May 1990. Total legal fees, therefore, are as follows:

| | | |
|---|---|---|
| Paul, Gordon & Friedland | $190,725.00 x 50% = | $95,362.50 |
| Rogers & Wells | 174,412.50 x 30% = | 52,323.75 |
| McKenna, Conner & Cuneo | 160,598.00 x 75% = | 120,448.50 |
| | TOTAL | $268,134.75 |

Expenses

Applicant has conceded certain adjustments made in expenses which it claims. Applying these adjustments and allocating the expenses on the same basis that legal fees have been allocated, we conclude applicant is entitled to recover expenses as follows:

| | | |
|---|---|---|
| Paul, Gordon & Friedland | $50,538.31 x 50% = | $25,269.16 |
| Rogers & Wells | 90,266.96 x 30% = | 27,080.09 |
| McKenna, Conner & Cuneo | 13,584.00 x 75% = | 13,938.00 |
| | TOTAL | $66,287.25 |

Paralegal Expenses

The application contains paralegal fees billed by Paul, Gordon & Friedland and by McKenna, Conner & Cuneo. No paralegal fees were billed by Rogers & Wells. The paralegal engaged by Paul, Gordon & Friedland, was an independent contractor who was paid $25 per hour by the firm and the Government does not challenge that the amount claimed of $32,540 represents paralegal costs to that firm.

Paralegal fees for McKenna, Conner & Cuneo were billed at $75 per hour. Recognizing the limitation to recovery under EAJA for cost to the law firm for its paralegals by this and other Boards, in its initial application, paralegal fees for 689.5 hours were included at a rate of $48 per hours for a total of $33,321.70. In its 15 March 1990 submittal (after our decision on entitlement) the Government challenged this hourly rate and argues that the hourly rate should be based on the annual salary paid the paralegal ($26,600) plus pension contribution, FICA and bonus ($6,650) divided by annual working hours of 2080. This calculates to $16 per hour. The Government, therefore, argues that the allowable amount should be $11,032 rather than the amount claimed by applicant. We do not agree with the applicant that the Government's challenge of the hourly rate was untimely.

The difference results from inclusion of indirect costs in the hourly rate computed based on the method of allocating indirect costs and by basing the hourly rate on 1300 billable hours per paralegal per year used for accounting and budgeting purposes by the McKenna, Conner & Cuneo, East Coast Practice Group. The Government argues that these expenses should be subsumed in the legal fees not as part of paralegal costs. We conclude that it is appropriate to include indirect costs as part of the cost to the law firm of its paralegals since they generate indirect costs for the firm. Nor do we consider the method of allocation of these indirect costs unreasonable.

We see no necessity to recite in detail the method by which the indirect costs were determined (App.'s Suppl. Brief in Support of Its Application for Fees Pursuant to the EAJA, 16 Feb. 1990, Exh. 3). The indirect costs applied in this instance are less than half of the total figure included in the claim for the hourly paralegal rate. The Government has not disputed the underlying figures or method of computation and we conclude that they appear reasonable. By the same token, the utilization of 1300 hours per

year rather than 2000 is acceptable to us. The amount of unbillable time during the year becomes part of overhead for an employee and is an appropriate part of the cost to the firm for the paralegal's services. We, therefore, hold that applicant is entitled to reimbursement under EAJA for the proportionate amount of paralegal hours which we have concluded should be allowed for services of the particular law firm involved.

| | | |
|---|---|---|
| Paul, Gordon & Friedland | $32,540.00 x 50% = | $16,270.00 |
| McKenna, Conner & Cuneo | 33,321.70 x 75% = | 24,991.28 |
| | TOTAL | $41,261.28 |

## Accounting Expenses

Applicant includes accounting fees and expenses from three sources in its claim. The charges have been adjusted to reflect the limitation of $75 per hour maximum allowable fees and to eliminate any duplication of charges where listed both directly and included in the invoices of various legal firms, as follows:

| | | |
|---|---|---|
| Gene G. Burnhurst, Accountant | 1,366.00 hrs(1982-84) | $15,160.00 |
| H.K. Grimshaw | | |
| 1983 | unk. hrs | 356.00 |
| 1987 | unk. hrs | 275.00 |
| Peter Elliott Accountancy Corp. | | |
| 1983 | 145.30 hrs | 8,894.00 |
| 1984 | 305.00 hrs | 18,368.03 |
| 1985 | 109.75 hrs | 7,628.15 |
| 1986 | 25.25 hrs | 1,872.75 |
| 1987 | 156.50 hrs | 12,839.16 |
| 1988 | 276.50 hrs | 22,131.59 |
| 1989-90 | 307.25 hrs | 18,640.70 |

The Government has challenged some of the expenses of the Peter Elliott Accountancy Corp., most especially invoices dated 5, 18 and 24 April 1990. Each of these invoices is attached to applicant's submittal of 3 May 1990 and indicates it was related to updating the EAJA claim or was related to attending the settlement conference at this Board. The Government also argues that Mr. Elliott's presence was not required at the settlement conference so that all fees and expenses related to his attending that conference should be disallowed as unreasonable. We do not agree. The conference was an attempt to negotiate the quantum to be paid under EAJA based on the Board's entitlement decision since the parties had been unable to resolve the matter. While it was unsuccessful, the presence of the accountant who prepared the detailed schedules which were the basis for the quantum was both understandable and reasonable. The Government also challenges that 17 hours were spent revising the EAJA claim for final submission on the theory that it was prepared using a "lotus" type spreadsheet software program which the Government argues a clerk could have modified in two or three hours. We do not consider this argument by counsel in his letter of 16 May 1990 a sufficient basis for holding the charge unreasonable. The claim summary comprised 22 printed pages of spread sheets with a number of changes on a line by line basis to adjust for corrections

and limitations on hourly rates. Corrections consisted of more than the mechanical correction of spread sheets. Someone had to review and note the corrections as well as review the corrected schedules. The Government also challenges the previously noted six hours which are included in the submittal as a charge for Peter Elliott Accountancy Corp. for review and finalization of the quantum portion of this application after this opinion issues. We have no authority to allow recovery for expenses which may be incurred in the future and have eliminated them from the claim, thereby reducing the 1989-90 Peter Elliott Accountancy Corp. fees from $18,640.70 to $18,190.70. We, therefore, conclude that the amounts incurred for accounting services were reasonable and, in the nature of a jury verdict, allowable in accordance with the percentages allocated for legal services for the similar time frames, as follows:

| | | |
|---|---|---|
| Gene G. Burnhurst, Accountant | $15,160.00 @ 50% | $ 7,580.00 |
| H.K. Grimshaw | | |
| 1983 | 356.00 @ 50% | 178.00 |
| 1987 | 275.00 @ 75% | 206.25 |
| Peter Elliott Accountancy Corp. | | |
| 1983 | 8,894.00 @ 50% | 4,447.00 |
| 1984 | 18,368.03 @ 50% | 9,184.02 |
| 1985 | 7,628.15 @ 30% | 2,288.45 |
| 1986 | 1,872.75 @ 30% | 561.83 |
| 1987 | 12,839.16 @ 75% | 9,629.37 |
| 1988 | 22,131.59 @ 75% | 16,598.69 |
| 1989-90 | 18,190.70 @ 75% | 13,643.03 |
| | TOTAL | $64,316.64 |

Expert Witness Fees and Expenses

In our entitlement opinion on this application we concluded that, pursuant to EAJA 5 U.S.C. § 504(b)(1)(A) and DFARs 37.104-70(1), compensation of expert witnesses could not exceed the highest rate for grade GS-15, which, as of 1987, was $33.53 per hour. Applicant argues that this rate should be modified by reducing the number of annual hours in the divisor to 1552 hours (instead of the 2087 used) by elimination of vacation time, holidays, sick leave, and an "efficiency quotient" and then increasing the result for indirect expenses and support. This results in an hourly fee of $75, which amount it has used in its revised claim. Applicant paid its experts, and the Government expert whom it deposed, at varying amounts between $100 and $150 per hour. The Government argues that the amount should be limited to the $33.53 hourly rate cited in our prior opinion.

The relevant portion of the statute provides:

> (A) "fees and other expenses" includes the reasonable expenses of expert witnesses....except that (1) <u>no expert witnesses shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the agency involved</u>....[emphasis added]

8

After issuance of our opinion on entitlement, the Government admitted that it paid the expert it had contracted to use in the oral hearing on the remaining issues and on quantum in these appeals, at an hourly rate in excess of the $75 hourly rate included by applicant in its revised claim. (The presumption that the Government's payment of its expert was proper and appropriate has not been rebutted.) */ We, therefore, modify our prior opinion and conclude that, pursuant to the statute set forth above, the amount of $75 per hour claimed by applicant is allowable since it does not exceed "the highest rate of compensation for expert witnesses paid by the agency involved."

Applying the percentages which we have concluded should be utilized on the basis of the type of activities involved in the various time frames, we conclude that applicant is entitled to recover for fees and expenses of expert witness as follows:

| | | |
|---|---|---|
| Pollack & Pollack, Inc. | $ 6,839.02 @ 75% | $ 5,129.27 |
| Magnal Limited | 59,840.64 @ 50% | 29,920.32 |
| Dole & Associates | 900.00 @ 75% | 675.00 |
| | TOTAL | $35,724.59 |

Other Expenses

In addition to its claim for reimbursement of expenses incurred in deposing the Government expert (set forth above under "Dole & Associates"), applicant claims $84 for Pamela Gerkin. That invoice indicates 7 hours spent for "legal billing analysis." While not specifically challenged by the Government, we do not consider this amount sufficiently identified as to be allowable under this EAJA application.

Summary

In summary, we conclude that allowable attorneys' fees and expenses under this EAJA application are as follows:

| | |
|---|---|
| Legal Fees | $253,134.75 |
| Legal Expenses | 66,287.25 |
| Paralegal Expenses | 41,261.23 |
| Accounting Expenses | 64,316.64 |
| Expert Witness Expenses | 35,724.59 |
| TOTAL | $475,724.51 |

*/ The Government was ordered to submit a copy of the contract with its expert or an affidavit indicating the hourly rate paid its expert. It has failed to do so. Appellant paid the expert $100 per hour for his deposition.

Dated: 20 September 1990

RUTH C. BURG
Administrative Judge
Member of the Armed Services
Board of Contract Appeals

I concur

WILLIAM J. RUBERRY
Administrative Judge
Acting Chairman, Armed Services
Board of Contract Appeals

I concur

V. JOHN RIISMANDEL
Administrative Judge
Vice Chairman, Armed Services
Board of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals on an application for fees and other expenses incurred in connection with ASBCA No. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933 and 29934, Application of M. Bianchi of California, rendered in accordance with 5 U.S.C.A. § 504.

Dated: 25 SEP 1990

for EDWARD S. ADAMKEWICZ
Recorder, Armed Services
Board of Contract Appeals