2.

Bank of America v. United States, Bianchi,
No. 90-3961C (Fed. Cl.),
Nos. 93-5059, 93-5060 (Fed. Cir.)

# In the United States Claims Court

No. 90-3961C

(Filed: October 16, 1992)

RECEIVED OCT 20 1992

* * * * * * * * * *

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant and Third Party Plaintiff,

v.

MAURICE L. BIANCHI,

Third Party Defendant.

* * * * * * * * * *

THIS OPINION WILL NOT BE PUBLISHED IN THE UNITED STATES CLAIMS COURT REPORTER.

Michael L. Burack, Washington, D.C., attorney for plaintiff.

Michael A. Hordell, Washington, D.C., attorney for third-party defendant.

Mark A. Melnick, United States Department of Justice, Washington, D.C., for defendant.

OPINION

HODGES, Judge.

Plaintiff Bank of America (Bank) sues to recover money erroneously paid to Bianchi by Defendant. All parties move for summary judgment. We rule for Defendant.

FACTS

During 1979 and 1980 the Defense Logistics Agency (Defendant) awarded three contracts to third-party defendant (Bianchi) to manufacture coats and jackets. After award, Bianchi assigned the proceeds and rights associated with each contract to the Bank in return for financial backing. Following each assignment, the Bank notified the appropriate contracting officer and disbursing officer in accordance with the Anti-Assignment Act. 31 U.S.C. § 3727 (1988), 41 U.S.C. § 15 (1988). Each notification was acknowledged.

In late 1980 Bianchi applied to the Bank for a $500,000 loan and signed a security agreement granting the Bank "all rights to the payment of money now owned or hereafter acquired by Borrower, . . . including, but not limited to, accounts, contract rights, chattel paper, instruments and general intangibles . . ." (collateral). The Small Business Administration (SBA) insured the loan up to 90% of its value in return for a lien on the collateral.

In July 1981 SBA insured an additional $50,000 loan from the Bank to Bianchi for working capital. SBA took as security for the new loan "assignment of proceeds arising from claims against the Government and or the Defense Logistics Agency."

Bianchi defaulted on the loans in August and October 1981, and the Bank demanded payment from SBA on its loan guarantees in December. In return for SBA's payment, the Bank assigned all of its rights in both loans to SBA, including its first lien rights to the collateral.

Bianchi's contracts with Defendant resulted in a contract dispute which was appealed to the Armed Services Board of Contract Appeals. In 1988, the Board directed Defendant to pay Bianchi $1.1 million. Defendant paid the money to Bianchi as ordered, notwithstanding the various assignments of rights associated with the contracts. Defendant realized its error, and in October 1990 it sent a letter to Bianchi demanding that he repay the money. Bianchi refused. Believing that it was entitled to the judgment paid Bianchi, the Bank initiated this suit against the Government in November 1990. Defendant impleaded Bianchi as third-party defendant.

## DECISION

### 1. Summary Judgment

Summary judgment is proper when no genuine issues of material fact are presented. The mere existence of some factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). We have considered each party's motion for summary judgment on its own merits, and we find summary judgment to be proper here.

### 2. Bianchi Assignments to Bank

Bianchi alleges that his original assignments to the Bank were not valid because they were made under duress and because they were claims against the government which did not meet the requirements of the Anti-Assignment Act. 31 U.S.C. § 3727 (1988), 41 U.S.C. § 15 (1988). However, a party opposing summary judgment must set

forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 248; Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Bianchi has not met that burden with his broad allegations of fraud and duress. We need not address unsupported allegations made over ten years after the assignments.

The three original assignments of contractual rights by Bianchi to the Bank meet all of the requirements of the Anti-Assignment Act. The Bank (1) qualified as a financial institution, (2) loaned or made available money to Bianchi for the performance of the contracts, and (3) provided appropriate notice to the contracting officers and disbursing officers associated with each contract. Manufacturers Hanover Trust Co. v. United States, 590 F.2d 893 (Ct. Cl. 1978). Bianchi's assignments to the Bank were therefore effective.

3. Defendant's Payment to Bianchi

Bianchi asserts that Defendant is not entitled to repayment of the money. However, the Government may recover funds that its agents have wrongfully, erroneously, or illegally paid. American Nat'l Bank and Trust v. United States, 23 Cl. Ct. 542, 547 (1991); United States v. Wurts, 303 U.S. 414, 415 (1938). The Government cannot be estopped from recovering by the mistakes of its officers or agents. American Nat'l Bank, 23 Cl. Ct. at 547. Ordinarily, the Government may recover its erroneously paid funds without regard to the passage of time. Wurts, 303 U.S. at 416. In this case, Defendant made an erroneous payment to Bianchi, and Bianchi must return the payment.

Bianchi argues that the six-year Statute of Limitations has run since the claim first

accrued -- when Bianchi defaulted on the loans. This argument assumes that Defendant is suing Bianchi directly in an attempt to set off Bianchi's debt with the judgment. This court is not deciding a set-off question and cannot dictate what Defendant will do with the money once it is returned. We find only that Defendant paid Bianchi erroneously and is entitled to repayment. Defendant did not pay the money to Bianchi until 1988, so we cannot agree that the Statute of Limitations has run.

4. Bank Assignments to SBA

The Bank argues that it is entitled to payment of the money because its assignments to SBA violated the Anti-Assignment Act. We find that the Anti-Assignment Act does not apply to the agreements between the Bank and SBA.

The Anti-Assignment Act is designed to protect the Government from secret assignment arrangements, to prevent possible multiple claims, and to make unnecessary the investigation of alleged assignments. American Nat'l Bank, 23 Cl. Ct. at 546 (1991). The Act does not address an assignment to a Government entity, and it should not be applied against SBA in this case.

The assignments from the Bank to SBA were valid. We must rely on the language of the original loan agreements, the notes, and the Security Agreement, all of which the Bank assigned to SBA. By paying the agreed 90% of the defaulted loans, SBA acquired all rights to those loans, and Bianchi became indebted to SBA. The Bank has received all that it bargained for and has no further claim against Defendant.

### 5. Interest

The Government seeks interest on the money from November 1988 when it erroneously paid Bianchi. See Astro-Space Labs., Inc. v. United States, 470 F.2d 1003, 1020 (Ct. Cl. 1972) (court has discretion to award interest). However, the erroneous payment resulted from Defendant's own negligence, and Defendant did not request return of the money until it sent the October 1990 letter to Bianchi. Interest on the erroneous payment is therefore denied.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED. Plaintiff's motion for summary judgment is DENIED. Third-party defendant's cross-motion for summary judgment is DENIED. Third-party defendant is ordered to repay the Government the sum of $1,141,220.83. The Clerk will dismiss plaintiff's complaint. No costs.

Mark Melnick

United States Court of Appeals for the Federal Circuit

RECEIVED
1994 APR 29 P 1:04
OFFICE OF MGMT INFORMATION
CIVIL DIVISION

OPINION ANNOUNCING
JUDGMENT OF THE COURT

OPINION FILED AND JUDGMENT ENTERED: April 29, 1994

The attached opinion announcing the judgment of the court in your case was filed today. The judgment was entered pursuant to Rule 36. The mandate will be issued in due course.

Costs are taxed against the Appellee in favor of the Appellant and Cross-Appellant under Rule 39. The party entitled to costs is provided a bill of costs form and an instruction sheet with this notice.

The parties are encouraged to stipulate to the costs. A bill of costs will be presumed correct in the absence of a timely filed objection.

Costs are payable to the party awarded costs. If costs are awarded to the government, they should be paid to the Treasurer of the United States. Payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se. Payment of costs should not be sent to the court. Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise. Sanctions should be paid in the same way as costs.

Exhibits and visual aids shall be promptly retrieved by the party that lodged them with this court.

FRANCIS X. GINDHART
Clerk

cc: MAURICE L. BIANCHI
MICHAEL L. BURACK, MARK A. MELNICK

BANK AMER NATL TRUST V US, 93-5059
(CFC - 90-3961C)

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

# United States Court of Appeals for the Federal Circuit

93-5059,-5060

BANK OF AMERICA NATIONAL TRUST and SAVINGS ASSOCIATION,

Plaintiff/Cross-Appellant,

v.

THE UNITED STATES,

Defendant/Third Party Plaintiff-Appellee,

v.

MAURICE L. BIANCHI,

Third Party Defendant-Appellant.

Michael L. Burack, Wilmer, Cutler & Pickering, of Washington, D.C., argued for plaintiff/cross-appellant. With him on the brief were Eric R. Markus and Lydia R. Pulley.

Mark A. Melnick, Attorney, Commercial Litigation Branch, Department of Justice, of Washington, D.C., argued for defendant/third party plaintiff-appellee. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General and David M. Cohen, Director. Also on the brief were Sandra Guydon, Office of the Philadelphia, Pennsylvania and Joel K. Meese, Small Business Administration, of counsel.

Michael A. Hordell, Petrillo & Hordell, of Washington, D.C., argued for Third Party Defendant-Appellant. With him on the brief was Eric L. Lipman, of counsel. Mr. Hordell and the law firm of Petrillo & Hordell, withdrew as counsel of record with the courts permission before the matter was decided.

Appealed from: U.S. Court of Federal Claims

Judge Hodges, Jr.

United States Court of Appeals for the Federal Circuit

93-5059,-5060

BANK OF AMERICA NATIONAL TRUST and
SAVINGS ASSOCIATION,

Plaintiff/Cross-Appellant,

v.

THE UNITED STATES,

Defendant/Third Party
Plaintiff-Appellee,

v.

MAURICE L. BIANCHI,

Third Party Defendant-Appellant.

---

DECIDED: April 29, 1994

---

Before RICH, MAYER, and LOURIE, Circuit Judges.

PER CURIAM.

Maurice L. Bianchi appeals the judgment of the United States Court of Federal Claims,[1] No. 90-3961C, entered pursuant to the grant of summary judgment in favor of the United States, and the denial of his cross-motion for summary judgment. Bank of America likewise appeals the court's grant of summary judgment in favor of the United States against it, and the denial of its motion for summary judgment. We reverse in part and vacate in part.

---

[1] The United States Claims Court was renamed the United States Court of Federal Claims on October 29, 1992. Federal Courts Administration Act of 1992, Pub. L. No. 102-572, § 902(a), 106 Stat. 4506, 4516.

## Background

The following facts are not disputed. In June 1979, Bianchi executed a security agreement in favor of Bank of America (bank), granting it a security interest in his property, including after-acquired accounts and contract rights. This interest secured Bianchi's existing obligations to the bank, as well as future loans and advances by the bank to Bianchi.

During 1979 and 1980, the Defense Logistics Agency (DLA) awarded three contracts for military clothing (numbers DLA100-79-C2894, DLA100-80-C2290, and DLA100-80-C2972) to M. Bianchi of California, a sole proprietorship of Maurice Bianchi. Shortly after the award of each contract, Bianchi assigned the proceeds and rights associated with each contract to the bank as security for loans to finance Bianchi's performance of the contracts. The bank notified the appropriate contracting and disbursing officers in accordance with the Assignment of Claims Act, 31 U.S.C. § 3727 (1988), 41 U.S.C. § 15 (1988); the government acknowledged and accepted each assignment. Thereafter, the bank received payments from the government of sums due Bianchi under the contracts.

Later in 1980, Bianchi and the bank sought to restructure their relationship, applying to the Small Business Administration (SBA) for a 90 percent guarantee on an additional $500,000 loan to Bianchi. The application disclosed the bank's preexisting lien position. The SBA approved the application, and the bank issued the loan; the collateral included a third lien on all receivables, including contract rights. Bianchi executed another security

agreement, again granting the bank a security interest in all rights to payment of money owned or thereafter acquired by him. In July of 1981, the bank made another 90 percent SBA guaranteed loan to Bianchi of $50,000. The new loan was covered by the future advances clause of the December 1980 agreement.

Soon thereafter, DLA terminated two of the contracts for default. Bianchi defaulted on the loans, including both the SBA guaranteed loans and the bank's prior non-guaranteed loans. In December 1981, the bank applied to the SBA for payment on the guarantees, in return for which it assigned its interest in the guaranteed loans to the SBA.

In 1981, Bianchi instituted a series of claims under the contracts before the Armed Services Board of Contract Appeals (board). In September 1988, DLA and Bianchi agreed to settle the claims. Under the settlement agreement, DLA agreed to pay $617,500 plus interest directly to Bianchi. The government paid Bianchi a total of $1,141,220.83.

In June 1990, the bank requested that the government pay it the settlement amount under the Assignment of Claims Act. On October 23, 1990, DLA wrote to Bianchi, demanding repayment of the money, acknowledging that payment should have gone to the bank under the assignment. Bianchi made no repayment, and the government took no further action until the bank filed this suit.

On November 21, 1990, the bank filed its complaint against the government in the United States Court of Federal Claims seeking payment of the $1,141,220.83 as assignee under the Assignment of

Claims Act. The government asserted as an affirmative defense the SBA's superior right to the money paid to Bianchi. On April 16, 1992, the government filed a third-party complaint against Bianchi seeking return of the money paid under the settlement.

All parties moved for summary judgment. The court granted summary judgment in favor of the government against the bank, holding that the bank had assigned its rights to the SBA and had no further claim on money due Bianchi under the contracts. The court also granted summary judgment in favor of the government against Bianchi in the amount of $1,141,220.83, concluding that the government had erroneously paid Bianchi and was therefore entitled to repayment.

## Discussion

### I.

Bianchi raises constitutional and procedural objections to the judgment against him in the Court of Federal Claims. We decline to reach Bianchi's constitutional arguments because we conclude that the government was not entitled to assert its claims against Bianchi in the first instance.[2]

The funds the government seeks to recover through its third-party complaint stem from an agreement reached between the

---

[2] Although the concurrence would resolve this case on constitutional grounds, we adhere to the doctrine that we should avoid deciding constitutional questions where an alternative basis exists upon which our decision may rest. See Hagans v. Lavine, 415 U.S. 528, 565 (1974) (Rehnquist, J., dissenting); SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1126, (Fed. Cir. 1985) (Markey, C.J., additional views).

government and Bianchi in 1988 settling a contractual dispute. Pursuant to the agreement, the government agreed to pay Bianchi $617,500 plus interest in satisfaction of Bianchi's claims. This agreement was incorporated into a decision of the Armed Services Board of Contract Appeals, in which it was stipulated that the parties waived their rights to appeal or seek reconsideration of the board's decision.

In support of its claim against Bianchi, the government now contends that the settlement award was paid to Bianchi in contravention of the various assignments of rights associated with Bianchi's contracts and that it has a right to recover any funds erroneously paid from the public treasury. The government does not have that right in this case.

The government's right to recoup erroneously paid funds cannot be invoked by the government as a means to circumvent a legal obligation. In return for Bianchi's agreement to discontinue his action against the government, the government agreed to settle his claims and voluntarily relinquished its right to disturb the settlement. Bianchi accordingly ceased pursuing his contract claims and the government must likewise be held to its end of the bargain. "The law strongly favors settlement of litigation, and there is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into." Hemstreet v. Spiegel, Inc., 851 F.2d 348, 350, (Fed. Cir. 1988) (citing Bergh v. Department of Transp., 794 F.2d 1575, 1577 (Fed. Cir.), cert. denied, 479 U.S. 950 (1986)).

The government does not challenge the validity or the enforceability of the settlement. Indeed, there is no indication that the parties failed to deal with each other at arm's length or that Bianchi withheld material information. The government certainly had adequate knowledge of the various financial arrangements associated with the contracts in view of the fact that the assignments from Bianchi to the bank were made pursuant to the Assignment of Claims Act, which was designed to protect the government from secret assignments. See McKenzie v. Irving Trust Co., 323 U.S. 365, 369 (1945); Pittman v. United States, 116 F. Supp. 576, 580 (1953), cert. denied, 348 U.S. 815 (1954). In the absence of any fraud, misdirection, or concealment, the government may not recover funds paid in good faith and to the satisfaction of the interested parties. See McKnight v. United States, 13 Ct. Cl. 292, 313 (1877), aff'd, 98 U.S. 179 (1878). Here, "[t]here was nothing contrary to good morals or conscience in the payment or receipt of the money. The facts were all known." 98 U.S. at 85-86.

The government could easily have taken appropriate steps to avoid incurring any liability to the bank. For example, the government could have insisted that any settlement award be paid to the bank in view of the bank's asserted security interest. The government did not do so, perhaps because Bianchi would not have agreed to that arrangement or because the government presumed that the bank retained an inferior interest. Whatever the reason for its failure to protect itself, the government cannot now renege on

its commitment to honor its settlement with Bianchi, into which it entered voluntarily and with full knowledge of the facts. "To permit [the government] to escape its obligation under the settlement would seriously decrease the willingness of parties to settle litigation on mutually agreeable terms and thus weaken the efficacy of settlements generally." Hemstreet, 851 F.2d at 350.

Although the government waived its right to challenge the board's decision awarding payment to Bianchi, it attempts to do just that by means of a third-party complaint filed in another forum. The government should not be allowed to do indirectly what it is prohibited from doing directly. We therefore hold that the government, having waived its right to challenge the settlement, is precluded from seeking to recover the settlement award through a third-party complaint filed in the Court of Federal Claims.

II.

In its cross-appeal, Bank of America challenges the trial court's conclusion that the bank retained no right to receive payments under the Bianchi contracts after it assigned its interest in the guaranteed loans to the SBA in return for payment on the loan guarantees. Specifically, the bank argues that it is entitled to judgment because of its superior right to contract payments as Bianchi's assignee under the Assignment of Claims Act.

Both the bank and the SBA claim a security interest in Bianchi's contract receivables. The bank obtained its interest, the assignment, in return for its original loans to finance

Bianchi's contract performance. When it later extended the guaranteed loans, Bianchi again granted it a security interest in the receivables, an interest the bank eventually transferred to the SBA in return for payment on the loan guarantees. The Court of Federal Claims agreed with the government that this transfer assigned all of the bank's interest in the contract payments, not merely those associated with the guaranteed loans.

The loan documents refute this position, for they show that the bank assigned away only its rights "in th[ose] certain Note[s]" relating to the guaranteed loans. Since the rights under the guaranteed loans attached after the interest under the earlier loans secured by the same collateral, the SBA took its interest subject to the preexisting interest retained by the bank. Cf. United States v. McDermott, 113 S.Ct. 1526, 1531 (1993) ("When two private lenders both exact from the same debtor security agreements with after-acquired-property clauses, the second lender knows . . . that that category of property will be subject to another claim"). Indeed, the record shows that the SBA clearly knew of the bank's senior interest in the contract payments.

As an assignee under the Assignment of Claims Act, the bank's security interest included the right to bring a suit against the government to recover any contract payment made to another. Produce Factors Corp. v. United States, 467 F.2d 1343, 1349 (Ct. Cl. 1972). As we said, the bank never relinquished this right. "The Government having received timely notice of plaintiff's assignment paid [Bianchi] at its peril. And where an erroneous

payment is made by the Government it is no bar to the rightful claimant." Central Nat'l Bank v. United States, 91 F. Supp. 738, 741 (Ct. Cl. 1950) (citation omitted). The government's payment to Bianchi in settlement of the contract dispute was a payment under the contract that should have gone to the bank under the assignment. Thus, the bank has a right to the payment under the Act.

The government asserts a right to set off the amount that Bianchi owed to the SBA against any money owed to the bank by virtue of the settlement. Of course, like any creditor, the government has the right to set off a contractor's debts against payments due the contractor. United States v. Munsey Trust Co., 332 U.S. 234, 239 (1947). The government argues that as an assignee, the bank had no greater claim to the payment than did Bianchi, its assignor. If true, the government could set off Bianchi's liability to the SBA against money due the bank. Cf. id. at 239-40 ("Insofar as the suitor in the Court of Claims asserted the contractor's title to the sum in dispute, that court was under statutory duty to recognize the undisputed claim for damages of the United States").

But the bank is not simply an ordinary assignee. The Assignment of Claims Act expressly limits the government's right to set off Bianchi's debts against payments to the bank. 31 U.S.C. § 3727; 41 U.S.C. § 15. Under the Act, government contracts may provide that an assignee's right to contract payments "shall not be subject to reduction or set-off for any liability of any nature

of the assignor to the United States or any department or agency thereof which arises independently of such contract . . . ." 41 U.S.C. § 15. Bianchi's contracts contained such a clause.

The goal of the Assignment of Claims Act is to make it easier for contractors to finance performance of their obligations to the government. Produce Factors Corp. v. United States, 467 F.2d at 1348. The inclusion of "no set-off" clauses alleviates some of the uncertainty that would otherwise hinder financing by ensuring assignees a stream of payments unaffected by the contractor's potentially numerous "obligations to the United States not imposed by the contract from which the payments flowed." Central Bank v. United States, 345 U.S. 639, 643 (1953). See Produce Factors, 467 F.2d at 1348 (assignee's right to receive payment of contract proceeds dependent only on "performance by the contractor of his contractual obligations").

While the government could assert against the bank any defenses arising against Bianchi under the contracts, Produce Factors Corp., 467 F.2d at 1349 (non-performance or failure of consideration), Bianchi's indebtedness to the government arose not from the contracts, but from the notes. The government argues that the notes are not independent of the contracts, for they were intended to finance the performance of the contracts, and, indeed, the security agreements expressly listed rights to contract payments as collateral. Even accepting that Bianchi's liability on the notes was "related to" the contracts, however, we agree with

the bank that the liability on the notes arose "independently of such contract."

The Supreme Court addressed this language in Central Bank v. United States, 345 U.S. at 646, ruling that the United States could not set off a contractor's tax indebtedness against sums due an assignee on the contract. The tax liability arose from the contractor's failure to pay withholding and unemployment taxes for work done on the contract. The Court reasoned, however, that the government could not set off the tax because it did not arise from the contract; the tax was imposed by statute, and would have been due even absent a contract with the government. Id. at 645-46.

Like a contractor's tax liability, Bianchi's liability on the notes did not arise from his defense contracts, it was imposed by the loan documents. He could owe on the notes even if he had no contract. Moreover, the government has conceded any defense to payment based on inadequate performance of the contracts by settling Bianchi's contract claims. Because his liability on the notes "lay neither in execution nor in breach of the contract[s]," Central Bank, 345 U.S. at 646, Bianchi's liability to the SBA on the notes is independent of the contracts, barring set-off by the government. Therefore, the bank should recover the amount due under the government's settlement with Bianchi.

## Conclusion

Accordingly, we reverse the judgment of the Court of Federal Claims in the government's favor against the bank, and vacate the judgment in favor of the government against Bianchi.

## COSTS

The bank and Bianchi shall have their costs.

REVERSE IN PART, VACATE IN PART

United States Court of Appeals for the Federal Circuit

93-5059,-5060

BANK OF AMERICA NATIONAL TRUST and SAVINGS ASSOCIATION,

Plaintiff/Cross-Appellant,

v.

THE UNITED STATES,

Defendant/Third Party Plaintiff-Appellee,

v.

MAURICE L. BIANCHI,

Third Party Defendant-Appellant.

MAYER, Circuit Judge, concurring in part and concurring in the judgment.

I join the court's opinion insofar as it explains why the bank prevails. I also agree that the government's claims against Bianchi should have been dismissed, but write separately because I do not believe the Court of Federal Claims had jurisdiction to reach the merits of those claims. I share the reluctance to reach constitutional questions, but the court impermissibly assumed there is jurisdiction where there is none.

The Court of Federal Claims based its jurisdiction over Bianchi on 41 U.S.C. § 114(b) (Supp. IV 1992), which says that court may "summon any and all persons with legal capacity to be sued to appear as a party or parties in any suit or proceeding of any nature whatsoever pending in said court to assert and defend

their interests . . . ." More specifically, section 114(b) authorizes the Court of Federal Claims to hear the government's "claims and contingent claims for the recovery of money hereafter paid by the United States in respect of the transaction or matter which constitutes the subject matter" of the pending suit. Id.

This court has said that under section 114(b) the Court of Federal Claims may render judgment against a third party on claims by the government in two situations: first, where that party also asserts a claim against the United States; and second, where a plaintiff sues the government for money that the government has disbursed to the third party under a mistake of fact or law. United States v. Rush, 804 F.2d 645, 647 (Fed. Cir. 1986); Bowser Inc. v. United States, 420 F.2d 1057, 1062 (Ct. Cl. 1970). By its language, section 114(b) apparently applies to these government claims, which seek return of the settlement payment, the subject of the bank's suit. The question thus becomes whether the grant of jurisdiction over the government's claims is constitutionally permissible.

Bianchi's constitutional attack on section 114(b) arises from Article III of the Constitution, which provides that

> [t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.