U.S. Const., Art. III, § 1. The Court of Federal Claims is established under Article I not Article III. 28 U.S.C. § 171(a) (Supp. IV 1992) ("The Court is declared to be a court established under Article I of the Constitution of the United States").

The Supreme Court tells us that "Article III, § 1, serves both to protect 'the role of the independent judiciary within the constitutional scheme of tripartite government,' and to safeguard litigants' 'right to have claims decided before judges who are free from potential domination by other branches of government.'" Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 848 (1986) (citations omitted). When examining congressional action for impermissible intrusions upon the integrity of the judiciary, the Court has declined to adopt fixed rules, fearing undue restrictions on Congress' Article I powers. Id. at 851. The task is to consider both the nature of the right to be adjudicated and the concerns that led Congress to deviate from Article III in this statutory scheme. Id.

Some disputes, especially those arising between the government and others over the performance of the constitutional functions of the political branches, have historically been subject to resolution exclusively by those branches. Northern Pipeline Co. v. Marathon Pipe Line Co., 458 U.S. 50, 67 (1982) (plurality opinion). Because such disputes could be resolved without resort to the judicial power of the United States, Congress is free to assign their adjudication to administrative agencies or Article I courts. See Thomas v. Union Carbide Agric. Prod., 473 U.S. 568,

589 (1985). These cases are said to involve "public rights"; by contrast, "private rights" cases -- those that fall outside the traditional realm of the political branches -- must be heard under the auspices of Article III. Northern Pipeline, 458 U.S. at 70.

Government contract disputes are classic public rights matters. Historically, government contracts provided that the decision of a contracting officer was final on any question under the contract, and not subject to Article III review. Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1564 (Fed. Cir. 1990). These provisions withstand constitutional scrutiny because, under the concept of sovereign immunity, the government could always decline to be sued by aggrieved contractors. When Congress later created a right of action on the contract in the Court of Claims, and then in the Article I Court of Federal Claims, it was free to attach conditions to the new right, including the waiver of the right to a jury trial or to an Article III forum. Id. at 1563.

This court applied these principles to reject a constitutional challenge to section 114(b) in United States v. Rush, 804 F.2d 645, 647 (Fed. Cir. 1986). We determined that the dispute between the government and a third party contractor turned on public rights -- that is, it arose "between the government and persons subject to its authority in connection with the constitutional functions of the executive and legislative branches and . . . historically could have been determined exclusively by those branches." Rush, 804 F.2d at 647. See Northern Pipeline, 458 U.S. at 67. Rush went no

further; resolution of the case before us, however, requires an examination of why Rush was a public rights dispute.*

Rush contracted with the Air Force to construct a shopping center on the grounds of Arnold Air Force Station. Because the contract was one for the procurement of services by the government, it was necessarily controlled by the provisions of the Contract Disputes Act (CDA). 41 U.S.C. § 602(a) (1988); Seaboard Lumber Co., 903 F.2d at 1565. Under the CDA, the government waived its right to assert sovereign immunity against Rush's contractual claims in return for the contractor's waiver of his right to an Article III trial of government claims against him. 903 F.2d at 1567. Thus, the government could cross-claim against Rush in the Court of Federal Claims seeking return of an alleged overpayment that was the subject of a surety's suit against the government in that court.

Like the contract in Rush, Bianchi's DLA contracts were governed by the CDA, so Bianchi waived his rights under Article III

---

* Like Bianchi, Rush challenged section 114(b) under both Article III and the Seventh Amendment. The Rush court cited Maryland Casualty Co. v. United States, 141 F. Supp. 900 (Ct. Cl. 1956), on which the government relies here. Maryland Casualty upheld the validity of section 114(b) in the face of a Seventh Amendment challenge similar to Bianchi's. But Maryland Casualty was decided by the Court of Claims, a court that sat without a jury, much like the present Court of Federal Claims, but one that was established under Article III. Glidden v. Zdanok, 370 U.S. 530, 584 (1962); see Act of July 28, 1953, § 1, 67 Stat. 226, added to 28 U.S.C. § 171 ("Such court is hereby declared to be a court established under Article III of Constitution of the United States"). Maryland Casualty supports the Rush Seventh Amendment holding, but it does not constrain our analysis of section 114(b) under the broader scope of Article III.

by entering into them. When the government terminated the contracts, Bianchi complied with the CDA and sought relief before the Board of Contract Appeals. The parties then settled the dispute.**

Now the government seeks to recover the money it paid Bianchi under the voluntary settlement, a joint action to fully and finally terminate the prior case. It is not itself a contract for the procurement of goods or services that falls under the CDA, so the terms of that Act do not apply. Cf. Coastal Corp. v. United States, 713 F.2d 728, 730 (Fed. Cir. 1983) (rejecting theory that CDA applies to "contracts tangentially connected with government procurement of goods and services"). Absent the controlling provisions of the CDA, there is no historical basis for resolution of the government's claims against Bianchi by the legislative or executive branches. This is not a case involving a right created by Congress or one assigned by the Constitution or tradition to the political branches. Indeed, if the government had sought to recover the settlement payment absent this precipitative suit by

---

** Under the settlement, the parties agreed that Bianchi "is entitled to recover $617,500.00 on his claims . . . ; that the Government is entitled to take nothing on its claims . . . ; that Mr. Bianchi is entitled to interest . . . ; and that the parties waive their rights to seek reconsideration of this stipulated decision of the Board or to appeal that stipulated decision . . . ." Appeals of M. Bianchi of California, ASBCA Nos. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933, and 29934 (September 29, 1988). Moreover, Bianchi was required to execute a Certificate of Finality, under which he agreed to accept the award as "a full discharge to the United States of all claims and demands arising out of the matters involved . . . ." Certificate of Finality, ASBCA Nos. 26362, et al.

the bank, it would have had to sue in the district court. Whatever rights the government may have to recover its officers' allegedly erroneous payments, see United States v. Wurts, 303 U.S. 414, 415 (1938), it is not necessarily entitled to advert to an Article I forum.

Nor does Bianchi's waiver of his Article III rights under the DLA contracts extend to the settlement. Under the settlement agreement, he accepted a single payment in full satisfaction of his claims under the terminated contracts. The parties agreed that the settlement would be final, and waived any right to reconsideration or appeal to this court. The government was completely discharged from all obligations under the contracts, and, given the broad language of the agreement, Bianchi's obligations, including his contractual duty to submit to Article I jurisdiction, were likewise discharged. The settlement extinguished the prior relationship under the contracts. Cf. Brock & Blevins Co. v. United States, 343 F.2d 951, 954 (Ct. Cl. 1965). Thus, what was a matter of public rights -- a contractual relationship controlled by the CDA -- became a private rights dispute after the settlement. The government's concern that it might be subject to inconsistent judgments cannot overcome the demands of Article III where the government so clearly had the ability to protect its rights, but surrendered them. The government's claims against Bianchi should have been dismissed for lack of jurisdiction.

Mark Melnick DOJ-Civil

Melnick M

ORDER

Before RICH, Circuit Judge, MAYER, Circuit Judge, and LOURIE, Circuit Judge.

A petition for rehearing having been filed by the APPELLEE,

UPON CONSIDERATION THEREOF, it is

ORDERED that the petition for rehearing be, and the same hereby is, DENIED.

The mandate will issue June 30, 1994.

FOR THE COURT,
FRANCIS X. GINDHART, CLERK

Dated: June 23, 1994

by Diane M. Frye
Diane M. Frye
Chief Deputy Clerk

cc: ROBERT A. BRUNETTE
MICHAEL L. BURACK, MARK A. MELNICK

FILED
U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT
JUN 23 1994
FRANCIS X. GINDHART
CLERK

BANK AMER NATL TRUST V US, 93-5059
(CFC - 90-3961C)

*********************************************************************
*   Note: Pursuant to Fed. Cir. R. 47.6, this order is not citable as precedent. It is a public record.   *
*********************************************************************

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
CB

United States Court of Appeals for the Federal Circuit

**REVISED: 02/25/93**

93-5059,-5060

BANK OF AMERICA NATIONAL TRUST and
SAVINGS ASSOCIATION,

Plaintiff/Cross-Appellant,

v.

THE UNITED STATES,

Defendant/Third Party
Plaintiff-Appellee,

v.

MAURICE L. BIANCHI,

Third Party Defendant-Appellant.

O R D E R

NOTE: Pursuant to Fed. Cir. R. 47.6, this order is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

93-5059,-5060

RECEIVED
OCT 06 1994
Ass'd.

BANK OF AMERICA NATIONAL TRUST and SAVINGS ASSOCIATION,

Plaintiff/Cross-Appellant,

v.

THE UNITED STATES,

Defendant/Third Party Plaintiff-Appellee,

v.

MAURICE L. BIANCHI,

Third Party Defendant-Appellant.

Before RICH, MAYER, and LOURIE, Circuit Judges.

## O R D E R

Under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (1988) (EAJA), Maurice L. Bianchi requests an award of attorney fees and expenses incurred in defending against the government's third party claim. The government has moved to dismiss the application as untimely, asserting that there is not yet a final judgment in Bianchi's favor.

On April 29, 1994, this court vacated the judgment of the Court of Federal Claims, No. 90-3961C, in favor of the government against Bianchi. Bank of America Nat. Trust & Sav. Ass'n v. United States, 23 F.3d 380, 385 (Fed. Cir. 1994). Based on a settlement

EXHIBIT "1"

agreement by which Bianchi agreed to settle his contract claims against the government in return for a payment of $1,141,220.83, this court held "that the government, having waived its right to challenge the settlement, [was] precluded from seeking to recover the settlement award through a third-party complaint filed in the Court of Federal Claims." Id. at 384. The government correctly argues that only its third party claim, and not its contingent claim, was before us on appeal; it is clear from our decision, however, that the contingent claim must fail as well since it is based on identical grounds. Indeed, all that remains of the government's claims against Bianchi is the purely ministerial act of entering judgment against the government in the Court of Federal Claims. See Gavette v. Office of Personnel Management, 808 F.2d 1456, 1459 (Fed. Cir. 1986) (in banc); Skip Kirchdorfer, Inc., v. United States, 803 F.2d 711, 712 (Fed. Cir. 1986).

The government's time for filing a petition for a writ of certiorari has now passed; the judgment is therefore final for EAJA purposes and the government's motion to dismiss is denied. See Melkonyan v. Sullivan, 501 U.S. 89, 96 (1991) ("The 30-day EAJA clock begins to run after the time to appeal that 'final judgment' has expired."); Skip Kirchdorfer, Inc., 803 F.2d at 712. We now consider the merits of Bianchi's application for attorney fees.

Under the EAJA, as a prevailing party Bianchi is entitled to an award of attorney fees and expenses "unless the Court finds that the position of the United States was substantially justified . . . ." 28 U.S.C. § 2412(d)(1)(A). This court will deny an award

under this section if the government "was clearly reasonable in asserting its position . . . in view of the law and the facts." Gavette, 808 F.2d at 1467 (emphasis in original); see also Pierce v. Underwood, 487 U.S. 552, 565 (1988). In this case, the government was not unreasonable in its position that it had an absolute right to recover money erroneously paid to Bianchi, and the Court of Federal Claims agreed. Although we ruled against the government, we cannot conclude that its position did not satisfy the statutory standard.

Accordingly, it is ORDERED that Bianchi's application for attorney fees and expenses is DENIED.

FOR THE COURT

9/30/94
Date

Francis X. Gindhart
Francis X. Gindhart
Clerk

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT
SEP 30 1994
FRANCIS X. GINDHART
CLERK

93-5059,-5060

ORIGINAL

# In the United States Court of Federal Claims

No. 90-3961C

(Filed: April 6, 1995)

FILED
APR 6 1995
U.S. COURT OF FEDERAL CLAIMS

* * * * * * * * *

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, *

Plaintiff, *

v. *

UNITED STATES OF AMERICA, *

Defendant and Third-Party Plaintiff, *

v. *

MAURICE L. BIANCHI, *

Third Party Defendant. *

* * * * * * * * *

THIS OPINION WILL NOT BE PUBLISHED

A TRUE COPY: 1/31/97
TEST:
DAVID A. LAMPEN
Clerk, U.S. Court of Federal Claims
By ______ Deputy Clerk

Michael L. Burack, Washington, D.C., for plaintiff.

Mark A. Melnick, United States Department of Justice, Washington, D.C., for defendant.

Robert A. Brunette, La Canada Flintridge, California, for third party defendant.

## OPINION & ORDER

HODGES, Judge.

Bank of America seeks to recover money that defendant erroneously paid third party defendant contrary to Bank of America's assignment rights. This case is before the court

on remand from the Federal Circuit.[1] The parties filed cross motions for summary judgment after that decision, and defendant seeks to reopen discovery. We deny defendant's motions and grant plaintiff's motion in part.

## FACTS

In 1979 and 1980 the Defense Logistics Agency awarded three contracts to Bianchi to manufacture coats and jackets. Bianchi assigned the rights to the proceeds of the contracts to the Bank of America after award. The Bank notified the contracting officer and the disbursing officer in accordance with the Assignment of Claims Act. 31 U.S.C. § 3727 (1988), 41 U.S.C. § 15 (1988).

Later in 1980, the Bank sought to restructure its relationship with Bianchi, and received 90% loan guarantees from the Small Business Administration to support its loans. Bianchi defaulted on his loans in 1981 and SBA paid the guaranteed amounts. In return for the SBA payments, the Bank assigned its interest in the guaranteed loan agreement with Bianchi to SBA.

Bianchi's Defense Logistics Agency contracts were either completed or terminated by July 8, 1981. The events surrounding the contract terminations led Bianchi to institute a series of claims against DLA. In September 1988, Bianchi's claims against the Government were settled for $617,000 plus interest from June 18, 1981 until payment. The

---

[1] See Bank of America National Trust and Savings Association v. United States v. Bianchi, 23 F.3d 380 (Fed. Cir. 1994).

Armed Services Board of Contract Appeals issued a decision pursuant to the settlement and that decision was forwarded to the General Accounting Office (GAO) for payment.

Defendant paid Bianchi $1,141,220 in November 1988 despite the Bank's assignment rights. In June 1990, the Bank demanded the settlement amount erroneously paid to Bianchi. The Government requested repayment from Bianchi, but Bianchi refused.

Bank of America filed suit in this court seeking the settlement monies. We ruled that the Bank had no claim against defendant because it had assigned its rights to SBA in exchange for the 90% loan guarantee. SBA later paid Bank of America the 90% when Bianchi defaulted. The Court of Appeals for the Federal Circuit held defendant liable to the Bank for the settlement paid to Bianchi by mistake. Bank of America, 23 F.3d at 385.

The Bank loaned money to Bianchi for contract performance before his contracts were terminated. After termination, it financed Bianchi's prosecution of his claims against the Government. Bianchi's indebtedness to the Bank related to performance loans as of November 1994 totals $1,094,421, including interest.

## DISCUSSION

Summary judgment is appropriate in this matter. Defendant has had ample opportunity for discovery but has not shown that material facts are in dispute. It is clear that defendant is liable to the Bank for money it erroneously paid to Bianchi. See Bank of America, 23 F.3d at 385. Facts and issues in California state court proceedings between the Bank and Bianchi do not affect this case. The sole issue is the amount of the Bank's damages.

The Bank has produced affidavits which set forth the amount of money loaned to Bianchi during contract performance. The amounts loaned remained unpaid through November 1988 when defendant erroneously paid Bianchi pursuant to the parties' settlement and ASBCA decision.

The intent of the Assignment of Claims Act is to facilitate performance of government contracts by making contractors' assignments independent of other financial agreements. Central Bank v. United States, 345 U.S. 639 (1953). Bianchi's debt to Bank of America exceeds the $1,141,220 settlement improperly paid to Bianchi by the Government. However, the Bank's rights to the assigned proceeds are limited under the Assignment of Claims Act. 31 U.S.C. § 3727, 41 U.S.C. § 15. Loans used for purposes other than contract performances are not protected by the Act. Coleman v. United States, 158 Ct. Cl. 490, 496 (1962). The Act specifically prohibits assignments that do not comply with its provisions. American Nat. Bank & Trust Co. of Chicago v. United States, 22 Cl. Ct. 7, 16 (1990).

An assignment is defeated if the lender has reason to know that the loan proceeds will not be used in completion of the government contract. First National City Bank v. United States, 212 Ct. Cl. 357 (1977). To prove the existence of a valid statutory assignment, a bank must show that it loaned money or made money available for contract performance. If Bank of America did not loan money for performance of the contract, the assignment is not valid. American Nat. Bank, 22 Cl. Ct. at 16 (citations omitted). The Bank can recover only the contract-related loans it made to Bianchi. When the Government erroneously pays the contractor instead of the assignee, the assignee may recover only that

amount which was disbursed to the contractor-assignor in contravention of the valid assignment. See Maryland Small Business Fin. Auth. v. United States, 4 Cl. Ct. 76, 80 (1983).

Bank of America loaned money to Bianchi before his government contracts had ended. These loans satisfied the statutory requirements for a valid assignment, and the Bank may recover these amounts. When the Bank loaned money to Bianchi after the contract period was completed, it knew that such loans were not available for use in contract performance. That money was used to prosecute Bianchi's legal claims against the Government. Such assignments did not comply with the Act, and the Bank cannot recover those amounts from defendant.

Because the validity of the Bank's assignments was limited, it was not entitled to recover the full amount of the $1.14 million contract proceeds settlement from DLA in 1988. The Bank may collect from that settlement only the amount that it can trace to loans made before contract termination.

Bank of America seeks recovery of accrued interest, but it cites no contract or statutory provision permitting it to collect interest. Interest on a claim against the United States is permissible only pursuant to a contract or an Act of Congress expressly providing for such payments. 28 U.S.C. § 2516(a); First National City Bank, 212 Ct. Cl. at 371. The United States is immune from an interest award in absence of express congressional intent. Library of Congress v. Shaw, 478 U.S. 310, 314 (1986). To recover interest on an implied or express contract, the Bank must prove that the Government agreed to assume liability for accrued interest. See Maryland Small Business Fin. Auth., 4 Cl. Ct. at 80. The Bank has

provided no evidence of such assumption of liability by defendant. Bank of America is not entitled to the full $1.09 million that it estimates had accrued as of November 1994 because this figure includes more than six years' interest.

## CONCLUSION

The Bank will provide evidence of the amount owed on qualified loans as of November 1988 and the legal basis for its claim of interest no later than April 17. Defendant's response will be due on or before April 28.

Plaintiff's motion for summary judgment is GRANTED-IN-PART. Defendant's cross motion for summary judgment is DENIED. Defendant's motion to reopen discovery is DENIED.

Robert H. Hodges, Jr.
Judge

ORIGINAL

# In the United States Court of Federal Claims

A TRUE COPY: 1/31/97
TEST:
DAVID A. LAMPEN
Clerk, U.S. Court of Federal Claims
By ________ Deputy Clerk

* * * * * * * * *

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, *

Plaintiff, * No. 90-3961C

v. * Filed: July 26, 1995

UNITED STATES OF AMERICA, *

Defendant and Third Party Plaintiff, *

v. *

MAURICE L. BIANCHI, *

Third Party Defendant. *

* * * * * * * * *

FILED
JUL 26 1995
U.S. COURT OF FEDERAL CLAIMS

## ORDER

Plaintiff originally calculated that it was entitled to $1.09 million in principal and interest from the time of the wrongful payment by SBA to Bianchi. We required further explanation to determine the qualified principal amounts and plaintiff's entitlement to interest.

### I. Principal

Plaintiff is entitled to repayment of all monies loaned to Bianchi that were available for contract performance. The outstanding principal amounts, $292,940.05 and $49,200, are undisputedly "qualified."

Plaintiff argues that a $50,000 non-guaranteed portion of the $500,000 SBA loan should also be included because the Bank did not assign that portion to SBA. The December 1981 loan agreement states that "Bank of America . . . hereby assigns and transfers to the Small Business Administration all of its right, title and interest" in the Bianchi-SBA loan. Plaintiff directs our attention to other loan documents to vary the terms of the agreement, contrary to this unambiguous language. Those documents indicate that

SBA could purchase the guaranteed portion of a loan. We need not rely on those inconclusive statements to interpret the agreement. The Bank may not recover on the unpaid principal of that loan because its rights to that amount were fully assigned.

II. Interest

Plaintiff's calculations included interest through November 1994. We questioned those numbers because the United States generally is not obliged to pay interest unless a statute or contract so provides. The payment of interest in this situation is not governed by the Contract Disputes Act, 41 U.S.C. § 611 (1988). An assignment of government contract proceeds does not create a contractual relationship between the assignee and the United States. Produce Factors Corp. v. United States, 199 Ct. Cl. 572, 580-81 (1972). The Government's obligations arise solely from the Assignment of Claims Act. Id. at 581.

Plaintiff argues that Continental Bank and Trust Co. v. United States, 189 Ct. Cl. 99 (1969), and Chelsea Factors, Inc. v. United States, 149 Ct. Cl. 202 (1960), mandate an award of interest. In those cases, the assignee sought payments that were not made, rather than a mistaken payment to the wrong party. The court did not award statutory interest. Continental Bank, 189 Ct. Cl. at 109. The Government had to pay for the value received on the contract -- not interest. Chelsea Factors, 149 Ct. Cl. at 215. A mistaken payment does not merit a payment of interest under this analysis. See also Central National Bank of Richmond v. United States, 117 Ct. Cl. 389 (1950) (judgment for assignee in amount of mistaken payment not including interest).

CONCLUSION

The Clerk will enter judgment for the Bank in the amount of $342,140.05. The third party complaint against Bianchi is dismissed. No costs.

Robert H. Hodges, Jr.
Judge

# In the United States Court of Federal Claims

No. 90-3961 C

FILED
JUL 28 1995
U.S. COURT OF FEDERAL CLAIMS

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION,

*Plaintiff,*

v.

THE UNITED STATES

*Defendant and Third Party Plaintiff,*

v.

MAURICE L. BIANCHI,

*Third Party Defendant.*

**JUDGMENT**

Pursuant to the court's order of July 26, 1995,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that plaintiff recover of and from the United States the sum of $342,140.05. The third party complaint against Bianchi is dismissed. No costs.

David A. Lampen
Clerk of Court

July 28, 1995

By:

Deputy Clerk

NOTE: As to appeal, 60 days from this date, see RCFC 72, re number of copies and listing of all plaintiffs. Filing fee is $105.00.

Cotter, P.
Melnick, M.

# In the United States Court of Federal Claims

* * * * * * * * *

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, *

Plaintiff, *

v. *

UNITED STATES OF AMERICA, *

Defendant and Third Party Plaintiff, *

v. *

MAURICE L. BIANCHI, *

Third Party Defendant. *

* * * * * * * * *

No. 90-3961C

Filed: August 14, 1995

FILED
AUG 14 1995
U.S. COURT OF FEDERAL CLAIMS

ORDER

The amount of recovery indicated in the July 26 order was in error. The Clerk will enter a corrected judgment in the amount of $717,009.94. No costs.

John P. Wiese

John P. Wiese, Judge, for
Robert H. Hodges, Jr., Judge

# In the United States Court of Federal Claims

---

Michael L. Burack, Esq., ATTY OF RECORD
Wilmer, Cotter & Pickering
2445 M St. NW, Washington, DC 20037

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION,**

*Plaintiff,*

**v.**

**THE UNITED STATES** **No. 90-3961 C**

*Defendant and Third Party Plaintiff,*

**v.**

**MAURICE L. BIANCHI,**

*Third Party Defendant.*

At the Court of Federal Claims held in Washington, D.C., on the 14th day of August A.D. 1995, a corrected judgment was ordered to be entered as follows: that plaintiff recover of and from the United States the sum of $717,009.94. The third party complaint against Bianchi is dismissed. No costs.

*A true copy of record.*

*In testimony whereof I have hereunto set my hand and affixed the seal of said Court at Washington, this 22nd day of August, A. D. 1995.*

David A. Lampen

*David A. Lampen, Clerk*

*Attest:*

Loren A. Smith

*Loren A. Smith, Chief Judge*

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-