3.

# U.S. Armed Services Board of Contract Appeals, ASBCA No. 36518

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| M. Bianchi of California | ) | ASBCA No. 36518 |
| | ) | |
| Under Contract No. DLA100-80-C-2972 | ) | |

APPEARANCE(S) FOR THE APPELLANT: Michael A. Hordell, Esq.
Laurel A. Heneghan, Esq.
Petrillo & Hordell
Washington, DC

APPEARANCE(S) FOR THE GOVERNMENT: Thomas Hornak, Esq.
Chief Trial Attorney
Stephanie L. Zimmt-Mack, Esq.
Patricia A. Papas, Esq.
Trial Attorneys
Defense Personnel Support Center (DLA)
Philadelphia, PA

OPINION BY ADMINISTRATIVE JUDGE BURG

The Government accepted a Value Engineering Change Proposal (VECP) submitted by appellant during performance of this contract. The parties were unable to agree either as to the per unit amount which was saved because of the VECP or the number of units to which the savings applied. When the contracting officer failed to issue a decision, appellant filed this appeal pursuant to the Contract Disputes Act (CDA), 41 U.S.C. §605(c)(3). Appellant seeks $2,175,807.56 as instant, concurrent and future contract savings and $3,997,660.80 as collateral savings, for a total of $6,173,468.36.

FINDINGS OF FACT

1. Various findings of fact pertaining to this contract were the subject of a prior opinion of this Board on the motion for partial summary judgment filed in this appeal dated 2 March 1990 (unpublished) and in our opinion in ASBCA Nos. 37029 and 37071, 92-_ BCA ¶ ______, (decided 31 July 1992) and, to the extent to which we consider them relevant, they are adopted herein.

The Contract

2. On 23 June 1980, the Defense Personnel Support Center (DPSC) of Philadelphia, Pennsylvania, Defense Logistics Agency (DLA), awarded appellant Contract No. DLA100-80-C-2972 for the manufacture of 125,240 Man's Black All Weather Coat with removable lining at a unit price of $31.92 and a total contract price of $3,997,366.40. The coat was to be manufactured in accordance with Limited Purchase Description 12-77A (DES 12-77A), dated

1 November 1978, using patterns dated 21 September 1979 issued by the United States Army Natick Research and Development Laboratory (Natick).

3. DES 12-77A incorporated by reference a federal standard, FED-STD-751 - Stitches, Seams and Stitching. The solicitation incorporated by reference DPSC Form 3540, the DPSC Master Solicitation for Clothing and Textiles. The Master Solicitation included Clause J09, Value Engineering Incentive, January 1978, which provided (R4, tab 4 at 14-15):

> J09 VALUE ENGINEERING INCENTIVE (DPSC 1978 Jan)
>
> (a) Application. This clause applies to a Contractor developed and documented Value Engineering Change Proposal (VECP) which:
>
> (i) requires a change to this contract to implement the VECP, and
>
> (ii) reduces the overall costs to the cognizant Military Department without impairing essential functions or characteristics, provided that it is not based:
>
> (A) solely on a change in deliverable end item quantities, or
>
> (B) a change in R&D end item or test quantities due solely to results of previous testing under this contract, or
>
> (C) solely on a change to the contract type.
>
> (b) Documentation. As a minimum, the following information shall be submitted by the Contractor with each VECP.
>
> (i) a description of the difference between the existing contract requirement and the proposed change, and the comparative advantages and disadvantages of each, justification when a function or characteristic of an item is being altered, and the effect of the change on the performance of the end item;
>
> (ii) an analysis and itemization of the requirements of the contract which must be changed if the VECP is accepted and a recommendation as to how to make each change (<u>e.g., a suggested specification revision</u>);
>
> (iii) a separate detailed cost estimate for both the existing contract requirement and the proposed change to provide an estimate of the reduction in costs, if any, that will result from acceptance of the VECP, taking into account the costs of development and implementation by the Contractor (<u>including any amount attributable to subcontracts in accordance with paragraph (h) below</u>);
>
> (iv) a prediction of any effects the proposed change would have on collateral costs to the Military Department such as Government-furnished property costs, costs of related items, and costs of maintenance and operation.

(v) a statement of the time by which a contract modification accepting the VECP must be issued so as to obtain the maximum cost reduction, noting any effect on the contract completion time of delivery schedule, and

(vi) identification of any previous submission of the VECP, including the dates submitted, the agencies involved, the numbers of the Government contracts involved, and the previous actions by the Government, if known.

(c) Submission. VECPs shall be submitted to the Procuring Contracting Officer (PCO). When the contract is administered by other than the purchasing office, a copy of the VECP shall be submitted simultaneously to the Administrative Contracting Officer (ACO). VECPs shall be processed expeditiously, however, the Government shall not be liable for any delay in acting upon any VECP submitted pursuant to this clause. The Contractor has the right to withdraw, in whole or in part, any VECP not accepted by the Government within the period specified in the VECP.

(d) Acceptance. The Contracting Officer may accept, in whole or in part, by contract modification either before or within a reasonable time after performance has been completed under this contract any VECP submitted pursuant to this clause. Until a contract modification applies a VECP to this contract, the Contractor shall remain obligated to perform in accordance with the terms of the existing contract. Contract modifications made pursuant to this clause will so state. The decision of the Contracting Officer as to the acceptance of any VECP under this contract (including the decision as to which clause is applicable to the proposal if this contract contains both a "Value Engineering Incentive" and a "Value Engineering Program Requirement" clause) shall be final and shall not be subject to the "Disputes" clause of this contract.

(e) Sharing. If a VECP submitted by the Contractor pursuant to this clause is accepted, the Contractor shall share in savings realized by the Government in accordance with the following provisions:

(1) Instant Contract.

(i) Definitions:

(A) Instant contract savings to the Contractor (ICS) is the unit cost reduction times the number of units affected in the instant contract. The proposed unit cost reduction includes estimated allowable Contractor development and implementation costs (CC). The Contractor's development and implementation costs include any subcontractor development and implementation costs and subcontractor incentive payments (see (h) below). For purposes of this clause, Contractor development costs are those costs incurred after the

Contractor has identified a specific VE project and prior to acceptance by the Government.

(B) Government Costs (GC) are those DOD costs which directly result from development and implementation of the VECP, such as test and evaluation of the VECP, and any increased cost in DoD operations, maintenance, and logistics support.

* * *

(2) <u>Concurrent Contracts</u>.

(i) If the VECP accepted under this contract is also used on concurrent contracts of the purchasing office for essentially the same items, the Contractor shall be paid a share of any savings as calculated in (ii) below.

(ii) Calculations

(A) Determine the reduction in the price of each concurrent contract(s) as a result of incorporating the VECP.

(B) Subtract from the total amount in (A) any Government costs (GC) not yet offset (<u>if GC was greater than ICS</u>) in (e) (1) (ii) (C) or (D) above, and any increase in the instant contract price, i.e., if ICS was negative in (e) (1) (ii) (D), if the resulting number is positive, multiply it by 50% (<u>25% if this is a VEPRC</u>). Add this amount to the instant contract price.

(3) <u>Future Contracts</u>.

(i) Definition. The term unit cost reduction for future contract sharing shall be the unit cost reduction under this instant contract without deducting any cost of development or impletion [sic].

(ii) If the VECP accepted under this contract is used on future purchases of essentially the same item by the purchasing office, or its successor, the Contractor shall share in the savings on all affected end items scheduled for delivery not later than 3 years after acceptance of the first item incorporating the VECP, or until the originally scheduled delivery date of the last affected end item under the instant contract, whichever is later. When sharing on future contracts is expected, the Contractor shall be responsible for the following:

(A) Maintaining records adequate to support identification of the first delivered unit to which the VECP applies. These records are considered an integral part of contract documentation and shall be maintained for a period of three years after final payment on the contract under which the VECP was accepted.

(B) Annotating the DD-250, Material Inspection and Receiving Report, which applies to the initial unit covered by the VECP with the following statement:

"This is the initial unit delivered which incorporates VECP NO. ____________________, Contract Modification No. ____________________, dated __________________."

(iii) Calculations. At the time each eligible future contract is awarded:

(A) Determine the number of units scheduled to be delivered prior to expiration of the Contractor sharing period determined in (ii) above. Multiply this by the unit cost reduction as defined in (e) (3) (i).

(B) Subtract from the total amount in (A) any Government costs or instant contract increases not yet offset in (e) (1) (ii) (C) or (D), or in (e) (2) (ii) (B), or in other contracts awarded since acceptance of the VECP. If the resulting number is positive multiply it by 50% (<u>25% if this is a VEPRC</u>) and add the result to the instant contract price.

(f) Payment. The Contractor's concurrent and future contract shares should be paid upon modification of concurrent contracts or future contract award, or within six (6) months thereafter. However, any such payments are subject to the condition that to the extent the Government does not receive delivery of and accept all items on which the share is paid, the Contractor shall reimburse the Government the proportionate share of the payments. If this clause is modified to provide for lump sum payments, such payments shall be made upon modification of the instant contract.

4. On 24 June 1980, DES 12-77A was superseded by MIL-C-44030(GL) for Coat, All Weather, Man's Black, w/Removable Liner. The requirements of DES 12-77A were incorporated into this new specification. Appellant's contract was not required to be modified and was not modified to include MIL-C-44030 and continued to require production in accordance with the requirements of DES 12-77A.

<u>The VECP Approval</u>

5. On 9 September 1980, appellant submitted a VECP to modify DES 12-77A, which stated:

> Value Engineering Proposal Change recommendation to delete Operation 22C "Stitch sleeve lining to sleeve 1 inch from bottom of overedge seam of lining."
>
> Value Engineering Proposal Change recommendation; change 15-D from "Overedge stitch bottom rawedge [sic] of sleeve lining."
>
> Change to: Safety stitch sleeve lining to sleeve catching interlining.

> Result in Savings: 6¢ per coat.
>
> Changing this operation will not affect servability [sic] or appearance in any way.

(R4, tab 6)

6. By letter dated 18 September 1980, the contracting officer replied to appellant's letter as follows:

> This is to acknowledge receipt of your Value Engineering Change proposal dated 9 September 1980 submitted under contract DLA100-80-C-2972 for Raincoat, Man's, Black, LP/P DES 12-77A. Your proposal, hereinafter identified as VECP 8680, recommends overedging the bottom raw edge of the sleeve lining.
>
> To permit a proper and complete evaluation of your proposal we will require a separate detailed cost estimate for both the existing contract requirement and the proposed change to provide an estimate of the reduction in costs that will result from acceptance of your Value Engineering Change Proposal. The Value Engineering Incentive Clause (J09), copy attached, in your contract requires this information to be furnished by the proposer. This cost breakdown should also include indirect costs and percentages applied to direct labor and material costs. We request you furnish this information as soon as possible.
>
> We will promptly notify you of the results after completion of the evaluation. Your interest and participation in the Value Engineering Program is much appreciated.

(R4, tab 7)

7. Following a preliminary evaluation, the VECP was forwarded to Natick on 2 October 1980 for a decision of whether to approve this proposed change. The letter transmitting the VECP was as follows:

> SUBJECT: Value Engineering Change Proposal 8680, Raincoat, Man's Black, w/Removable Liner, LP/P DES 12-77A
>
> * * *
>
> 1. Attached is subject VECP from M. Bianchi of California proposing a change in construction of the sleeve on subject raincoat.

> 2. Our technical personnel have reviewed the proposal and believe the recommendation to combine two operations in one by using a safety stitch machine in overedging the bottom raw edge and stitching the lining to sleeve catching the interlining has merit. There is the possibility that the sleeve lining may finish slightly longer, however, the lining is required to be tacked to the outer sleeve and serviceability will not be affected.
>
> 3. Contractor's estimated unit savings of $.06 projected over the number of raincoats to be procured in FY 81 would result in annual savings of $41,459.
>
> 4. We request the proposal be evaluated and we be apprised of your decision by 21 October 1980.

(R4, tab 17)

8. On 15 October 1980, appellant responded to the contracting officer's 18 September 1980 letter and submitted the following information:

> VECP #8680 recommends overedging the bottom raw edge of the sleeve lining by reference (A).
>
> In evaluating the cost savings for the above subject VECP, the direct labor is as stated 6¢ per coat. We can only estimate 2¢ for indirect cost and 2¢ as a percentage to apply to direct labor and material cost. Total savings to the government of 10¢ (By reference B).

(R4, tab 8)

9. On 25 November 1980, Natick informed DPSC that VECP 8680 had been approved for use in DES 12-77A and its follow-on specification, MIL-C-44030(GL), both of which contained the same description for operations labelled 15d and 22d. Natick authorized changing both DES 12-77A and MIL-C-44030 as follows:

Page 20

> Operation 15d. - Delete in its entirety and substitute:
>
> "15d. Safety stitch bottom raw edge of sleeve lining to bottom of sleeve, catching interlining with not less than 3/8 inch seam.
>
> | Stitch Type | Seam and Stitching Type | .... |
> |---|---|---|
> | 515, 516 or 519 | SSa-2 | .... |
>
> * * *

Operation 22c - Delete Operation 22c and Re-Letter Operation 22d to 22c.

(R4, tab 17)

10. By letter dated 29 December 1980, the acting Chairman of the Clothing and Textile Branch, Technical and Quality Assurance Division of the Directorate of Clothing and Textiles sent an Inter-Office Memorandum listing five items to which VECP 8680 "can be made applicable." They were:

| | |
|---|---|
| Coat, All Weather, Mn's | MIL-C-44030 |
| Coat, All Weather, Wmn's | MIL-C-43972 |
| Coat, All Weather, Mn's (CG) | MIL-R-87003 |
| Coat, All Weather, Wmn's (CG) | MIL-R-87009 |
| Coat, All Weather, Mn's (AF) | MIL-R-87110 |

(R4, tab 19) The record contains no indication that, other than MIL-C-44030, any of the above-listed specifications were changed. At that time, DPSC did not have authority to change specifications. It made recommendations to various service offices responsible for issuance of specifications which then made the determination whether to make such changes. It often took a long time to incorporate various changes into a clothing specification. Items which were acquired frequently and/or in large quantities received more immediate attention. Prior to a specification change, a letter directive was issued modifying the specification to reflect the change or changes for a particular item. At Natick, an individual was assigned specific items which were not necessarily related either by use or type. It was that individual's responsibility to revise specifications once a value engineering change had been approved. There was no procedure whereby all other personnel were notified of a specific change for which another individual was responsible although it was possible they might learn about the change.

11. By Inter-Office Memorandum dated 30 December 1980, the Chief of the Technical and Quality Assurance Division of the Directorate of Clothing and Textiles requested that the following contracts be modified to incorporate VECP 8680:

| | |
|---|---|
| Centre Mfg. | DLA100-80-C-2485 |
| Centre Mfg. | DLA100-81-C-2225 |
| Centre Mfg. | DLA100-80-C-2782 |
| Centre Mfg. | DLA100-80-C-3401 |
| Major Coat | DLA100-80-C-2472 |
| MBOC | DLA100-80-C-2972 |

12. On 29 January 1981, Natick informed DPSC that findings from a follow-up evaluation of VECP 8680 indicated that a line tack in the lining of the sleeve should be added as an additional operation to MIL-C-44030(GL) and DES 12-77A to take-up the excess lining fabric. The Government considers that the line tack was an outgrowth of and resulted from VECP

8680. Appellant does not concur that this tack was required as a result of VECP 8680.

13. By letter dated 10 March 1981, the Chief of the Product Engineering Office, Directorate of Manufacturing, concluded the following:

> 1. Reference IOM, your Office, dated 19 February 1981, subject as above.
>
> 2. A direct labor savings of .0071 standard hours will be realized when sleeve lining is joined to sleeve with a safety stitch in lieu of overlock and single needle stitching.
>
> 3. Overhead and profit are not included in the above figure.

Handwritten on the document is the following:

0.0071 x $4.75/hour = 0.033725
+ 80% overhead = 0.060705
+ 20% G & A = 0.073 per unit

(R4, tab 12) While when or by whom the above calculation was made and placed on the letter has not been established in the record before us, it was apparently by someone in the Government prior to recommending an amount for finalized savings to the contracting officer. (See F/F 14)

14. On 20 March 1981, the Value Engineering Office of the Directorate of Clothing and Textiles recommended to the contracting officer that the savings be finalized at $.07 per unit, with appellant eligible for a 50% share of the savings, or $0.035 per unit.

15. On 31 March 1981 the contracting officer notified appellant that VECP 8680 had been accepted at a unit price yet to be established and that the contract would soon be modified. Unilateral Modification P00005, effective 31 March 1981, made no change in the contract price but provided, insofar as VECP 8680 was concerned:

> 1. Pursuant to the Changes Article and Value Engineering Clause J09, Specification MIL-C-44030 [DES 12.77A rather than the cited MIL specification was applicable to this contract] is changed as follows as a result of VECP #8680:
>
> a. Delete operation 15.d, "overedge the bottom raw edge of the sleeve lining".
>
> b. Change operation 22.c to read: "Safety stitch bottom sleeve lining to sleeve bottom catching interlining". [This is actually a paraphrase of the revised operation 15d. Operation 22c was eliminated. See Finding 9, supra]

> 2. As a result of the above accepted VECP, the CMT unit contract price of all units subsequent to and including the initial unit covered by the VECP is to be reduced by $.035 for payment purposes to reflect the Government's share of the savings.
> 3. Contractor is entitled to 50% of the unit savings or $.035 for all Coat, All Weather,,[sic] Man's, Black w/removable liner using the accepted change #8680 during the royalty period. The royalty period shall extend for a period of 3 years after accetpance [sic] of the first item incorporating the VECP.
> 4. Contractor is obligated to annotate the DD Form 250 which applies to the initial unit covered by the VECP #8680.

(R4, tab 2 at 15)

16. The initial unit manufactured under Contract 2972, as modified by VECP 8680, was delivered to and accepted by the Government on 6 April 1981. The applicable royalty period for VECP 8680, therefore, is 6 April 1981 through 5 April 1984. The contract payments to appellant for the instant contract were never adjusted to reflect savings attributable to VECP 8680.

17. By Modification P00007, dated 16 November 1981, the undelivered quantity of 87,094 units remaining on Contract 2972 was terminated for default.

<u>VECP 8680</u>

18. All stitches and seams used in construction of Government clothing are described in FED-STD-571 (January 25, 1965). Each type of stitch or seam is assigned a number. The stitches and seams used both before and after approval of VECP 8680 existed in FED-STD-571. Prior to incorporation of the change due to VECP 8680, DES 12-77A Operation 15d required seam and stitching type EFd-1 with a choice of 502, 503 or 504 stitch type. Operation 22c required seam and stitching type SSa-1 with a 301 stitch type. After the change resulting from VECP 8680, one operation replaced these two operations. Operation 22c was deleted in its entirety and Operation 15d was changed to require seam and stitching type SSa-2 with a choice of 515, 516 or 519 stitch type (F/F 9, <u>supra</u>).

19. A safety stitch is a term used to describe a family of stitches composed of rows of single needle joining stitches and rows of overedging stitches, formed simultaneously with one pass through a sewing machine. The combination of the joining and overedging operations results in a change in the seam type to a less complex and more cost effective seam. Stitches 515 through 519 are all in the family of safety stitches. They vary depending on the types of single needle stitch and the type of overedge stitch utilized. Stitch types 502, 503 and 504 originally contained in DES-12-77A are overedge stitches. Seam type EFd-1 refers to the type of stitching produced by overedging the cut edge of one ply of fabric. Operation 22c required stitching of the sleeve lining to the shell sleeve one inch from the bottom of the overedged seam of lining using stitch type 301, a single

needle stitch performed on a lock stitch, and seam type SSa-1. SSa-1 is the most frequently used seam type and is accomplished by laying two plies of fabric together and joining the plies a specified distance from their common cut edge with the single needle 301 stitch.

20. Prior to submittal of VECP 8680, DES 12-77A required the use of safety stitches in eight other operations during production of the All Weather coat which was the subject of that purchase description. These were:

15. Make lining (yoke).

a. Join front lining to front sleeve lining at armhole with a <u>safety stitch</u>. (Stitch type 515, 516 or 519; seam and stitching type SSa-2).

b. Position front edge of back sleeve lining and front edge of cape to shoulder edge of front lining and <u>safety stitch</u> with stitching continued the entire length of sleeve (Stitch type 515, 516 or 519; seam and stitching type SSa-2).

c. Position back edge of cape and back edge of back sleeve lining to front edge of back lining and <u>safety stitch</u> to bottom of armhole. (Stitch type 515, 516 or 519; seam and stitching type SSa-2).

[d. Overedge stitch bottom raw edge of sleeve lining using Stitch type 502, 503 or 504 and seam EFd-1, prior to the change due to VECP 8680. See F/F 9 for incorporation of VECP 8680 using Stitch type 515, 516 or 519 and seam and stitching type SSa-2]

e. Close side seam of front and back lining and underarm seam of sleeve in one operation with a <u>safety stitch</u>. (Stitch type 515, 516 or 519; seam and stitching type SSa-2).

* * *

<u>MAKE LINER</u>

35. Attach front sleeve of liner to front of liner.

a. Position front sleeve to front of liner as indicated by marks on pattern and <u>safety stitch</u> around armhole. (Stitch type 515, 516 or 519; seam and stitching type SSa-2).

b. Position front edge of back sleeve to shoulder edge of front of liner and <u>safety stitch</u> with stitching continued the entire length of sleeve. (Stitch type 515, 516 or 519; seam and stitching type SSa-2).

c. Position back edge of back sleeve to front edge of back liner and safety stitch to bottom armhole. (Stitch type 515, 516 or 519; seam and stitching type SSa-2).

d. Close side seams of front and back of liner and underarm seam of sleeve in one operation with a safety stitch. . . . (Stitch type 515, 516 or 519; seam and stitching type SSa-2).

[Emphasis added] (R4, tab 5 at 19, 28-29)

The Claim

21. Appellant was not in agreement with the Government's calculated savings of $0.07 per unit and did not sign Modification P00005. No payments for VECP 8680 have ever been made to appellant. On 16 November 1987 appellant submitted a certified claim, received on 17 November 1987, for payment of its share of savings. No decision was issued by the contracting officer. When the contracting officer failed to respond to another request for a decision, appellant filed an appeal with this Board.

22. In its complaint, appellant contended that the savings as verified by the Government when it approved VECP 8680 did not include savings for indirect costs, contractor and Government furnished material or profit and alleged that the properly calculated savings for VECP 8680 were $0.164 per coat so that its share was $.082 per coat. Appellant, therefore, sought a royalty of "at least $63,502.52" for the instant contract and five other contracts because of utilization of VECP 8680 on "at least 774,421" units. Appellant further alleged on information and belief that the Government experienced collateral savings and savings on additional contracts about which it was not currently aware at the time of filing its complaint and that it would "amend its claim as further information concerning the government's use of this VECP becomes known." (Complaint, Para. 9-12)

23. Appellant's president reviewed 2,223 specifications utilized in the manufacture of military garments to determine those which were modified after VECP-8680 and which he concluded were the "mirror image" or were the "functional equivalent" of VECP 8680. Where no explanation or basis for the change was found for twenty specifications, he concluded that the change was because of VECP 8680. These specifications form the basis for appellant's claim for concurrent and future savings.[1/] On 15 February 1991 appellant supplied the Government with a list of those specifications for which it was claiming a share of savings. Appellant recognizes that it did not invent the safety stitch or introduce its use into Government specifications and seeks a share of savings for the Government's use of the safety stitch on garment locations where the safety stitch was not being used at the time of approval of VECP 8680. Based on calculations, discussed below, appellant alleges that it should receive instant and future contract savings from implementation of VECP 8680 of $2,175,807.56 for essentially the same item and $3,997,660.80 for collateral savings. Appellant also seeks interest.

The Government agrees that appellant is entitled to receive interest from 16 November 1987, but not prior to that date.[2/]

24. The specifications which appellant includes in its present claim are set forth below. A brief description of the operation(s) which appellant claims were due to its VECP is set forth under each item. Included are instances where a specification was issued using the safety stitch operation or was changed so that two operations were combined into one operation. Also included are instances where a lapped seam was required since appellant argues that a lapped type seam is functionally equivalent to the overedging operation described in VECP 8680. The lapped seam (LSC-2) is formed by folding an inside ply of material into an outside ply of material and then sewing the folds together, involving the combination of two operations — joining and edge protection.

| MILSPEC | ITEM | 1/2 UNIT SAVINGS | TOTAL NO. UNITS | TOTAL CONTR.SAVINGS |
|---|---|---|---|---|
| S-44093 | Shirt, Woman's, Long Sleeve, Polyester/Cotton<br>Make sleeve; join front to side body; join shoulder seams and back to front; set sleeves | $0.149 | 425,033 | $ 63,331 |
| S-44102 | Skirt, Woman's Classic Design Polyester/Wool<br>Make pocket and attach label; attach pocket | 0.033 | 84,417 | 2,786 |
| S-44090 | Shirt, Woman's Short Sleeve, Polyester/Cotton<br>Make sleeve underseam; join front to side body; join shoulder seams and back to side body; set sleeves | 0.149 | 926,028 | 137,978 |
| S-44092 | Slacks, Woman's Classic Design, Polyester/Wool<br>Make pocket and attach label | 0.033 | 256,648 | 8,469 |
| S-44039 | Shirt,-Man's, Long Sleeve, Polyester/Cotton<br>Set sleeve to armhole; join side and underarm seams | 0.071 | 2,848,840 | 292,268 |

| | | | | |
|---|---|---|---|---|
| S-87169 | Shirt, Woman's, Utility<br>Set sleeves; join side seams and sleeve seams | 0.063 | 142,326 | 8,967 |
| L-44089 | Liner, Night, Camouflage Parka, Desert<br>Join liner (Lap seam) | 0.101 | 260,023 | 26,262 |
| T-44047 | Trousers, Combat, Woodland Camouflage<br>Make hip pockets; make and stitch side hanging pockets | 0.136 | 11,914,174 | 1,620,328 |
| J-87024 | Jacket, Insect Repellent<br>Amended spec 5/4/84 to permit alternate of using safety stitch to attach interlining and sleeve | 0.028 | 104,431 | 2,924 |
| S-44041 | Man's Short Sleeve Shirt<br>Set sleeves; join side and underarm seams | 0.054 | 3,032,442 | 163,752 |
| C-87093 | Coverall, Man's, Fire Retardant<br>Join back arm seam; set sleeve; stitch crotch seam | 0.110 | 163,260 | 17,959 |
| P-6279J | Parka, Extreme Cold Weather, Type N-3B<br>Join sleeve linings | .0.085 | 227,863 | 19,368 |
| S-29368A | Shirt, Woman's Long/Short Sleeve, Polyester/Cotton<br>Changed operation from: Make bust and front darts; to: Assemble front and side panels (Alternate operation) | 0.027 | 108,408 | 2,927 |
| S-87005A | Skirt, Woman's, Dress<br>Added alternate zipper attachment with safety stitch | 0.014 | 1,435 | 20 |