| | | TOTAL NO. UNITS |
|---|---|---|
| 0-44109 | Overall, Combat Vehicle Crewman's<br>Series of seams using safety stitch and lap seam; Make leg cuff-slide fastening openings; make front pockets openings, attach pockets; make thigh and shin pleats and close pockets | 10,383 |
| S-83234B | Skirt, Woman's Blue<br>Make pockets | 154,284 |
| S-0037951 | Smock, Medical Assistant's, Man's<br>Join Shoulder seams; make and set sleeves; join side and underarm seams | 55,512 |
| S-3649E | Shirt, Man's Tropical, Polyester/Wool<br>Set sleeves; close sides and sleeves | 1,440,407 |
| S-44110 | Slacks, Woman's Maternity Work Uniform<br>Join stretch panel | 153,640 |

25. Each of the above-listed specifications reflected a specification modification from two operations prior to the submittal of VECP 8680 to one operation or a new specification using a safety stitch machine with stitch type 515, 516, 517 or 519 and, in most instances, seam type SSa-2. A few operations required a lap seam or seam SSa-1 rather than the SSa-2. In some instances the safety stitch operation was an alternate method of construction rather than a mandatory method. If a bidder has both types of equipment or can afford the equipment necessary for using the safety stitch, the manufacturer will prepare an estimate using each method and select the least expensive in order to be competitive.

26. Appellant was unable to obtain sufficient information during discovery relating to delivery schedules and number of units procured for some of the specifications included in its claim (the last five items set forth in Finding 24). It, therefore, estimated the number of units procured during the royalty period from information for a later period provided by Government procurement centers (such as DLA) to a company named Information Handling Systems and compiled into a database called "Haystack". Using the information contained in Haystack for the years 1983 to 1991, appellant

calculated an average for each year and then used this average (multiplied by three) to estimate the number of units for each of the five items included in the "Total No. Units" column listed above with no dollar figure listed under "Total Contract Savings" (F/F 24). Appellant seeks the product of the amount we conclude appellant should receive per unit for those items multiplied by the number of estimated units. Appellant had included one other specification (making the 20 total - F/F 23) in its claim for future savings, MIL-C-87170. Since it was unable to obtain any information through either discovery or its own sources upon which it could base an estimate of units obtained during the royalty period, in its brief appellant stated it was not claiming any savings from that specification.

Quantification of the Contract Savings

27. A consultant to the apparel industries appeared for appellant. He calculated savings on direct labor and material for Contract 2972 by estimating the manufacturing time and material required for all operations prior to and after approval of VECP 8680. The difference represented the direct labor and material saved for each unit.

28. Using a sophisticated system of time/motion studies and a data base of production standards (expressed in Standard Allowed Minutes per piece) for similar types of garments, he calculated the Standard Allowed Minutes (SAM) savings to be 0.734, as follows:

| No. | Description | SAM |
|---|---|---|
| 15d | Overedge bottom of sleeve lining | 0.697 |
| 22c | Set Sleeve lining to sleeve | 1.271 |
| | Original Total Standard Minutes (SAM) | 1.968 |
| 15d | Combining operations per VECP 8680 | 1.234 |
| | Savings | 0.734 |

(Exh. 1073 at 19)

29. To calculate the Total Direct Labor Minutes Saved, appellant's expert added the Associated Direct Labor Factor and the Support Direct Labor Factor to the 0.734 SAM. He used 20 percent, based on experience with similar shops, to compute the Associated Direct Labor Factor. This included training of direct labor, repairs, relocation of direct labor personnel to balance the production line and machine downtime. He used 15 percent, based on experience with similar shops, to compute the Support Direct Labor Factor which included the direct supervisors, bundle girls, mechanics and quality assurance personnel. This was calculated as follows:

| | |
|---|---|
| Net Standard Minutes Saved | 0.734 |
| Associated Direct Labor Factor (20%) | 0.147 |
| Subtotal | 0.881 |

| | |
|---|---|
| Support Direct Labor Factor (15%) | 0.132 |
| Total Direct Labor Minutes Saved | 1.013 |

(Exh. 1073, p. 20)

30. After calculating the labor savings because of VECP 8680, appellant's expert estimated the amount of fabric, lining and interlining which in his opinion should have been saved as a result of the VECP. Operation 22c had required a seam allowance of 1 inch. When this operation was eliminated by VECP 8680, a pattern change to eliminate excess material and reduce the seam allowance to 3/8 inch was possible. This would have resulted in a savings of 5/8 inches for the Government furnished fabric, the lining and the interlining.

31. VECP 8680 did not include a suggestion that the lining be shortened, thereby saving fabric. In its submittal of estimated savings submitted on 15 October 1980, appellant estimated a savings for direct labor but none for material (F/F 8). Nor was there a change in the patterns to shorten the lining. Revision of Government patterns is a complicated matter and is not the responsibility of nor performed by DPSC. The cognizant Government office did not elect to change the patterns and testimony at the hearing by an individual who was not involved with approval of VECP 8680 by Natick nor with the requirement of addition of the line/tack (see F/F 12) was that this was so that there would be sufficient material so that if the sleeve had to be lengthened for the user there would be sufficient lining material. This same witness had drafted an all weather coat specification in 1977 which used an operation similar to that suggested by VECP 8680. However, it did not require the lining to be tacked to the sleeve shell. There was also testimony that the lining could have been left alone completely, "not putting any bar tack at all, leave it loose" (tr. 6-134). We conclude that the record fails to persuade us that the addition of the line tack was necessary because of VECP 8680.

32. Appellant's expert used what is termed the "square inch method" to calculate the total material which he concluded could have been saved as a result of VECP 8680, as follows:

| Part | Sq.Inch/ Sleeve | Saved Per Garment |
|---|---|---|
| GFM (Back and front sleeve material) | 10.313 | 20.626 |
| Lining (Back and front sleeve) | 10.131 | 20.626 |
| Nonwoven Interlining | 9.844 | 19.688 |

(Exh. 1073, p. 21)

33. Appellant's expert accounting witness quantified the claim using the savings in labor and material set forth above. He concluded that it would be appropriate to factor in an escalation rate for labor and material costs for the three-year period during which appellant was entitled to share in instant and future contract savings because it was a time when both were rising. Using Labor Force Employment and Earnings statistics for Apparel and Other Textile Products published by the U. S. Department of Commerce, Bureau of Economic Analysis, in the Survey of Current Business, he calculated a labor escalation of $0.333. He used the mid-point of appellant's performance under this contract, December 1980 as the starting point and the midpoint of the three year period, October 1982, as the date for the average labor rate for the three-year period. Adding the escalation rate to appellant's average labor rate of $4.00 during performance of this contract, he made the following computation:

| | | |
|---|---|---|
| Contractor Labor Rate/Hour for Contract 2972 [Based on a DCAA Audit report which took no exception to average incurred contract direct labor rate of $4.00 per hour submitted by appellant] | | $4.000 |
| Rate Escalation | | 0.333 |
| Escalated Contractor Labor Rate/Hour | | $4.333 |
| Labor Rate/Minute ($0.072/60) | | $0.072 |
| Total Direct Labor Minutes Saved [F/F 29] | | 1.013 |
| Total Direct Labor Savings per Garment | | $0.073 |
| Indirect Expense Savings per Garment [Based on DCAA recommended forward pricing rate] | @ 47.94% | $0.035 |

34. Appellant's accounting expert also calculated the dollars applicable to material savings. Using the Producer Price Index for Textile Products and Apparel published by the U. S. Department of Commerce, Bureau of Economic Analysis, in the Survey of Current Business, he estimated an escalation for fabric furnished by both the contractor and Government based on a midpoint of performance of the royalty period of October 1982. Applying these escalated fabric costs to the estimated square inch savings/sleeve (F/F 31), he estimated savings for contractor supplied fabric (lining and interlining) of $0.026 per garment and Government furnished material savings of $0.038 per garment (exh. 1029 at 3-6, 8-9).

35. Appellant used 47.94 percent as its indirect expense rate. This was the recommended Defense Contract Audit Agency (DCAA) rate for appellant's calendar year 1980. While the overhead experienced by appellant during 1981 was higher than this due to problems encountered by appellant in developing the unit savings, and its cessation of operations during 1981,

because of lack of historical data, appellant made no increase in this rate. The Government used 80 percent for overhead and 20 percent for G&A, a total of 100 percent (F/F 13). The 1980 indirect expense rate was lower than that experienced by appellant in 1981. No audit was performed by the Government for 1981. We conclude that the rate used by the contracting officer in her unilateral determination of the instant contract savings is the appropriate rate to use in determining instant contract savings.

36. Appellant included a profit factor of 11.9 percent in estimating its price for this contract. In estimating the amount of savings for VECP 8680, appellant calculated profit on its costs, excluding GFM, at this 11.9 percent. ASPR 1-1703.1 (d), in effect at the time of award of the subject contract, provided:

> On instant and future contracts the contractor's profit or fee shall be excluded when calculating the net savings.

37. Summarizing the various savings, appellant's accounting expert calculated that the savings were as follows:

| | |
|---|---|
| Contractor Furnished Materials Savings | $0.026 |
| Direct Labor Savings | 0.073 |
| Indirect Expense Savings | 0.035 |
| Other Direct Cost Savings | 0.000 |
| Subtotal | $0.134 |
| Profit | 0.016 |
| Government Furnished Material Savings | 0.038 |
| Total Savings/Garment | $0.188 |
| Contractor Assigned Savings (50%) | $0.094 |

38. The contractor assigned savings of $0.094 was multiplied by 837,329 units estimated as delivered during the royalty period to claim a total savings for items obtained using MIL-C-44030 of $78,709. Appellant used the services of a consultant to determine the quantity of units delivered under the instant contract and other contracts using MIL-C-44030 for which it concludes that the VECP was made applicable. The consultant reviewed contract procurement history records from Government records obtained during discovery and information from a commercially available database known as "Haystack" (see F/F 26). Neither of these sources had complete information but by combining them and making certain assumptions based on available information as to delivery schedules, he reached the following conclusions about deliveries of the Man's All Weather Coat w/Removable Liner produced using MIL-C-44030 or DES 12.77A (exh. 1041, p. 1):

| Cont.No. DLA100- | Manufacturer Name | Award Date | Quantity | Qty in Royalty Per |
|---|---|---|---|---|
| 80-C-2485 | Centre Mfg Co. | Jan-80 | 125,840 | 0 |
| 80-C-2972 | M Bianchi of Calif. | Jun-80 | 125,240 | 22,000 |
| 81-C-2227 | Major Coat Co. | Oct-80 | 58,976 | 28,976 |
| 81-C-2773 | Centre Mfg Co. | Feb-81 | 91,176 | 91,176 |
| 81-C-2773* | Centre Mgf Co. | Feb-81 | 91,184 | 91,184 |
| 81-C-3451 | Centre Mfg Co. | Sep-81 | 156,776 | 156,776 |
| 81-C-3451* | Centre Mfg Co. | Sep-81 | 78,384 | 78,384 |
| 82-C-0562 | Centre Mfg Co. | May 82 | 218,591 | 218,591 |
| 83-C-0649 | Centre Mfg Co. | May-83 | 123,858 | 123,858 |
| 84-C-0285 | Centre Mfg Co. | Dec-83 | 174,028 | 26,384 |
| TOTALS | | | 1,244,053 | 837,329 |

*/ Option quantities

The record contains no information concerning utilization of VECP 8680 in contracts other than DLA100-80-C-2485 for which modifications were suggested by the Chief of the Technical and Quality Assurance Division of the Directorate of Clothing and Textiles because of VECP 8680 (F/F 11).

39. In developing this appeal, appellant was at a disadvantage since, other than information available through sources such as Haystack, all of the information it needed was in the possession of the Government.[3/] The Government now argues that the above information concerning concurrent contracts fails to reflect items which were rejected or variations (decreases) delivered in quantities permitted under the contracts. We conclude that under the circumstances the information in the record, summarized above, presents a fair basis for determining the quantity of similar coats delivered during the royalty period.

40. Under the J09, Value Engineering Incentive clause paragraph (e)(2) (F/F 3), savings attributable to concurrent contracts are determined using the reduction in price of each concurrent contract. VECP 8680 was a mandatory change which was incorporated into the concurrent and future contracts using MIL-C-44030(GL). At the same time that VECP 8680 was added to the contracts, the line tack was also added. The prices negotiated with Centre and Major on their contracts combined those two changes. That resulted in an increase, rather than a decrease, in contract price so that the Government's position is that there were no concurrent or future savings for the contracts, other than appellant's, listed above in F/F 38. We have concluded in F/F 31 that this record has failed to establish that the addition of the line tack was required by VECP 8680. We, therefore, conclude that the per unit saving we determine is applicable to the instant contract is a reasonable per unit savings for the contracts under which the same garment was manufactured during the savings period.

41. Paragraph (e)(3)(iii) of the Value Engineering Incentive clause (F/F 3) permits the Government to reduce the future contract savings for

certain stated reasons. Based on concerns that the Government might argue that it was not entitled to the amount determined for instant contract savings on future items, appellant "reengineered" the items included in its claim for future contract savings. The same detailed and extensive method was used for determining the instant contract unit savings and the reengineered unit savings for each contract for which appellant seeks inclusion in savings resulting from VECP 8680. The reengineered per unit savings for which appellant concluded it had sufficient information to make the computation are set forth in F/F 24. Appellant seeks recovery for the last five specifications at the amount we conclude it is entitled to receive for instant contract savings because of its inability to "reengineer" savings for those specifications. Whether instant contract savings or recalculated savings for a future contract are used in determining quantum is a matter left to us for decision in this appeal.

42. The Government does not challenge the methodology used by appellant in its calculations. Its objections essentially challenge whether appellant is entitled to recover for savings resulting from the inclusion of the safety stitch in other specifications as future savings under this contract (which issue will be discussed, infra) and quantification of some of the items.

43. The Value Engineering Incentive clause in appellant's contract did not provide for collateral savings. The standard Armed Services Procurement Regulation (ASPR) clause contained a provision for collateral savings, such as savings relating to handling of materials, storage of particular goods, shipment of particular goods, etc., with a maximum of $100,000 or the price of the contract on which the VECP is submitted, whichever is greater. Since appellant was unable to obtain any information during discovery which it could use in determining collateral savings to the Government from VECP 8680, it seeks its contract price of $3,997,366.40 (F/F 2) as collateral savings from approval of this VECP.

44. ASPR 1-1703.2 (1 July 1976), in effect at the time of award of the subject contract, entitled "Collateral Savings" provides that the Collateral Savings clause "may be excluded from a contract or class of contracts when the HPA [Head of the Procuring Activity] determines that the cost of computing and tracking collateral savings will exceed benefits to be derived." In accordance with the foregoing, the DPSC Contracting Manual instructs the Clothing and Textile Directorate to exclude the collateral savings provision from the Value Engineering Incentive clause because the head of the activity had determined that the cost of tracking collateral savings would exceed the benefits to be derived from acceptance of a VECP, and the collateral savings provision was therefore omitted from the contract (tr. 5/39, 80). The standard Value Engineering Incentive clause, supra, contains, at subparagraph (e)(4) the provision concerning Collateral Savings and includes the provision that

> . . . The determination of the amount of collateral savings, if any, will be made solely by the Government and not be subject to the "Disputes" clause of this contract.

## DECISION

### Jurisdictional Issue

In its posthearing brief, the Government argues that the Board lacks jurisdiction to consider appellant's claim for those specifications which appellant alleges were revised because of VECP 8680 other than the specification for the all weather coat since that portion of the claim based on those specifications (F/F 24) was never submitted to the contracting officer for final decision. While a motion to dismiss for lack of jurisdiction based on a similar argument was denied in our opinion in ASBCA Nos. 37029 and 37071, supra, we reiterate our conclusion that appellant's claim contained all the information available to it at the time of filing and that the enlargement of its claim is the result of information obtained during discovery from information unavailable until supplied by the Government. The increase in dollars did not result from new claims, new legal theories, or new factual bases for recovery. While the Government's argument and request that these additional specifications be remanded to the contracting officer was not captioned as a motion to dismiss, we consider it such and deny the motion.

### Essentially the Same Item

The major dispute, which has permeated this appeal throughout, is the question of what constitutes "essentially the same item." It is of utmost importance in this appeal since it determines the number of units to which a relatively small per unit savings (09.4¢ according to appellant, 03.2¢ according to the Government) will apply and establish appellant's share of contract savings because of acceptance of VECP 8680. It has clouded all efforts to resolve this dispute by settlement, and was the subject of our earlier opinion on the Motion for Partial Summary Judgment where we concluded that this question was a factual one which must be determined taking into consideration the VECP involved and the items involved in the particular claim. Appellant has created many volumes of detailed analyses to quantify those specifications which it considers were changed because of acceptance of VECP 8680. Before we reach consideration of these materials, however, we must first determine whether each specification included in appellant's claim meets the definition of "essentially the same item" as used in the Value Engineering Incentive clause, J09 (F/F/3) under which a share of savings on both concurrent and future contracts for essentially the same items is awarded.

#### Appellant's Position

Appellant uses a very broad interpretaion of both what approval of VECP 8680 actually includes and what constitutes "essentially the same item" as used in J09. Its position, in defining the term, is that the safety stitch operation recommended by VECP 8680 is not restricted to any garment or material; it is only confined to the edge of two pieces of fabric going together. Therefore, even though VECP 8680 was submitted on the raincoat specification to cover specific operations involving the raincoat lining, i.e., overedging the lining and then joining it to the sleeve, appellant

maintains that the focus of VECP 8680 was to combine the two separate operations of overedging and joining into a single operation using the safety stitch and that any garment utilizing such operation would qualify as essentially the same items. Appellant also argues that VECP 8680 included the combination of operations that are the functional equivalent of the overedging and joining operations described in VECP 8680 on essentially the same items. Functionally equivalent operations would be the (1) protection of raw edges using a lapped type seam and (2) sewing of multiple single needle rows using a lock stitch (F/F 24). In appellant's view, the safety stitch is not restricted to any seam and can be used on all garments and is essentially the same operation with respect to all garments without regard to the type of garment involved or, as long as compatible materials are used, to the type of material involved and does not require the use of any specific machine.

Appellant maintains that the objective of VECP 8680 was to improve productivity and save material where two or more plies of fabric are joined together and where one or more of the plies is "neatened" or protected from unravelling. The intent is achieved by (1) combining the two specific operations of overedging and joining, or (2) combining the two sewing operations (with multiple steps) that are the functional equivalent of the overedging and joining operations specified for the raincoat. While appellant recognizes that the VECP 8680 was framed in terms of the operations included in the specification applicable to its contract, it maintains that this was because it had to submit the VECP in terms of its application to the garment involved in its contract because of the format required. It asserts that the VECP was broader than that and "[i]f the articles can use the concept or its functional equivalent and have benefitted from appellant's proposal or its functional equivalent, the articles should be considered essentially the same and a royalty sharing based upon the cost savings the Government has enjoyed is appropriate" (app. br. at 125).

The Government's Position

The Government interprets the language in the Value Engineering Incentive clause in a much narrower fashion. Its position is that the language in paragraphs (e)(2)(i) (sharing in savings on concurrent contracts) and (e)(3)(ii) (F/F 3) (sharing in savings on future contracts) which speaks of purchases of "essentially the same item" means an item which serves the same function and has the same fabrication. Therefore, in the case before us, savings are applicable only to purchases of all-weather coats which required the use of the safety stitch in attaching the sleeve lining to the sleeve of the coat. In addition, where the requirement is an alternate method of construction, savings are payable only in those instances where the alternate using the safety stitch was actually used.

Conclusion

We cannot accept the position of either party. In our view, appellant's position is too broad and the Government's position is too narrow. We agree with appellant that application of the Value Engineering Incentive clause

must be liberally interpreted, since its purpose is to encourage contractors to make suggestions which will save the Government money by allowing them to share in such savings. However, the clause itself indicates that there are limits in both the period for such savings and the item procured. Therefore, we must examine the facts for each particular situation. We cannot make a broad statement that is generically applicable.

While we recognize that the decision in M. Bianchi of California, ASBCA Nos. 37029 and 37071, supra, rejected appellant's position that any item packed in a shipping container (box) was "essentially the same item" as used in the J09 clause similar to the one in the instant appeal, and concluded that most of the items were not even remotely similar to the woman's pantsuit purchased under the contract involved in that appeal, the question is factual and must be considered based on the garment and the VECP.

We are not persuaded by appellant's argument that the term should be defined to include any application of the safety stitch to any item of clothing. The safety stitch was not a new or novel operation. It was even used in other operations in the specification which was involved in this contract (F/F 20). As a matter of fact, many of the applications for which appellant claims entitlement are more similar to the operations which were already in the specification prior to submittal of VECP 8680 and we cannot accept appellant's argument that its submittal "reminded" the Government it should consider using the stitch in other specifications and applications. The fact that the safety stitch is incorporated into manufacture of the garment indicates that the Government has already concluded that it would meet the functional and other requirements of the garment. Otherwise, it would not have designated the use of the stitch. Appellant could have expressed its submittal in broader terms and specified its application to the instant contract. It did not do so. We, therefore, conclude that recovery for savings under this VECP would only apply to items which reflected the change appellant had suggested.

Nor are we persuaded by the Government's reliance on dicta in our opinion in Tennier Industries, Inc., ASBCA No. 29464, 86-3 BCA ¶ 19,046. That case concluded that the contractor was not entitled to any savings because the Government was already testing the subject of its proposal. The Board was not faced with the question before us and did not consider the term "essentially the same item" when it concluded that two sleeping bags were not "one and the same." In our view, "one and the same" is a different conclusion from "essentially the same." At best, the conclusions which the Government draws from that opinion are based on dicta.

We also limit our consideration to 6 April 1981 through 5 April 1984, the period during which appellant would share in savings. This would eliminate any consideration of MIL-J-87024. Appellant's claim included 104,431 jackets delivered during the royalty period. However, this was prior to issuance of the amendment to the specification on 4 May 1984 which appellant alleges resulted in incorporation of VECP 8680 (F/F 24). Examining each of the remaining eighteen operations for which appellant seeks a share of savings (F/F 24), we conclude that none can be attributed to VECP 8680. We eliminate the operations requiring the use of a lap seam

(F/F 24) since that is a different type of seam than the seam recommended by appellant. We also eliminate those specifications which require the use of the stitch and seam in VECP 8680 which join other seams, such as side seams, or the setting of the sleeve into the garment or other operations unrelated to that suggested by appellant in its VECP.

We, therefore, conclude that appellant is not entitled to recover instant or future contract savings for any of the nineteen items included in its claim as set forth in F/F 24.

## Quantum

Having reached the conclusions set forth above, we must consider the per unit savings resulting from incorporation of the safety stitch operation approved as VECP 8680 and the number of units to which those savings should be applied. We have already concluded that the instant contract savings should not be reduced by the cost of adding the line or bar tack as implementation costs for the VECP (F/F 31). The record failed to establish that VECP 8680 required such inclusion.

### Direct Labor Savings

Appellant introduced extensive evidence of costs before and after the changes resulting from VECP 8680. It seeks both savings in labor and in material. We have set forth the after-the-fact computations in F/F 27-37. Included in appellant's computation was a calculation of escalation of costs over the three-year savings period. The Government argues that there is no provision in the Value Engineering Incentive clause for escalation of costs. That clause, F/F 3, is silent about this question. It neither permits or prohibits increases due to escalation of costs over the payment period. It permits the savings and recognizes that this may include some estimates. See, for example, paragraph (e)(1)(i)(A).

While it may be proper to use escalation when estimating the amount of instant contract savings prospectively pursuant to paragraph (e)(1)(i)(A) of the Value Engineering Incentive clause, the instant contract savings here are calculated on appellant's actual, experienced labor rate of $4.00 per hour. This already reflects any labor rate escalation which may have occurred during contract performance. Since the clause provides that future contract savings are calculated using "instant contract savings," there is no provision for escalation during the royalty period beyond what may have been reflected in instant contract savings.

### Contractor and Government Furnished Material Savings

Appellant also seeks savings for material because of the approved VECP. While it recognizes that there were no actual material savings (F/F 31), it argues that there should have been new patterns issued and savings in material would have resulted. We have already concluded that a line tack because of the excess fabric length was not established as a result of implementing VECP 8680 (F/F 3). By the same token, we conclude that

appellant's recovery is limited by the proposal which it made when submitting the VECP. It could have included a recommendation that the patterns be adjusted and that this would save fabric. It did not do so. Therefore, we do not consider it part of VECP 8680. The proposal as submitted by appellant was sketchy at best and did not contain all the documentation required by the clause (F/F 3 at (b)). The Government requested additional information which, when provided, also lacked the type of detail appellant supplied as proof for this hearing. If appellant considered that there would be a saving of fabric, it could have said so. Its submittal and additional response both addressed direct labor savings. There was no reference to direct material savings. The only reference to material was to 2¢ savings "as a percentage to apply to direct labor and material cost." It is not clear just what appellant meant by that, but it is clear that in estimating a 10¢ savings, in addition to the above 2¢, appellant estimated 6¢ for direct labor and 2¢ for overhead (F/F 8). We conclude that there is no basis for including an amount for unrealized fabric savings on the basis that there could have been such savings had patterns been changed.

<u>Indirect Expenses</u>

The DCAA recommended rate for 1980 of 47.94 percent was used by appellant in calculating instant contract savings because of lack of historical data for 1981 (F/F 35). We conclude that overhead for 1981 was greater than that for 1980. The Government had used 100 percent and this amount was accepted by the contracting officer in making the determination of unit savings as a result of VECP 8680. We conclude that the 47.94 percent did not reflect the 1981 overhead and accept the amount used by the contracting officer in determining unit savings. Cf. S. W. Electronics & Manufacturing Corp. v United States, 655 F.2d 1078 (Ct. Cl. 1981).

<u>Profit; Concurrent Contract Savings; Future Contract Savings</u>

Appellant seeks profit of 11.9 percent. It recognizes that it is not entitled to profit on instant contract savings but argues that it is entitled to them on concurrent and future contract savings. We do not agree. Concurrent contract savings should be based on the actual negotiated savings under those contracts. Since, in the instant case, the Government negotiated those contracts with two changes, for one of which (the line tack) we have concluded this VECP should not be charged, we conclude that instant contract savings would be a reasonable jury verdict amount to apply to concurrent contract savings. Future contract savings are also based on instant contract savings unless the Government determines that there should be an adjustment. It made none and we see no basis for doing so as to the items for which we conclude appellant should recover.

Appellant also states that the 11.9 percent is included in instant contract savings not as profit on savings but as part of its estimate of acquisition savings. We consider this a euphemism for profit and unallowable pursuant to ASPR 1-1706.1 (F/F 36). We are also not persuaded by appellant's argument that the prohibition on profit pertains only to appellant's contracts and not to contracts of third parties. Since, by the

clause, concurrent contract savings are the negotiated savings to the concurrent contractor and future contract savings are, with certain exceptions, based upon the instant contract savings, we conclude that the prohibition of profit pertains to all savings permitted under the clause.

Instant Contract Savings

Considering all of the above, after eliminating those items in appellant's calculation which we have determined should not be included, we conclude that, based upon this record, the instant contract savings resulting for VECP 8680 was $0.14 (14¢) per unit. Contractor assigned savings, 50 percent of this amount, would be $0.07 (7¢) per unit. Multiplying $0.07 by the 837,329 units we have concluded was a reasonable number (F/F 38), we conclude appellant is entitled to the following as contract savings for instant, concurrent and future contracts:

$0.07 x 837,329 = $58,613.03

Collateral Savings

The Value Engineering Incentive clause included in this contract, J09 (F/F 3), did not contain the provision for collateral savings resulting from acceptance of a value engineering change proposal. ASPR 1-1703.2 (1 July 1976) permits such exclusion when the head of the procuring activity determines that the cost of computing and tracking collateral savings would exceed the benefits derived from the change (F/F 44). Appellant argues that the record fails to contain the requisite documentation for this determination so collateral savings should be awarded. By the same token, appellant failed to submit the requisite prediction of any collateral savings as required by J09 paragraph (b)(iv), the Value Engineering Incentive clause in the contract (F/F 3). We conclude that the unrebutted testimony that the DPSC Manual instructing that the collateral savings clause not be included because of a determination by the agency head is sufficient for purposes of this record.

Appellant is not entitled to recover collateral savings which it seeks ($3,997,660.80).

Interest

Appellant seeks interest from six months after approval of VECP 8680 since J09(f) requires payment of concurrent and future savings within six months of modification of concurrent or future contracts. That paragraph makes no provision for interest. It is well established that payment by the Government of interest is only permitted by contract, statute or regulation. Here there is no such provision. Interest is payable pursuant to the Contract Disputes Act from the date of receipt of the claim until paid. While the parties agree that that date was 16 November 1987, the facts indicate the claim was not received until 17 November 1987. Appellant is entitled to interest on any amount due from 17 November 1987 at the applicable rates.

<u>Summary</u>

The parties submitted well written and extensive briefs. We have considered all of the arguments which they included but, in order to not prolong an already lengthy opinion, we have not addressed them all directly. Those we have not discussed will not change the results we have reached. Because of the conclusions we have reached, we need not consider appellant's Motion to Strike Government Exhibits 28-38.

We have concluded that appellant's definition of its VECP was far broader and more extensive than the VECP 8680 which it submitted and which was approved. We have further concluded that under the record of this appeal recovery is limited to the all-weather coats which incorporated VECP 8680.

Since this appeal concerns determination of quantum, we have discussed the various elements which appellant included in calculating its claim and have concluded that the per unit savings were $0.14 per unit of which appellant is entitled to receive $0.07. Applying this to the number of units, we have concluded that appellant's share of savings is $58,613.03. Interest on amounts due appellant should be computed from 17 November 1987.

The appeal is sustained in the amount of $58,613.03 plus interest on amounts due appellant from 17 November 1987 and denied as to the rest.

Dated: 10 February 1993

RUTH C. BURG
Administrative Judge
Member of the Armed Services
Board of Contract Appeals

I <u>concur</u>

V. JOHN RIISMANDEL
Administrative Judge
Acting Chairman, Armed Services
Board of Contract Appeals

I <u>concur</u>

WILLIAM J. RUBERRY
Administrative Judge
Vice Chairman, Armed Services
Board of Contract Appeals

NOTES

1. Initially appellant included 21 specifications in its claim. Upon obtaining additional information from the Government, which was the sole party with appropriate information, appellant refined its claim to the 20 specifications included in its brief. Appellant supplied the Government with a list of the specifications on 15 February 1991. On the first day of the hearing, the Government offered Exhibits 28-38, Limited Purchase Descriptions issued prior to VECP incorporating certain changes which were included in subsequent specifications upon which appellant relied for eleven of the specifications included in its claim. They were received in evidence over appellant's objection. On 6 September 1991, appellant filed a written Motion to Strike these exhibits as hearsay based on the Government's failure to authenticate or identify these documents pursuant to the Federal Rules of Evidence, or, in the alternative, a Motion for the Imposition of Discovery Sanctions to preclude for failure to acknowledge the existence of this information or produce it during discovery despite repeated discovery requests for such information.

2. We recognize that the Government, in its response to appellant's proposed Finding 332, indicated that it did not dispute interest from 16 February 1987. However, we conclude that this was a typographical error, since that date is unrelated to any dates involved in this appeal and other parts of the Government's reply brief (including in its conclusion at page 88).

3. During preparation of its appeal appellant had great difficulty in obtaining information concerning other Government contracts and information which was solely in the Government's possession. There were numerous motions to compel directed to a former Government counsel assigned to this appeal and, ultimately, severe sanctions were imposed because of failure to comply with Board orders concerning discovery. Present counsel were very cooperative and should in no way be tarred by action of prior counsel.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 36518, Appeal of M. Bianchi of California, rendered in conformance with the Board's Charter.

Dated: 11 FEB 1993

EDWARD S. ADAMKEWICZ
Recorder, Armed Services
Board of Contract Appeals