R. VAUGHN GOURLEY, ESQ.
Nevada Bar No. 0503
STEPHENS, GOURLEY & BYWATER
3636 North Rancho Drive
Las Vegas, Nevada 89130
(702) 656-2355 Telephone
(702) 656-2776 Facsimile
and
GEORGE E. GRAZIADEI, ESQ.
Nevada Bar No. 1775
SCOTT MICHAEL CANTOR, ESQ.
Nevada Bar No. 1713
GRAZIADEI & CANTOR, LTD.
302 E. Carson Avenue, Suite 400
Las Vegas, Nevada 89101
(702) 477-7733 Telephone
(702) 477-0020 Facsimile
Attorneys for Plaintiff,
MAURICE L. BIANCHI

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| MAURICE L. BIANCHI, fdba M. BIANCHI, OF CALIFORNIA, Plaintiff, | No. 04-440C (Judge Horn) |
| vs. | (ORAL ARGUMENT REQUESTED) |
| THE UNITED STATES OF AMERICA, Defendant, | Electronically Filed February 1, 2005 |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiff, MAURICE L. BIANCHI, fdba M. BIANCHI OF CALIFORNIA, by and through his counsel of record, and hereby moves this Honorable Court pursuant to the provisions of 56 of the Rules of the United States Court of Federal Claims, for Summary Judgment upon his claims herein.

This Motion is made and based upon all of the records and pleadings already on file herein, the Points and Authorities attached hereto, the Joint Stipulations of Fact and the Appendix to the Joint Stipulations of Fact, as on file with the Court, and such argument as may be entertained by the Court, should oral argument be granted in this matter.

Dated this _____ day of February, 2005.

STEPHENS, GOURLEY & BYWATER

______________________________
R. VAUGHN GOURLEY, ESQ.
Nevada Bar No. 0503
3636 North Rancho Drive
Las Vegas, Nevada 89130
(702) 656-2355 Telephone
(702) 656-2776 Facsimile
and
GRAZIADEI & CANTOR, LTD.
GEORGE E. GRAZIADEI, ESQ.
Nevada Bar No. 1775
SCOTT MICHAEL CANTOR, ESQ.
Nevada Bar No. 1713
302 E. Carson Avenue, Suite 400
Las Vegas, Nevada 89101
(702) 477-7733 Telephone
(702) 477-0020 Facsimile
Attorneys for Plaintiff

## I.

## **POINTS AND AUTHORITIES**

### A. Introduction

Plaintiff, MAURICE L. BIANCHI, while doing business under the trade name and style of M. BIANCHI OF CALIFORNIA, entered into a series of contracts with the Defense Logistics Agency (DLA) of the Department of Defense for the manufacture and shipment of men's and women's military uniforms. (*Appendix, 495*). Disputes arose

between Mr. Bianchi and the government regarding the contracts, resulting in litigation before the Armed Services Board of Contract Appeals. (*Appendix, 202-204*). The respective claims of Mr. Bianchi and the government were resolved by a stipulated agreement reduced to writing and entitled, "Stipulation to Board Decision," which was intended to be and was, in fact, incorporated into the "Decision of Administrative Judge Burg" of the Armed Services Board of Contract Appeals (*Appendix, 202-204*). Litigation then ensued between the United States and Mr. Bianchi regarding various aspects of the government's obligations under the Stipulation to Board Decision (*Appendix, 246-251; 252-260*). Dispositive decisions interpreting that settlement agreement and defining the parties' rights, duties and obligations under that agreement have been entered by a number of Courts, including, the United Stated States Court of Appeals for the Federal Circuit and the United States Court of Appeals for the Ninth Circuit (*Appendix, 252-260; 298-303; 346-352*).

The instant litigation was filed to enforce the terms of the settlement agreement between Mr. Bianchi and the government as memorialized by the Stipulation to Board Decision. Mr. Bianchi has alleged in this litigation that pursuant to the rights reserved to him by the Stipulation to Board Decision, he pursued claims for Value Engineering Change Proposal royalties; that the Armed Services Board of Contract Appeals determined his right to certain royalties, but that the government has failed and refused to pay those royalties to him. Mr. Bianchi has asserted that his right to payment of the royalties is conclusively established by numerous decisions of the United States Court of Appeals for the Federal Circuit and the United States Court of Appeals for the Ninth Circuit. The government contends that it effectively paid Mr. Bianchi by paying Mr. Bianchi's entitlement to Bank of America, an assignee of Mr. Bianchi. Mr. Bianchi contends that irrespective of that payment, the government is still indebted to him for

the amount of the Value Engineering Change Proposal royalties and that, pursuant to a decision of the United States Court of Appeals for the Federal Circuit, he is entitled to that payment irrespective of whether the government was indebted or obligated to or paid his assignee pursuant to the assignments.

In Pre-Trial proceedings herein, and pursuant to Rule 56(h)(3) of the Rules of the United States Court of Federal Claims, the parties entered into, pursuant to an Order of the Court, certain Joint Stipulations of Fact and an Appendix to the Joint Stipulations of Fact, which were previously filed and are of record herein and Bates stamped.

Based upon the Joint Stipulations of Fact and the accompanying Appendix, Mr. Bianchi is now entitled to Judgment upon his Complaint as a matter of law for the amount of the Value Engineering Change Proposal royalties awarded him pursuant to his reservation of rights in the settlement agreement, together with all interest accruing thereon, as allowed by the awards themselves.

**B. The Joint Stipulations of Fact**

Pursuant to the Court's Order of November 17, 2004, the parties settled Joint Stipulations of Fact (Bates stamped). The parties have stipulated to the following facts:

1. In 1979 and 1980, Maurice Bianchi, formerly doing business as M. Bianchi of California, was awarded three (3) contracts by the Defense Personnel Support Center ("DPSC") to produce clothing for the military (*Appendix,* 495*)*.

2. Two (2) of the three (3) contracts were contract number DLA100-80-C-2972 and contract number DLA100-80-C-2290 (*Appendix, 63; 469*).

3. Mr. Bianchi executed an "Assignment of Claims Under Government Contract" in favor of Bank of America with respect to both contract number DLA100-80-C-2972 and contract number DLA100-80-C-2290 (*Appendix, 65; 69; 200-201*).

4. The Bank properly notified the government of the assignments (*Appendix, 62-70*).

5. Mr. Bianchi filed Appeals before the Armed Services Board of Contract Appeals ("ASBCA") in ASBCA case numbers 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933 and 29934 ("the ASBCA claims") (*Appendix, 202-204*).

6. On September 27, 1988, the government and Mr. Bianchi entered into an agreement to settle the ASBCA litigation, entitled "Stipulation to Board Decision" (*Appendix, 202-204*).

7. The settlement agreement provides:

"The parties to the above-listed Appeals agree to stipulate to the following decision by the Board:

[1.] The parties agree that Mr. Maurice Bianchi, as successor to M. Bianchi of California, is entitled to recover $617,500.00 on his claims in the following appeals: ASBCA Nos. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933 and 29934; that the government is entitled to take nothing on its claims in the following appeals: ASBCA Nos. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933 and 29934; that Mr. Bianchi is entitled to interest computed in accordance with Clauses L78 (Disputes [1979 MAR]) of the contracts, at the rates prescribed by the Secretary of the Treasury, under the Re-negotiation Act, Public Law 92-41, on the principal amount of $617,500.00, such interest to run from June 19, 1981, until the date of payment; and that the parties waive their rights to

seek reconsideration of this stipulated decision of the Board or to appeal that stipulated decision;

[2.] This settlement is without prejudice to Mr. Bianchi's right to pursue any and all Value Engineering Change Proposal claims under his contracts with DPSC; and

[3.] This settlement is without prejudice to Mr. Bianchi's right to pursue an application under the Equal Access to Justice Act to recover whatever legal fees and litigation expenses to which he may be entitled in connection with these claims and appeals. The parties stipulate that the issues of prevailing party and substantial justification will be decided on the basis on the record made at the first trial. The parties agree that the application for legal fees and litigation expenses under the Equal Access to Justice Act will be submitted within thirty days of receipt by Appellant of the agreed-upon settlement payment." (*Appendix, 202-204*).

8. On September 29, 1988, the ASBCA issued a decision that incorporated the settlement agreement and further provided:

> It is the Board's decision, pursuant to 41U.S.C. § 607(d), § 612(b), and the parties' stipulation and agreement that the appeals are sustained. In the nature of a consent judgment, the Board makes a monetary award in the amount $617,500.00 with interest from the18th of June 1981 (*Appendix,* 202-204*)*.

9. With interest, the government paid Mr. Bianchi $1,141,220.83 pursuant to Paragraph 1 of the September 28, 1988, Stipulation to Board Decision *(Appendix,* 502*)*.

10. On February 10, 1993, in ASBCA case No. 36518, the ASBCA awarded Mr. Bianchi $58,613.03 plus interest from November 17, 1987, upon his VECP claim relating to contract number DLA100-80-C-2972 (*Appendix, 205-235*).

11. On December 23, 1999, the United States paid Bank of America $58,613.03 awarded to Mr. Bianchi as Value Engineering Change Proposal ("VECP") royalties together with interest thereon from November 17, 1987, until paid, for a total payment of $110,339.94 (*Appendix, 37; 55 ¶ 28*).

12. On December 28, 2000, in ASBCA case No. 37029, the ASBCA awarded Mr. Bianchi $16,574.74 plus interest from March 3, 1988, upon his VECP claim relating to contract number DLA100-80-C-2290 *(Appendix, 236-245*).

13. On June 27, 2002, the United States paid Bank of America $16,574.74 awarded to Mr. Bianchi as VECP royalties, together with interest thereon from March 3, 1998, until paid, for a total payment of $44,807.02 *(Appendix, 55 ¶ 28; 61; 236-245*).

**C. Prior Circuit Decisions Controlling This Litigation**

The United States paid Mr. Bianchi $1,141,220.83 pursuant to Paragraph 1 of the September 28, 1988, Stipulation to Board Decision *(Appendix, 246-251*). Approximately three years after that payment, Bank of America, Mr. Bianchi's assignee, brought suit against the United States before the former United States Claims Court (now the United States Court of Federal Claims) claiming that the government paid Mr. Bianchi in error and that the government should have paid the bank the $1,141,220.83 which it paid to Mr. Bianchi pursuant to Paragraph 1 of the Stipulation of September 28, 1988 *(Appendix,* 246-251*).* In response, the government filed a third-party action against Mr. Bianchi in two counts, claiming, alternatively, that it had paid Mr. Bianchi the $1,141.220.83 in error because of a claimed set-off in favor of the Small Business Administration or that, in the nature of an indemnity, the government should have judgment over and against Mr. Bianchi for any sum which the Court ordered the United States to pay Bank of America pursuant to Mr. Bianchi's assignments *(Appendix, 246-251*). All parties to that litigation, Mr. Bianchi, the United States and Bank of America,

filed Motions for Summary Judgment *(Appendix, 246-251*). This Honorable Court, by Judge Hodges, entered a decision in favor of the United States and against both Mr. Bianchi and the Bank *(Appendix, 246-251*). Both Mr. Bianchi and Bank of America appealed that ruling to the United States Court of Appeals for the Federal Circuit *(Appendix, 252-260*).

By its decision in the case captioned, *Bank of America National Trust and Savings Association, N.A. vs. United States*, 23 F. 3rd 380 (1994), the United States Court of Appeals for the Federal Circuit reversed the decision of the United States Court of Federal Claims *(Appendix, 252-260*). The Federal Circuit Court held that the United States could not avoid its settlement contract with Mr. Bianchi by bringing litigation in another forum and that, therefore, the settlement agreement between the United States and Mr. Bianchi, being inviolate, Mr. Bianchi was entitled to retain the $1,141.220.83 paid pursuant to Paragraph 1 of the settlement contract, the Stipulation to Board Decision *(Appendix, 252-260*). With respect to the claim of Bank of America, the Federal Circuit Court held that the assignments from Mr. Bianchi to Bank of America were valid, that the Bank disclosed those assignments to the United States pursuant to the Assignments of Claims Act and that, irrespective of the government's contractual obligation to Mr. Bianchi and for whatever reason it failed to protect itself with regard to the issue, the United States was also independently obligated to Bank of America pursuant to the assignments *(Appendix, 252-260*). In essence and in effect, the Federal Circuit held <u>that the government had incurred liability to both Mr. Bianchi and to Bank of America</u> under separate and distinct legal theories: Mr. Bianchi was entitled to the benefits of his Stipulation to Board Decision, a contract settling disputed Contracts Dispute Act litigation, while, at the same time, the bank was entitled to payment under Mr. Bianchi's assignments *(Appendix, 252-260*).

In its Decision, the United States Court of Appeals for the Federal Circuit held, at 23 F. 3rd 383:

> "The government's right to recoup erroneously paid funds cannot be invoked by the government as a means to circumvent a legal obligation. In return for Mr. Bianchi's agreement to discontinue his action against the government, the government agreed to settle his claims and voluntarily relinquished its right to disturb the settlement. Mr. Bianchi accordingly ceased pursuing his contract claims and the government must likewise be held to its end of the bargain . . .
>
> "The government does not challenge the validity or the enforceability of the settlement. Indeed, there is no indication that the parties failed to deal with each other at arm's length or that Mr. Bianchi withheld material information. The government certainly had adequate knowledge of the various financial arrangements associated with the contracts in view of the fact that the assignments from Bianchi to the bank were made pursuant to the Assignment of Claims Act, which was designed to protect the government from secret assignments [ citations omitted]. In the absence of any fraud, misdirection, or concealment, the government may not recover funds paid in good faith and to the satisfaction of the interested parties [citations omitted]. Here, there was nothing contrary to good morals or conscience in the payment or receipt of the money. The facts were all known. [citation omitted].
>
> "<u>The government could easily have taken appropriate steps to avoid incurring any liability to the bank</u>. For example, the government could have insisted that any settlement award be paid to the bank in view of the bank's asserted security interest. <u>The government did not do so</u>, perhaps because Bianchi would not have agreed to that arrangement or because the government presumed that the bank retained an inferior interest. <u>Whatever the reason for its failure to protect itself, the government cannot now renege on its commitment to honor its settlement with Bianchi, into which it entered voluntarily and with full knowledge of the facts</u>. To permit [ the government] to escape its obligation under the settlement would seriously decrease the willingness of parties to settle litigation on mutually agreeable terms and thus weaken the efficacy of settlements generally [citation omitted].
>
> "Although the government waived its right to challenge the Board's decision awarding payment to Bianchi, it attempted to do just that by means of a third-party complaint filed in another forum. <u>The government should not be allowed to do indirectly what it is prohibited from doing directly</u>. We therefore hold that the government, having waived its right to challenge the settlement, is precluded from seeking to recover the settlement award through a third-party complaint filed in the Court of Federal Claims."

*Bank of America National Trust and Savings Association vs. United States,* 23 F. 3rd 380, at 383-384 (Emphasis supplied).

As a result, the Court concluded:

> "Accordingly, we reverse the judgment of the Court of Federal Claims in the government's favor against the Bank, and vacate the judgment in favor of the government against Bianchi."

*Bank of America National Trust and Savings Association vs. United States, supra,* at 385 *(Appendix, 252-260*).

Mr. Bianchi pursued his rights to VECP royalties as reserved to him by paragraph 2 of the Stipulation to Board Decision and, pursuant to those reserved claims, received a VECP royalty award on February 10, 1993 in the amount of $58,613.03, plus interest from November 17, 1987, upon contract number DLA180-C-2972, and a VECP royalty award on December 28, 2000 in the amount of $16, 574.74, plus interest from March 3, 1988, upon contract number DLA 100-82-C-2290 *(Appendix, 205-235; 236-245*).

While Mr. Bianchi pursued his reserved Value Engineering Change Proposal royalty claims, he also pursued his claim to Equal Access to Justice Act litigation fees and expenses as reserved to him by paragraph 2 of the Stipulation to Board Decision. Mr. Bianchi was eventually awarded $475, 724.51 in Equal Access to Justice Act (EAJA) litigation fees and expenses *(Appendix, 269-278*). However, the United States refused to pay the allowed fees to Mr. Bianchi. (*Appendix, 269-278*). As a result, he brought a Complaint in the Nature of Mandamus in the United States District Court for the District of Nevada (*Appendix, 279-297*). The United States filed its answer and asserted a setoff claim against Mr. Bianchi (in the nature of the SBA setoff which was specifically disallowed by the United States Court of Appeals for the Federal Circuit in *Bank of America vs. United States, supra)* (*Appendix, 279-297)*. The parties brought cross-motions for summary judgment and the District Court ruled in favor of the United States and against Mr. Bianchi. Mr. Bianchi then appealed the adverse decision to the United States Court of Appeals for the Ninth Circuit *(Appendix, 279-297*).

In the case of *Bianchi vs. Perry*,140 F. 3rd 1294 (1998), the Ninth Circuit Court of Appeals ruled in favor of Mr. Bianchi, reversing the judgment of the District Court

(*Appendix, 298-303*). With regard to the prior decision of the United States Court of Appeals for the Federal Circuit in *Bank vs. United States*, *supra,* the Ninth Circuit Court held:

> "Although the Federal Circuit decision dealt only with the $617,500, not the EAJA award, the reason for the Federal Circuit result does not allow for a distinction between the one and the other. With respect to the EAJA attorneys' fees, as with the principal and interest, the government acted with its eyes open. It had full knowledge of the assignment of Bianchi's right to payment to his bank and of the bank's assignment to the SBA. <u>The Federal Circuit decision establishes that there was no fraud, and the government made a commitment to pay Bianchi the money despite its potential entitlements against him</u>. If the government mistakenly overlooked its rights (and it may not have), then its own negligent error does not entitle it to renege upon its commitment [citation omitted]. Allowing the government to renege on its commitment because it negligently agreed to pay Bianchi more than it should have agreed to pay him 'would seriously decrease the willingness of parties to settle litigation on mutually agreeable terms and thus weaken the efficacy of settlements generally.' *Bank of America,* 23 F. 3rd at 384. Using the setoff against the attorneys fees would have exactly the same effect as allowing its use against the $617,500 or the interest, and the government cannot be allowed to do indirectly what it is prohibited from doing directly. [citation omitted].
>
> "Because its ratio decidendi does not allow for a distinction, we conclude that the Federal Circuit decision is res judicata. The decision established that the government is not entitled to a setoff against this $617,500 or the interest based on Bianchi's assignment to his bank and the bank's assignment to the SBA. The reasoning of the decision establishes that the assignments could not entitle the government to a setoff against the settlement at all. The meaning of that agreement with respect to setoff, has already been conclusively determined by the Federal Circuit. [citations omitted]."

*Bianchi vs. Perry, 140 F.3d.at 1298-1299.*

Regarding the government's contention that in entering into the Stipulation to Board Decision it had agreed that Mr. Bianchi could pursue his claims, but that the government did not agree to pay him if he prevailed, the Ninth Circuit held:

> "Any honest and competent lawyer would understand this settlement agreement in the same way. <u>It means Bianchi gets $617,500, plus interest, plus whatever he can win on his 'Value Engineering Change Proposal claims,</u>' plus whatever he can win on his Equal Access to Justice Act claim...
>
> "For a lawyer to enter into such a settlement agreement with the unstated intention that his client would not pay the money agreed to, would be sharp practice..."

> "... It is apparent from the reading of the stipulation in its entirety that the parties did not mean that the government would only pay the $617,500, but dispute payment of what Mr. Bianchi was found to be entitled to as an EAJA award. Had the government meant that, the agreement would have said so...In the context of this dispute, the word pursue meant that Bianchi had to win an EAJA award, but once the award was established, the government would pay it...Giving the settlement agreement so strained construction would encourage sharp practice. Thus we conclude that there is no difference in whether the government agreed to pay the $617,500 and whether it agreed to pay the EAJA award, once Mr. Bianchi had won a liquidated amount. The setoff issue is the same as to both. To the extent that the government had a claim against Bianchi for his unpaid SBA loans, the settlement agreement no more allowed the government to lie in the weeds with the setoff against EAJA award than with the $617,500."

*Bianchi vs. Perry 140 F. 3d 1294, at 1297-1298* (Emphasis supplied).

**D. The Summary Judgement Standard**

Rule 56 of the Rules of the United States Court of Federal Claims provides, in relevant portion, as follows:

> (a) **For Claimant**. A party seeking to recover upon a claim or a counterclaim or to obtain a declaratory judgment may, at any time after the expiration of 60 days from the commencement of the action in this Court or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for summary judgment in such party's favor upon all or any part thereof......
>
> (c) **Motion and Proceedings Thereon.** The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law...."

R.C.F.C. 56

Summary Judgment is to be rendered forthwith when one party is unable to show a genuine issue as to a material fact on which that party would carry the burden of proof at trial so long as judgment against that party is appropriate as a matter of law. *Department of Commerce vs. U.S. House of Representatives,* 525 U.S. 316, 327, 119 S.Ct 765, 772, 142 L. Ed. 2d 797 (1999).

A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party. *Henderson vs. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). Whether a fact is "material" hinges on the substantive law at issue. The fact is "material" if it might effect the outcome of the case. Disputes over irrelevant or unnecessary facts are insufficient to defeat the Motion for Summary Judgment. *Henderson vs. Liberty Lobby, Inc., supra.*

Judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his case as to which he has the burden of proof. *Cleveland vs. Policy Management Sys. Corp.* 526 U.S. 765, 119 S. Ct. 1957, 143 L.Ed. 2d 966 (1999). The moving party must make a prima facie showing that summary judgment is appropriate under Rule 56. This does not require the moving party to disprove the opponent's claims or defenses. Instead, the movant's burden is discharged simply by pointing out for the Court an absence of evidence in support of the non-moving party's claims or defenses. The burden of going forward then shifts to the non-moving party to show, by affidavit or otherwise, that a genuine issue of material fact remains for the fact finder to resolve. *Celotex Corp. vs. Catrett 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265* (1986). A party does <u>not</u> meet this burden simply by theorizing a "possible scenario" in support of a party's claims when that proffered scenario conflicts with direct contrary evidence. *Swanson vs. Leggett & Platt, Inc., 154 F. 3rd 370 ( 7th Cir., 1998).*

In ruling on a Motion for summary judgment, the Court will never weigh the evidence or find the facts. Instead, the Court's role is nearly limited to assessing the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *Henderson vs. Liberty Lobby, Inc., supra.* Thus, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all

evidence will be construed in a light most favorable to the non-moving party and all reasonable inferences will be drawn in a non-moving party's favor. *Hunt vs. Cormartie, 526 U.S. 541, 119 S.Ct. 1545, 143 L.Ed. 2d 731 (1999).*

Reasonable inferences are inferences reasonably drawn from all the facts then before the Court, after sifting through the universe of all possible inferences that the facts could support. "Reasonable" inferences, thus, are not necessarily more probable or likely than other inferences that might tilt in the moving party's favor. Instead, so long as more than one reasonable inference can be drawn, and that inference creates a genuine issue of material fact, the finder of fact is entitled to decide which inference to believe in finding whether summary judgment is or is not appropriate. *Hunt vs. Cormartie, supra.*

The Court will not weigh the credibility of witnesses or other evidence in ruling on a motion for summary judgment. Evaluating credibility, weighing evidence and drawing factual inferences are functions reserved for the jury. *Henderson vs. Liberty Lobby, Inc., supra.*

When a moving party supplements the summary judgment motion by affidavit or other material, the non-moving party cannot respond with mere allegations or denials. *First National Bank vs. City Serv. Co. 391 U.S. 253, 88 S.Ct 1575, 20 L.Ed. 2d 569 (1968).* Instead, the non-moving party must show, by affidavit, deposition testimony or otherwise, that a genuine issue of material fact remains for trial. *See, R.C.F.C. 56(e); Henderson vs. Liberty Lobby, Inc., supra.*

If the parties stipulate to the facts, no genuine dispute as to material facts exists for the fact finder to resolve. *Centennial Ins. Co. vs. Ryder Truck Rental, Inc., 149 F. 3rd 378 ( 5th Cir. 1998) (*noting the factual stipulations can be a basis for summary judgment). In any event, the summary judgment standard remains the same. The Court must draw inferences from the stipulated facts and resolve those inferences in favor of

the non-moving party. *Luden's Inc., vs. Local Union No.6 of Bakery, Confectionary & Tabaco Workers Int'l. Union of America 28 F. 3d 347 (3rd Circuit 1994).*

**II.**

**ARGUMENT**

To settle contested Contracts Dispute Act litigation before the Armed Services Board of Contract Appeals (ASBCA), Mr. Bianchi and the government entered into a written settlement agreement entitled, "Stipulation to Board Decision" (*Appendix, 202-204*). That stipulation, by its terms, was intended to be and, in fact, was incorporated into the "Decision of Administrative Judge Burg" of the Armed Forces Board of Contract Appeals. The entirety of that Stipulation to Board Decision is set forth hereinbefore on pages 4 through 5, supra *(Appendix,* 202-204*)*.

The settlement agreement between Mr. Bianchi and the government, among other things, reserved to Mr. Bianchi the right to pursue Value Engineering Change Proposal (VECP) royalties arising from the government contracts that were at issue in the ASBCA litigation (*Appendix, 202-204*). Pursuant to that reservation of rights, Mr. Bianchi prosecuted his claims for VECP royalties and prevailed upon those claims *(Appendix, 37; 55 ¶ 28; 205-235;236-245)*.

Prior to prevailing upon his VECP royalty claims, Mr. Bianchi received the cash portion of the settlement with the government, the $617,500, plus interest, referenced in paragraph 1 of the Stipulation to Board Decision *(Appendix, 202-204*). The government paid Mr. Bianchi that monetary portion of the settlement *(Appendix, 502*). Some three years later, Bank of America, an assignee of Mr. Bianchi's, filed suit against the United States before this Honorable Court, claiming that the government should have paid the monetary settlement to it, rather than to Bianchi upon the strength of Mr. Bianchi's assignments *(Appendix, 246-251*). In answer, the United States brought third-party claims against Mr. Bianchi by which it attempted to compel Mr. Bianchi to repay the

money paid him pursuant to paragraph 1 of the Stipulation to Board Decision or, in the alternative, for a judgment against him in the nature of indemnity for the amount of any judgment rendered in favor of the bank in that litigation *(Appendix, 246-251*).

This Honorable Court, by Judge Hodges, ruled in favor of the United States and against both Mr. Bianchi and the bank *(Appendix, 246-251*). Both Mr. Bianchi and the bank appealed that decision to the United States Court of Appeals for the Federal Circuit in the case of *Bank of America National Trust and Savings Assoc., N.A. vs. United States*, 23 F. 3d 380 (1994). The Circuit Court of Appeals reversed the decision of the United States Court of Federal Claims *(Appendix, 252-260*).

As to Mr. Bianchi's appeal, the United States Court of Appeals for the Federal Circuit found that Mr. Bianchi and the government entered into an arms length agreement settling the Contested Contracts Dispute act litigation, *Bank vs. United States*, 23 F. 3d at 383 *(Appendix, 252-260*). The Federal Circuit Court found that that settlement was free of any fraud, concealment or misdirection on the part of Mr. Bianchi, *Ibid*., and that the government entered into that agreement with full knowledge of all of the financial facts, including the fact of Mr. Bianchi's assignment of contract rights to the bank, rights which were disclosed by the bank pursuant to the Assignment of Claims Act. *Ibid*. The Federal Circuit Court found that the United States was attempting to undermine and avoid its obligations under that settlement agreement by trying to take from Mr. Bianchi in the forum of United States Court of Federal Claims those sums that it agreed to pay and, in part, already paid to him pursuant to the settlement before the Armed Services Board of Contract Appeals. *Bank vs. United States*, 23 F 3d at 384 *(Appendix, 252-260*). The Court, therefore, held that the government could not do indirectly that which it could not do directly, that is, deprive Mr. Bianchi of the benefit of his negotiated settlement of the contested Contracts Dispute Act litigation. *Ibid*.

The decision of the United States Court of Federal Claims stands for the proposition that the settlement agreement, the Stipulation to Board Decision, entered into by and between Mr. Bianchi and the government at arms-length, was inviolate and Mr. Bianchi was entitled to the benefits conferred on him by that agreement. Accordingly, the decision of the United States Court of Federal Claims was reversed and the judgment against Mr. Bianchi, requiring him to repay the monetary award pursuant to paragraph 1 of the Stipulation to Board Decision, was vacated. *Bank vs. United States*, 23 F. 3d, at 385 *(Appendix, 252-260*).

While, the Circuit Court of Appeals found that the assignments by Mr. Bianchi to the bank were valid and the government had proper notice of those assignments pursuant to the Assignment of Claims Act, the Circuit Court found that, for whatever reason it failed to protect itself against incurring liability to both Mr. Bianchi and the bank, the government failed to do so and was obligated to the bank pursuant to the terms of Mr. Bianchi's assignments. *Bank vs. United States*, 23 F. 3d at 383-384 *(Appendix, 252-260*).

Thus, *Bank vs. United States*, *supra,* stands for the proposition that the United States was indebted to Mr. Bianchi pursuant to the terms of the settlement agreement, the Stipulation to Board Decision, while, at the same time, the United States was independently obligated to the bank pursuant to the terms of the disclosed assignments; the United States had incurred a <u>dual</u> liability, one to Mr. Bianchi and one to the bank, under separate and distinct legal theories.

Paragraph 2 of the Stipulation to Board Decision, as previously set forth herein on pages 4 and 5, reserved to Mr. Bianchi, among other things, the right to pursue litigation fees and expenses pursuant to the Equal Access to Justice Act (EAJA) *(Appendix, 202-204*). Mr. Bianchi pursued that reserved claim and received an award of EAJA fees in the sum of $474,724.51 *(Appendix, 269-278*). However, the

government refused to pay that award to Mr. Bianchi despite the terms of the Stipulation to Board Decision *(Appendix, 269-278*). Rather, the United States claimed a right to set off that award against what it claimed to be a superior indebtedness owed by Mr. Bianchi to the Small Business Administration (SBA). The setoff claim was asserted despite the ruling of the United States Court of Appeals for the Federal Circuit in *Bank vs. United States*, *supra,* finding the settlement agreement between Mr. Bianchi and the government to be inviolate. Therefore, Mr. Bianchi filed a Complaint in the Nature of Mandamus in the United States District Court for the District of Nevada *(Appendix, 279-297*).

In that litigation, the government answered and claimed a right to setoff the alleged SBA debt, just as it did in denying Mr. Bianchi the payment of EAJA fees. The United States District Court ruled in favor of the government and against Mr. Bianchi, who filed an appeal of that judgment to the United States Court of Appeals for the Ninth Circuit *(Appendix, 279-297*). In the case of *Bianchi vs. Perry*, 140 F. 3d 1294 (1998), the Ninth Circuit Court found the decision of the United States Court of Appeals for the Federal Circuit in *Bank vs. United States*, *supra,* to be res judicata of the government's claims of offset against Mr. Bianchi's claims of entitlement in that litigation *(Appendix, 298-303*). Finding the government's position to be, in effect, intellectually dishonest (<u>See</u>, *Bianchi vs. Perry*, 140 F. 3d at 297-298) ("Any honest and competent lawyer would understand the settlement Agreement the same way...") the Ninth Circuit Court stated that the Stipulation Board Decision entitled Mr. Bianchi to not only the monetary settlement which was at issue in the appeal before the Federal Circuit, but whatever he could win on his Value Engineering Change Proposal Claims and whatever he could win on his Equal Access to Justice Act claims. *Ibid*. Finding that the ratio decidendi did not allow for a distinction between the various portions of the Stipulation to Board Decision, the Ninth Circuit Court also held that the Federal Circuit Decision in *Bank vs. United*

*States*, *supra*, was res judicata. *Bianchi vs. Perry*, 140 F. 3d at 1298-1299 *(Appendix, 298-303*).

The two Value Engineering Change Proposal royalty claims at issue here arose pursuant to the reservation of rights granted Mr. Bianchi pursuant to paragraph 2 of the Stipulation to Board Decision *(Appendix, 202-204*). Mr. Bianchi prevailed on both claims. In ASBCA Case No. 36518, Mr. Bianchi was found to be entitled to $58,613.03 in royalties, with interest on that sum from November 17, 1987 (*Appendix, 205-235*); in ASBCA Case No. 37029, Mr. Bianchi was found to be entitled to royalties in the amount of $16,574.74, with interest on that sum from March 3, 1988 *(Appendix, 236-245*). However, the government refused to pay Mr. Bianchi the royalties.

Rather than paying Mr. Bianchi the royalties pursuant to the reserved claims set forth in and as allowed by paragraph 2 of the Stipulation to Board Decision, the government paid Bank of America those royalties, claiming that those payments were pursuant to the assignments from Mr. Bianchi to the bank *(Appendix, 308-345*). The government paid Bank of America the royalties of $58,613.03 awarded in ASBCA Case No. 36518 on December 23, 1999, together with interest thereon, for a total payment of $110,339.94 *(Appendix, 37; 55 ¶ 28*). The government claims that payment to the bank pursuant to the assignments satisfied its obligations to Mr. Bianchi pursuant to the Stipulation to Board Decision. *See,* government's Answers to Plaintiff's Interrogatories, Interrogatory No. 13, (*Appendix, 422*). The government paid Bank of America the royalties of $16,574.74 awarded in ASBCA Case No. 37029 to Bank of America on June 27, 2002, together with interest thereon, for a total payment of $44,807.02 *(Appendix, 55 ¶ 28; 61; 236-245*). The government claims that payment to the bank pursuant to the assignments satisfied its obligations to Mr. Bianchi pursuant to the Stipulation to Board Decision. See, *Ibid. (Appendix, 422)*. By the law of the case and pursuant to the decisions of the United States Court of Appeals for the Federal and

Ninth Circuits, the government's payment of the royalties to the Bank of America did not satisfy the government's obligation to Mr. Bianchi.

**A. The effect of the Circuit Court decisions are clear: The United States incurred two separate, indistinct obligations and its satisfaction of one did not satisfy the other.**

In order to avoid its obligation to Mr. Bianchi pursuant to the settlement agreement resolving the contested Contract Disputes Act litigation, the government has claimed that it satisfied its contractual obligation to Mr. Bianchi by paying the royalties due him to the Bank of America by virtue of the terms of Mr. Bianchi's assignments to the bank *(Appendix, 422*). However, the decision of the United States Court of Appeals for the Federal Circuit in *Bank vs. United States*, *supra,* established that the United States incurred two separate and distinct obligations, one to Mr. Bianchi pursuant to the arms-length settlement of the Contracts Disputes Act litigation, and the other to Bank of America pursuant to the assignments from Mr. Bianchi to the bank *(Appendix, 252-260*). Just as the United States had to pay Mr. Bianchi the monetary award pursuant to the settlement agreement and Bank of America pursuant to the assignments, the United States is required to pay the reserved VECP royalties to Mr. Bianchi pursuant to the terms of the Stipulation to Board Decision, irrespective of whether the United States is commensurately indebted to the bank for the amount of those royalties pursuant to the disclosed assignments. The rationale of the Federal Circuit was clear and unequivocal:

> "The government certainly had adequate knowledge of the various financial arrangements associated with the contracts in view of the fact that the assignments from Bianchi to the bank were made pursuant to the Assignment of Claims Act...
>
> "The government could easily have taken appropriate steps to avoid incurring any liability to the bank ...
>
> "Whatever the reason for its failure to protect itself, the government cannot now renege on its commitment to honor its settlement with Bianchi, into which it entered voluntarily and with full knowledge of the facts."

*Bank of America National Trust and Savings Association vs. United States*, 23 F. 3d at 383 *(Appendix, 252-260*).

Any doubt that the effect of the Federal Circuit Decision created two separate and distinct obligations upon the government, one to Mr. Bianchi under the settlement agreement and the other to the bank under the assignments, was resolved by the decision of the United States Court of Appeals for the Ninth Circuit in *Bianchi vs. Perry*, *supra:*

> "Although the Federal Circuit decision [in *Bank vs. United States]* dealt only with $617,500.00, not the EAJA award, the reason for the Federal Circuit result does not allow for a distinction between the one and the other. With respect to the EAJA attorney's fees, as with the principal and interest, the government acted with its eyes open. It had full knowledge of the assignment of Bianchi's right to payment to his bank, and of the bank's assignment to the SBA. The Federal Circuit decision establishes that there was no fraud, and the government made a commitment to pay Bianchi the money despite its potential entitlements against him. If the government mistakenly overlooked its rights (and it may not have), then its own negligent error does not entitle it to renege on its commitment...
>
> "Because its ratio decidendi does not allow for a distinction, we conclude that the Federal Circuit decision is res judicata. That decision established that the government was not entitled to setoff against the $617,500.00 or the interest based on Bianchi's assignment to his bank and the bank's assignment to the SBA. The reason of the decision establishes that the assignments could not entitle the government to a setoff against the settlement at all. The meaning of that agreement, with respect to setoff, has already been conclusively determined by the Federal Circuit."

*Bianchi vs. Perry*, 140 F. 3d at 1298-1299 *(Appendix, 298-303*).

Thus, assuming for purposes of this Motion for Summary Judgment that the United States had an obligation to pay the royalties pursuant to Mr. Bianchi's reserved claims to Bank of America pursuant to the assignments, that payment constituted the satisfaction of a <u>separate and distinct obligation</u> and did <u>not</u> discharge the government's obligation to Mr. Bianchi pursuant to the terms of the settlement contract.[1] Mr. Bianchi is

---

[1] For purposes of this motion and consistent with the authorities cited, above, the Court must assume that Mr. Bianchi's assignments of contract rights to the bank were valid and executory at the time that the government paid Mr. Bianchi's VECP royalties

entitled to judgment for the amount of the VECP royalties pursuant to the reserved claims, together with the interest having accrued and continuing to accrue thereon, irrespective of whether the government paid the amount of the royalties due to Mr. Bianchi to the bank pursuant to the assignments. The terms of the Stipulation to Board Decision, when read as against the decision of the Federal Circuit Court of Appeals in *Bank vs. United States*, *supra,* and the Ninth Circuit Court of Appeals in *Bianchi vs. Perry*, *supra,* can lead to no other conclusion: The payment of the royalties to Bank of America pursuant to the assignments did not discharge the separate and distinct contractual obligation which the government owed Mr. Bianchi pursuant to an arms-length, negotiated settlement of disputed contract litigation.

## III.

## CONCLUSION

The United States Court of Appeals for the Federal Circuit in *Bank vs. United States*, *supra*., established that United States had incurred two separate and distinct liabilities and obligations arising from the government contracts at issue *(Appendix, 252-260*). The Circuit Court of Appeal held that the government was obligated to honor the

---

to Bank of America. However, as a matter of law, those assignments were fully discharged upon the government's satisfaction of the Judgment and the Corrected Judgment entered in this Court's Case No. 90-3961C (*Appendix, 266; 267*). See, *28 USC Section 2517*; *28 USC Section 2519.* Therefore, and as a matter of law, at the time that the government paid Mr. Bianchi his VECP royalties to the Bank on December 23, 1999 and on June 27, 2002, respectively, Mr. Bianchi's assignments to the bank were fully discharged, the Corrected Judgment having been entered on August 22, 1995, some four years before the government's payment of Mr. Bianchi's VECP royalties to the bank (*Appendix, 266; 267*). However, the Court need not reach this issue of law. The decisions of United States Court of Appeals for the Federal Circuit in *Bank vs. United States*, *supra* and the Ninth Circuit in *Bianchi vs. Perry*, *supra,* are dispositive and mandate that, irrespective of the government's obligation to the bank pursuant to the assignments, the government is liable and obligated to Mr. Bianchi pursuant to the terms of the settlement contract.

terms of its agreement with Mr. Bianchi settling contested Contracts Dispute Act litigation and was, at the same time, obligated to the pay the bank pursuant to the disclosed assignments. The res judicata effect of that decision was established by the United States Court of Appeals for the Ninth Circuit in *Bianchi vs. Perry*, *supra (Appendix, 298-303).* Thus, and assuming for purposes of this motion that Mr. Bianchi's assignments to the bank were executory at the time that the government paid Mr. Bianchi's VECP royalties to Bank of America, that payment satisfied the government's obligation to the bank pursuant to the assignments, but did not satisfy the government's concomitant obligation to Mr. Bianchi pursuant to the settlement agreement.

Therefore, the government's payment of VECP royalties to Bank of America pursuant to Mr. Bianchi's assignment did not discharge its obligation to Mr. Bianchi pursuant to the settlement agreement, the Stipulation to Board Decision. As noted by the Ninth Circuit, the ratio decidendi leaves no room for dispute: the government incurred two separate and distinct obligations and the payment of one does not satisfy the other.

Based upon the Joint Stipulations of Fact and the documents as contained in the Appendix filed in support of the Joint Stipulations of Fact, Mr. Bianchi is now entitled to judgment herein as a matter of law. This Court should now enter judgment against the United States and in favor of Mr. Bianchi in the sum of $58,613.03, together with interest thereon from November 17, 1987, pursuant to the award in ASBCA Case No. 36518, and in the separate sum of $16,574.74, together with interest thereon from March 3, 1988, pursuant to the award in Mr. Bianchi's favor in ASBCA Case No. 37029.

Accordingly, the Motion for Summary Judgment should be granted and judgment entered in favor of Mr. Bianchi as prayed for in his Complaint.

Respectfully submitted,

STEPHENS, GOURLEY & BYWATER

s/R. Vaughn Gourley, Esq.
R. VAUGHN GOURLEY, ESQ.
Nevada Bar No. 0503
3636 North Rancho Drive
Las Vegas, Nevada 89130
(702) 656-2355 Telephone
(702) 656-2776 Facsimile
and
GRAZIADEI & CANTOR, LTD.
GEORGE E. GRAZIADEI, ESQ.
Nevada Bar No. 1775
SCOTT MICHAEL CANTOR, ESQ.
Nevada Bar No. 1713
302 East Carson Avenue, #400
Las Vegas, Nevada 89101
(702) 477-7733 Telephone
(702) 477-0020 Facsimile
Attorneys for Plaintiff

## CERTIFICATE OF FILING

I hereby certify that on February 1, 2005, a copy of the foregoing Plaintiff's Motion For Summary Judgment was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/R. Vaughn Gourley, Esq.
R. VAUGHN GOURLEY, ESQ.