R. VAUGHN GOURLEY, ESQ.
Nevada Bar No. 0503
STEPHENS, GOURLEY & BYWATER
3636 North Rancho Drive
Las Vegas, Nevada 89130
(702) 656-2355
AND
SCOTT MICHAEL CANTOR, ESQ.
Nevada Bar No. 1713
GRAZIADEI & CANTOR, LTD.
302 E. Carson Avenue - Suite 400
Las Vegas, Nevada 89101
(702) 477-7733
Attorneys for Plaintiff
MAURICE L. BIANCHI

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| MAURICE L. BIANCHI, fdba M. BIANCHI,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant, | No. 04-440C<br>(Judge Horn)<br><br>Electronically Filed April 5, 2005 |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Comes now, Plaintiff Maurice L. Bianchi, fdba M. Bianchi, by and through his designated counsel, and hereby files his Opposition To Defendant's Cross-Motion For Summary Judgment, as well as his Reply To Defendant's Opposition To Plaintiff's Motion For Summary Judgment. This Opposition and Reply is made and based upon

all of the pleadings and papers already on file herein, as well as the following Points and Authorities.

## I. POINTS AND AUTHORITIES

### A. The Payment to the Bank pursuant to the assignments did not discharge the government's contractual obligation to Bianchi.

The government asserts that its obligation to pay Mr. Bianchi the amounts awarded him pursuant to the Value Engineering Changed Proposal claims at issue herein was satisfied by its payment of those awards to the Bank of America as Mr. Bianchi's assignee. However, it is clear from the decision of the United States Court of Appeals for the Federal Circuit in *Bank of America vs. United States,* 23 F. 3d. 380 (1994), and in the decision of the Ninth Circuit Court of Appeals in *Bianchi vs. Perry*, 140 F. 3d. 1294 (1998), (Appendix, pages 252-260; 298-303), that the government had incurred two separate and distinct obligations, one to Mr. Bianchi pursuant to the contract (the Stipulation to Board Decision) and the other to Bank of America pursuant to Mr. Bianchi's assignments. The reasoning of both the Federal and the Ninth Circuit Courts was discussed in detail in Mr. Bianchi's Motion for Summary Judgment at pages 7 through 12, and 15 through 22.

In it's instant Opposition and Cross Motion for Summary Judgment, the government argues that: "[t]he government paid Mr. Bianchi those awards, <u>in effect</u>, by paying the bank; the entity to whom he directed contract payments be made." *<u>See</u>* Defendant's Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion For Summary Judgment, page 4. *(Emphasis supplied).* However, this same argument was previously presented to and rejected by both the Federal and Ninth Circuit Courts of Appeal. (Appendix, pages 252-260; 298-303).

At issue in the Appeal to the Federal Circuit in *Bank vs. The United States, supra,* was whether or not the United States could maintain third-party claims in this Honorable Court against Mr. Bianchi based upon the contention that the government paid Mr. Bianchi erroneously because of an alleged superior indebtedness claimed to be owed by him to the Small Business Administration (SBA), and whether the government was entitled to recoup the funds paid to Mr. Bianchi in the nature of contribution or indemnity should the government be found liable to Bank of America pursuant to the terms of Mr. Bianchi's assignments. (Appendix, pages 252-260)

The Federal Circuit Court was clear and unequivocal. The government had incurred two separate and distinct obligations, and the satisfaction of one did not satisfy the other. As noted by Mr. Bianchi in his Motion For Summary Judgment at page 9, the Federal Circuit stated:

> "...The Government does not challenge the validity or the enforceability of the settlement. Indeed, there is no indication that the parties failed to deal with each other at arms' length or that Mr. Bianchi withheld material information. The government certainly had adequate knowledge of the various financial arrangements associated with the contracts in view of the fact that the assignments from Bianchi to the bank were made pursuant to the Assignment of Claims Act, which was designed to protect the government from secret assignments..."

*Bank of America vs. United States,* 23 F. 3d. at 383.

The Federal Circuit went on to note that in the absence of any fraud, misdirection or concealment, "the government may not recover funds paid in good faith and to the satisfaction of interested parties." *Ibid*.

Indeed, the Court found that there was "nothing contrary to good morals or conscience in the payment or receipt of the money to Mr. Bianchi" because "[t]he facts were all known." *Ibid*.

Noting that the government had incurred a dual liability, the Court stated:

> "The government could easily have taken appropriate steps to avoid incurring any liability to the bank. For example, the government could have insisted that any settlement award be paid to the bank in view of the bank's asserted security interest. The government did not do so, perhaps because Bianchi would not have agreed to the arrangement or because the government presumed that the bank retained an inferior interest. Whatever the reason for its failure to protect itself, the government cannot now renege on its commitment to honor its settlement with Bianchi, into which it entered voluntarily and with full knowledge of the facts..." *Ibid*.

The Federal Circuit Court concluded:

> "Although the government waived its right to challenge the Board's decision awarding payment to Bianchi, it attempts to do just that by means of a Third-Party Complaint filed in another forum. The government should not be allowed to do indirectly that which it is prohibited from doing directly. We therefore hold that the government, having waived its right to challenge the settlement, is precluded from seeking to recover the settlement award through a third-party complaint filed in the Court of Federal Claims."

*Bank v. United States* 23 F. 3d. 380, at 384.

The Court's reasoning and conclusion are clear. Knowing that Bianchi had assigned contract rights to the bank, the government nevertheless agreed to settle disputed litigation by conferring certain benefits and rights upon him. Thus, the government's liability to the bank notwithstanding, it still has to honor its contractual agreement with Mr. Bianchi. Despite the Federal Circuit's decision and the Ninth Circuit's holding that the Federal Circuit decision was res judicata of Mr. Bianchi's entitlement to the rights conferred upon him pursuant to paragraph 3 of the settlement agreement, the government now seeks to withhold payment by attempting to distinguish the rights conferred to Mr. Bianchi pursuant to paragraph 2 of the same settlement agreement. Such a strained construction of the settlement agreement cannot be sustained.

In section II of its Opinion, the Federal Circuit then addressed the government's contention that it could impose the claimed setoffs against the bank as Mr. Bianchi's assignee. The Federal Circuit rejected that contention, and held that the government was obligated to the bank pursuant to the assignments just as the government remained obligated to Mr. Bianchi pursuant to its contractual obligation as set forth in the Stipulation to Board Decision. *Bank v. United States* 23 F. 3d. 384-385. (Appendix, pages 252-260) The government's argument herein does not address this contention at all.

The government then argues that the Federal Circuit's decision addressed only the issue of recoupment of the $617,500.00 paid pursuant to paragraph I of the Stipulation to Board Decision and, thus, the issue of the government's claims herein as in regard to the second paragraph of that Decision, the paragraph reserving to Mr. Bianchi his right to pursue the Value Engineering Change Proposal claims, was not addressed by the Federal Circuit. However, that same argument was made to the Federal Circuit Court, itself, and to the Ninth Circuit Court of Appeals, both of which rejected that argument. (Appendix, pages 250-260, 298-303)

Subsequent to the Federal Circuit's decision in *Bank vs. United States, supra,* the United States brought a Motion for Reconsideration, and Mr. Bianchi filed claims for Equal Access to Justice Act litigation fees and expenses. By an Order (Appendix, pages 261-263), the Federal Circuit resolved both Mr. Bianchi's EAJA claim (distinct from that presented to the Federal Circuit in *Bianchi vs. Perry, supra),* and the government's contention that only its third party complaint and not its contingent claim

was before the Court on appeal. By its Order (Appendix, pages 261-263), the Federal Circuit stated that:

> "Based on a settlement agreement by which Bianchi agreed to settle his contract claims against the government in return for payment $1,141,220.83, this Court held 'that the government, having waived its right to challenge the settlement, [was] precluded from seeking to recover the settlement award through a third-party complaint filed in the Court Federal Claims'. [citation omitted]. The government correctly argues that only its third-party claim, and not its contingent claim, was before us on appeal; it is clear from our decision, however, that the contingent claim must fail as well since it is based on identical grounds. Indeed, all that remains of the government's claims against Bianchi is the purely ministerial act of entering judgment against the government in the Court of Federal Claims [citations omitted]."

Order, Appendix, pages 261-262.

The government made the same argument again to the Ninth Circuit Court of Appeals, arguing that only the monetary portion of the settlement, that contained in paragraph I of the settlement contract, was before the Ninth Circuit Court of Appeals, and not the issue of Equal Access to Justice Act litigation fees and expenses as set forth in paragraph 3 of that same contract. Noting that any honest and competent lawyer would understand the settlement agreement to mean that Bianchi received not only the monetary award, but "whatever he can win on his 'Value Engineering Change Proposal claims,' plus whatever he can win on his equal access to justice act claim. . . " (*Bianchi vs. Perry*, 140 F.3d, at 1297), the Court stated:

> "We reject the distinction. It is apparent from a reading of the stipulation in its entirety that the parties did not mean that the government would only pay the $617,500, but dispute payment of what Mr. Bianchi was found to be entitled to as an EAJA award. Had the government meant that, the agreement would have said so."

*Bianchi vs. Perry,* 140 F.3d, at 1298. (Appendix, pages 298-303)

The Court noted that giving the settlement agreement such a strained construction would encourage sharp practice and, thus, concluded that:

> ". . . there is no difference in whether the government agreed to pay the $617,500 and whether it agreed to pay the EAJA award, once Mr. Bianchi had won a liquidated amount. The setoff issue is the same as to both. To the extent that the government had a claim against Bianchi for his unpaid SBA loans, the settlement agreement no more allowed the government to lie in the weeds with a setoff against the EAJA award than with $617,500."

140 F.3d, at 1298. (Appendix, pages 298-303)

The Ninth Circuit Court also stated:

> "Although the Federal Circuit Decision dealt only with the $617,500, not the EAJA award, the reason for the Federal Circuit result does not allow for a distinction between the one and the other. With respect to the EAJA attorneys' fees, as with the principal and interest, the government acted with its eyes open. It had full knowledge of the assignment of Bianchi's right to payment to the bank and of the bank's assignment to the SBA. The Federal Circuit decision establishes that there was no fraud, and the government made a commitment to pay Bianchi the money despite its potential entitlements against him. If the government mistakenly overlooked its rights (and it may not have), then its own negligent error does not entitle it to renege on its commitment [citation omitted]. Allowing the government to renege on its commitment because it negligently agreed to pay Bianchi more than it should have agreed to pay him 'would seriously decrease the willingness of parties to settle litigation on mutually agreeable terms and thus weaken the efficacy of settlements generally' [citation omitted]. Using the setoff against the attorney's fees would have exactly the same effect as allowing its use against $617,500 or the interest, and 'the government should not be allowed to do indirectly what it is prohibited from doing directly.'"

140 F.3d, at 298-299. (Appendix, pages 298-303)

The Ninth Circuit then held:

> "Because its ratio decidendi does not allow for a distinction, we conclude that the Federal Circuit's decision is res judicata. That decision established that the government was not entitled to a setoff against the $617,500 or the interest based on Bianchi's assignment to his bank and the bank's assignment to the SBA. <u>The reasoning of the decision</u>

> establishes that the assignments could not entitle the government to a setoff against the settlement at all. The meaning of that agreement, which respect to setoff, has already been conclusively determined by the Federal Circuit."

140 F.3d, at 299. [*Emphasis supplied*]. (Appendix, pages 298-303)

In its opposition, the government is again arguing that which has already been expressly rejected by both the Federal and Ninth Circuits. It attempts to justify its failure to pay Mr. Bianchi pursuant to that which the Federal Circuit found to be a distinct contractual obligation by its payment to the Bank of America pursuant to its separate and distinct obligation to pay that entity pursuant to Mr. Bianchi's assignments. Stated succinctly, the payment of the one does not satisfy the other.

This argument was clearly set forth in Mr. Bianchi's Motion for Summary Judgment. The government has not responded to that argument directly. Instead, the government has been content to argue general contract and assignment principles, claiming that despite the very circumstances obtained at the time of the settlement agreement and despite the clear holdings of both the Federal and Ninth Circuit Courts, that the payment under the assignments satisfied the separate and distinct contractual obligations to Mr. Bianchi. Clearly, it did not. Accordingly, the government's argument that its payment of the claim to the bank pursuant to the assignments satisfied its separate and distinct obligations to Mr. Bianchi pursuant to the contracts must fail, and Mr. Bianchi is entitled to the summary judgment upon his claims, as prayed.

DATED this 5th day of April, 2005.

STEPHENS, GOURLEY & BYWATER.

s/R. Vaughn Gourley ____________________

R. VAUGHN GOURLEY, ESQ.
Nevada Bar No. 0503
3636 North Rancho Drive
Las Vegas, Nevada 89130
AND
SCOTT MICHAEL CANTOR, ESQ.
Nevada Bar No. 1713
GRAZIADEI & CANTOR, LTD.
302 E. Carson Avenue, Suite 400
Las Vegas, Nevada 89101
Attorneys for Plaintiff
MAURICE L. BIANCHI

## CERTIFICATE OF FILING

I hereby certify that on April 5, 2005, a copy of the foregoing Plaintiffs' Opposition To Defendant's Cross-Motion For Summary Judgment And Reply To Defendant's Opposition To Plaintiff's Motion For Summary Judgment was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/R. Vaughn Gourley ____________________