# In the United States Court of Federal Claims

**No. 04-440C**
**Filed: October 31, 2005**

| | | |
|---|---|---|
| **MAURICE L. BIANCHI, fdba M. BIANCHI of CALIFORNIA,** Plaintiff, v. **UNITED STATES,** Defendant. | * | **Motion to Dismiss; Subject Matter Jurisdiction; Election of Forum; Statute of Limitations; 28 U.S.C. § 1494; 23 U.S.C. § 1500; Tolling; Summary Judgment; Res Judicata.** |

**R. VAUGHN GOURLEY**, Stephens, Gourley & Bywater, Las Vegas, Nevada; **SCOTT MICHAEL CANTOR**, Graziadei & Cantor, Las Vegas, Nevada, for the plaintiff.

**THOMAS P. MCILMAIL**, Trial Attorney; **ROBERT E. KIRSCHMAN, JR.**, Assistant Director; **DAVID M. COHEN**, Director, Commercial Litigation Branch, Civil Division; **PETER D. KEISLER**, Assistant Attorney General, Department of Justice, Washington, D.C., for the defendant.

## O P I N I O N

**HORN, J.**

Maurice L. Bianchi, formerly doing business as M. Bianchi of California, brought this action before this court to collect payment on two separate Value Engineering Change Proposal (VECP) royalty payments awarded by the Armed Services Board of Contract Appeals (ASBCA). The first VECP payment was awarded in 1993 for $58,613.03, plus interest (VECP I). The second VECP payment was awarded in 2000 for $16,574.74, plus interest (VECP II). The government paid the Bank of America (the Bank), Mr. Bianchi's assignee, the royalties owed on VECP I and VECP II. The government asserts that by paying the Bank the government satisfied Mr. Bianchi's claims under the contract for royalty payments on VECP I and VECP II.

## FINDINGS OF FACT

The facts leading to the law suit before this court are derived from related prior federal court decisions, joint stipulations submitted by the parties in the above-captioned case, and the record before the court. In 1979 and 1980, M. Bianchi was awarded three contracts by the Defense Logistics Agency (DLA) to produce clothing for the military. See

Bank of Am. Nat'l Trust & Sav. Ass'n v. United States (Bianchi I), 23 F.3d 380, 382 (Fed. Cir.), reh'g denied (1994). Two of the three contracts were Contract No. DLA100-80-C-2972 (Contract I) and Contract No. DLA100-80-C-2290 (Contract II), both of which are at issue in the instant case. Mr. Bianchi obtained a loan from the Bank to finance the contracts and assigned the proceeds and rights associated with each contract to the Bank as security for the loan. See id. Mr. Bianchi then executed an "Assignment of Claims Under Government Contract" in favor of the Bank with respect to the two contracts at issue in this case, and the Bank properly notified the government of the assignments. In the assignments for Contract I and Contract II, Mr. Bianchi assigned to the Bank "all the moneys now due or hereinafter to become due from the United States" pursuant to the contracts as collateral for the money loaned to Mr. Bianchi. Thereafter, the Bank received payments from the government of sums due under the contract.

In 1980, Mr. Bianchi and the Bank restructured their agreement in order for the plaintiff to apply for a 90 percent guarantee from the Small Business Administration (SBA) on a second loan from the Bank to Mr. Bianchi. See id. The SBA approved Mr. Bianchi's application and the Bank issued the loan with contract rights and a third lien on all receivables as collateral. See id. In July of 1981, the Bank issued a third loan, also a 90 percent SBA guaranteed loan, covered by the future advances clause of a separate December, 1980 agreement. See id.

In 1981, shortly after the SBA loans were approved, the DLA terminated two of the contracts for default. As a result of the termination, Mr. Bianchi filed claims on the terminated contracts before the ASBCA. See id. In the same year, Mr. Bianchi defaulted on the loans from the Bank, both those guaranteed and those not guaranteed by the SBA. See id. In exchange for payment from the SBA on the defaulted, guaranteed loans, the Bank assigned its interest in the guaranteed loans to the SBA. See id.

To settle the claims before the ASBCA on all three government contracts, including Contract I and Contract II, the government and Mr. Bianchi entered into a settlement agreement at the Board on September 27, 1988, which stated:

> The parties to the above-listed appeals agree to stipulate to the following decision by the board:
>
> (1) The parties agree that Mr. Maurice Bianchi, as the successor to M. Bianchi of California, is entitled to recover $617,500.00 on his claims in the following appeals: ASBCA Nos. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26523, 26642, 29932, 29933, and 29934; that the government is entitled to take nothing on its claims in the following appeals: ASBCA Nos. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933, and 29934; that Mr. Bianchi is entitled to interest computed in accordance with Clause L78 (Disputes (1979 MAR)) of the contracts, at the rates prescribed by the Secretary of the Treasury, under the Renegotiation Act, Public Law 92-41, on the principal amount of $617,500,

> such interest to run from June 19, 1981 until the date of payment; and that the parties waive their rights to seek reconsideration of this stipulated decision of the Board or to appeal that stipulated decision;
>
> (2) This settlement is without prejudice to Mr. Bianchi's right to pursue any and all Value Engineering Change Proposal Claims under his contracts with DPSC; and
>
> (3) This settlement is without prejudice to Mr. Bianchi's right to pursue an application under the Equal Access to Justice Act to recover whatever legal fees and litigation expenses to which he may be entitled in connection with these claims and appeals. The parties stipulate that the issues of prevailing party and substantial justification will be decided on the basis of the record made at the first trial. The parties agree that the application for legal fees and litigation expenses under the Equal Access to Justice Act will be submitted within thirty days of receipt by appellant of the agreed-upon settlement payment.
>
> Except as noted, above, [Mr. Bianchi] and the government agree to stipulate to the dismissal of these appeals with prejudice.

On September 29, 1988, the ASBCA issued a decision that incorporated the settlement agreement and provided further:

> It is the Board's decision, pursuant to 41 U.S.C. § 607(d), § 612(b), and the parties' stipulation and agreement, that the appeals are sustained. In the nature of a consent judgment the Board makes a monetary award in the amount of $617,500 with interest from 18 June 1981.

Appeals of M. Bianchi of California, ASBCA Nos. 26362 et al., slip op. at 2 (Sept. 29, 1988).

The factual history of the complex string of litigation brought by Mr. Bianchi is important to help understand the VECP payment issue now before this court. Pursuant to paragraph one of the settlement agreement, the government paid Mr. Bianchi $1,141,220.83 ($617,500.00 plus interest from June 18, 1981). Approximately two years later, the Bank, as the assignee under the contracts, requested payment from the government under the Assignment of Claims Act, codified at 31 U.S.C. § 3727 (2000) and 41 U.S.C. § 15 (2000). The government consequently demanded repayment from Mr. Bianchi, acknowledging that payment should have been made to the Bank under the assignment instead of to Mr. Bianchi. See Bianchi I, 23 F.3d at 382. Mr. Bianchi did not make repayment and the government took no further action on the Bank's request. See id. The Bank then filed suit against the United States in the United States Claims Court seeking the money previously paid to Mr. Bianchi. The United States answered the Bank's complaint and filed a third-party complaint against Mr. Bianchi seeking return of the money

paid to him under the settlement. See id.

The Claims Court, on summary judgment motions by all parties, ruled in favor of the government and against the Bank as well as against Mr. Bianchi. See Bank of Am. Nat'l Trust & Sav. Ass'n v. United States, No. 90-3961C, 1992 WL 677195, at *3 (Cl. Ct. Oct. 16, 1992). The court held that the "Defendant paid Bianchi erroneously and is entitled to repayment." Id. at *2. The court also found that the Bank had no claim on the money as against the government because the Bank had assigned its rights to the SBA and the court ordered Mr. Bianchi to repay the government $1,141,220.83. See id. On appeal, the United States Court of Appeals for the Federal Circuit found that the government was liable to both the Bank and to Mr. Bianchi. See Bianchi I, 23 F.3d at 384-85. The Federal Circuit held that the government was fully aware of the assignments to the Bank and, therefore, could not claim a setoff under the Assignment of Claims Act. The appellate court found that the government was liable to Mr. Bianchi according to paragraph one of the settlement agreement. See id. at 383-85. Referring to the government's obligation to pay Mr. Bianchi under the settlement agreement, the Federal Circuit stated that "[t]he government's right to recoup erroneously paid funds cannot be invoked by the government as a means to circumvent a legal obligation." Id. at 383. The appellate court also reasoned that the government was separately liable to the Bank, but not to the SBA, because the Bank had a preexisting, senior interest in the contract payments over the SBA according to Mr. Bianchi's assignment under the Assignment of Claims Act. See id. at 384. Finally, the Federal Circuit held that the government could not setoff the amount that Mr. Bianchi owed to the SBA against money owed to the Bank. See id. at 384-85. Pursuant to the Federal Circuit's Bianchi I decision, after remand, in 1995, and after a motion for corrected judgment was granted, the United States Court of Federal Claims ordered the government to pay the Bank $717,009.94 and dismissed the third-party complaint against Mr. Bianchi. See Bank of Am. Nat'l Trust & Sav. Ass'n v. United States, No. 90-3961C (Fed. Cl. Aug. 14, 1995).

As allowed under paragraph three of the settlement agreement, Mr. Bianchi pursued his claim for EAJA legal fees, and, on September 25, 1990, the ASBCA awarded Mr. Bianchi $475,724.51 in EAJA fees generated during the litigation that resulted in the original settlement agreement in 1988 and the ASBCA decision that incorporated the settlement agreement. See Bianchi v. Perry (Bianchi II), 140 F.3d 1294, 1296 (9th Cir. 1998). After attempting to collect the EAJA fees, and after the Federal Circuit's decision in Bianchi I, Mr. Bianchi filed an action in the United States District Court for the District of Nevada in the nature of mandamus to collect the EAJA fees. See id. The District Court granted summary judgment in favor of the government, allowing the government to use its claim for mistaken payment as a setoff against Mr. Bianchi's EAJA award.

Mr. Bianchi appealed the District Court ruling to the United States Court of Appeals for the Ninth Circuit, which reversed in favor of Mr. Bianchi. See Bianchi II, 140 F.3d at 1299, rev'g Bianchi v. Perry, No. CV-94-00686-HDM (D. Nev. Mar. 1, 1996). The Ninth Circuit interpreted the Federal Circuit's Bianchi I decision as res judicata as to Mr. Bianchi's EAJA entitlement and found that Mr. Bianchi's EAJA claim, like the $1,141,220.83

settlement paid by the government according to paragraph one, could not be setoff by the government's mistaken payment to Mr. Bianchi. See id. at 1299. After acknowledging the a lack of parallel phrasing in the settlement agreement, the Ninth Circuit interpreted the words "right to pursue" in paragraph three as not only allowing pursuit, but also requiring payment if Mr. Bianchi were to be awarded EAJA fees. See id. at 1298. The District Court also concluded that the reasoning in Bianchi I, which involved paragraph one of the agreement, established that the government was precluded from claiming a setoff against any part of the settlement, including paragraph three, which addresses EAJA fees. See id. at 1299. In 1999, the Ninth Circuit granted Mr. Bianchi's claim for further EAJA fees in the amount of $67,961.24 incurred in the litigation to compel payment of the earlier $475,724.51 EAJA fee award. See Bianchi v. Perry, No. CV-94-00686-HDM, slip op. at 1 (9th Cir. May 24, 1999).

As provided for under paragraph two of the settlement agreement, Mr. Bianchi pursued Value Engineering Change Proposal royalties relating to Contract I (VECP I) in ASBCA Case No. 36518. On February 11, 1993, the ASBCA awarded Mr. Bianchi $58,613.03, plus interest, from November 17, 1987 in VECP I royalties. See Appeal of M. Bianchi of California, No. 36518, 93-2 BCA ¶ 25,801, 1993 WL 42825 (ASBCA Feb. 10, 1993). On August 31, 1994, Mr. Bianchi again filed an action with the United States District Court for the District of Nevada in the nature of mandamus, but this time to collect the VECP I royalties from the government. See Bianchi v. Walker (Bianchi III), 163 F.3d 564, 567 (9th Cir. 1998), cert. denied, 528 U.S. 814 (1999), rev'g Bianchi v. Walker, No. CV-S-94-747-LDG (RJJ) (D. Nev. Sep. 17, 1996). The government filed an answer and a counterclaim interpleading the Bank in an attempt to avoid liability to both the Bank and Mr. Bianchi. See id. The government requested in its counterclaim that it be discharged of liability to Mr. Bianchi if the District Court found that the government was liable to the Bank. See id. The government further requested that if the District Court found that the government was liable to Mr. Bianchi, the court should setoff the VECP I royalties by the amount that Mr. Bianchi owed to the SBA. See id. at 567-68. All parties filed cross-motions for summary judgment. The District Court granted the Bank's motion for summary judgment and awarded the Bank the VECP I royalties, while remaining silent with regard to Mr. Bianchi's complaint for a writ of mandamus. See id. at 568.

Mr. Bianchi subsequently appealed the ruling of the United States District Court of Nevada to the United States Court of Appeals for the Ninth Circuit in Bianchi III. On December 11, 1998, the Ninth Circuit found that the District Court did not have jurisdiction over Mr. Bianchi's claim for a writ of mandamus and asserted that the United States Court of Federal Claims had jurisdiction. See Bianchi III, 163 F.3d at 569. The Ninth Circuit affirmed the District Court's grant of summary judgment in favor of the Bank and asserted that neither the Federal Circuit's decision in Bianchi I, nor the Ninth Circuit's decision in Bianchi II, barred the Bank's claim to the VECP royalties. See id. at 570. On February 17, 1999 the court denied rehearing and rehearing en banc. See Bianchi v. Walker, No. 97-17024 (9th Cir. Feb. 17, 1999). The United States Supreme Court denied certiorari on October 4, 1999. See Bianchi v. Walker, 528 U.S. 814 (1999). As a result of this decision, on December 23, 1999, the United States paid the Bank a total of $110,339.94

($58,613.03 plus interest from November 17, 1987).

More than seven years after awarding the VECP I royalties in ASBCA Case No. 36518, on December 28, 2000, the ASBCA awarded Mr. Bianchi $16,574.74 plus interest from March 3, 1988 in VECP royalties relating to Contract II (VECP II) in ASBCA Case No. 37029. See Appeal of M. Bianchi of California, No. 37029, 01-01 BCA ¶ 31,237, 2000 WL 1887519 (ASBCA Dec. 28, 2000). On June 27, 2002, the United States paid the Bank a total of $44,807.02 ($16,574.74 plus interest from March 3, 1988).

Mr. Bianchi filed the above-captioned action in this court on March 18, 2004 seeking enforcement of the VECP I and VECP II royalties, plus interest, that were awarded to him on February 10, 1993 and December 28, 2000, respectively. In Mr. Bianchi's motion for summary judgment with respect to these claims, he argues that this court should follow the prior decisions issued by the United States Court of Appeals for the Federal Circuit in Bianchi I and the United States Court of Appeals for the Ninth Circuit in Bianchi II, which, according to plaintiff, had interpreted the settlement agreement as a contract requiring the government's payment of the VECP I and VECP II royalties to Mr. Bianchi. Mr. Bianchi also contends that the government is still indebted to him, despite the government's payment of royalties to the Bank, as the assignee of Mr. Bianchi.

In response, in this court, the government has filed a cross-motion for summary judgment on both VECP claims and moves to dismiss the claim for the VECP I royalties for failure to file in this court within the six-year statute of limitations. In the government's cross-motion for summary judgment, the defendant contends that it fulfilled its obligations to Mr. Bianchi on his VECP claims by paying the Bank the VECP royalties owed to Mr. Bianchi. The government further argues that the prior decisions by the appellate courts are not dispositive regarding the instant litigation because those decisions did not resolve the issues regarding the VECP royalties discussed in paragraph two of the settlement agreement incorporated into the ASBCA opinion of September 29, 1988.

## DISCUSSION

### I. Subject Matter Jurisdiction

Mr. Bianchi brings this action to enforce payment of the VECP I royalty awarded by the ASBCA on February 10, 1993 and the VECP II royalty awarded by the ASBCA on December 28, 2000. Among the issues to be decided is whether this court has subject matter jurisdiction to enforce the payment of these awards to Mr. Bianchi. This issue was not addressed by either party in their initial summary judgment briefing. The court, therefore, requested supplemental briefing from the parties, specifically addressing whether this court has jurisdiction to enforce a judgment of the ASBCA.

Subject matter jurisdiction may be challenged at any time by the parties, by the court sua sponte, and even on appeal. See Fanning, Phillips, Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998) (quoting Booth v. United States, 990 F.2d 617, 620 (Fed. Cir.), reh'g

denied (1993)); United States v. Newport News Shipbuilding and Dry Dock Co., 933 F.2d 996, 998 n.1 (Fed. Cir. 1991). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). A plaintiff must establish jurisdiction by a preponderance of the evidence. See Reynolds v. Army and Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Thomas v. United States, 56 Fed. Cl. 112, 115 (2003); Martinez v. United States, 48 Fed. Cl. 851, 857 (2001), aff'd in part, 281 F.3d 1376 (Fed. Cir.), reh'g denied (2002); Bowen v. United States, 49 Fed. Cl. 673, 675 (2001), aff'd, 292 F.3d 1383 (Fed. Cir. 2002); Vanalco, Inc. v. United States, 48 Fed. Cl. 68, 73 (2000); Alaska v. United States, 32 Fed. Cl. 689, 695 (1995), appeal dismissed, 86 F.3d 1178 (Fed. Cir. 1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief." Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 654 (1999) (quoting Conley v. Gibson, 355 U.S. 41, 46 (1957)); Brubaker Amusement Co. v. United States, 304 F.3d 1349, 1355 (Fed. Cir. 2002), cert. denied sub nom. Penn Triple S v. United States, 538 U.S. 921 (2003); Leider v. United States, 301 F.3d 1290, 1295 (Fed. Cir.), reh'g and reh'g en banc denied (2002), cert. denied, 538 U.S. 978 (2003); Conti v. United States, 291 F.3d 1334, 1338 (Fed. Cir.), reh'g en banc denied (2002), cert. denied, 537 U.S. 1112 (2003); Consol. Edison Co. v. O'Leary, 117 F.3d 538, 542 (Fed. Cir. 1997), cert. denied sub nom. Consol. Edison Co. v. Pena, 522 U.S. 1108 (1998); see also New Valley Corp. v. United States, 119 F.3d 1576, 1579 (Fed. Cir.), reh'g denied, and reh'g en banc declined (1997); Highland Falls-Fort Montgomery Cent. School Dist. v. United States, 48 F.3d 1166, 1169 (Fed. Cir.), cert. denied, 516 U.S. 820 (1995); Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989); W.R. Cooper Gen. Contractor, Inc. v. United States, 843 F.2d 1362, 1364 (Fed. Cir. 1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must be denied.'"); RCS Enters., Inc. v. United States, 46 Fed. Cl. 509, 513 (2000).

Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.), reh'g denied (1997) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)). Nevertheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983); Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding a motion to dismiss based on a lack of subject matter jurisdiction,

this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Conley v. Gibson, 355 U.S. at 45-46; Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003); Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002); Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1338 (Fed. Cir. 2001) (quoting New Valley Corp. v. United States, 119 F.3d at 1580), cert. denied, 535 U.S. 1096 (2002); Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000); Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998); Highland Falls-Fort Montgomery Cent. School Dist. v. United States, 48 F.3d at 1167 (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)); Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Hamlet v. United States, 873 F.2d at 1416; Ho v. United States, 49 Fed. Cl. 96, 100 (2001), aff'd, 30 Fed. Appx. 964 (Fed. Cir. 2002); Alaska v. United States, 32 Fed. Cl. at 695. If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); see also Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); Reynolds v. Army and Air Force Exch. Serv., 846 F.2d at 747; Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 404-05 (1994).

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. See 28 U.S.C. § 1491 (2000). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Testan, 424 U.S. 392, 400, reh'g denied, 425 U.S. 957 (1976) (citing Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605-06, 372 F.2d 1002, 1009 (1967)); see also Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); Stinson, Lyons & Bustamante, P.A. v. United States, 33 Fed. Cl. 474, 478 (1995), aff'd, 79 F.3d 136 (Fed. Cir. 1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." INS v. St. Cyr, 533 U.S. 289, 299 n.10 (2001); United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992); Ins. Co. of the West v. United States, 243 F.3d 1367, 1372 (Fed. Cir.), reh'g and reh'g en banc denied (2001); Saraco v. United States, 61 F.3d 863, 864 (Fed. Cir. 1995) (quoting United States v. King, 395 U.S. 1, 4

(1969)), cert. denied, 517 U.S. 1166 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; "'it does not create any substantive right enforceable against the United States for money damages.'" United States v. Mitchell, 445 U.S. 535, 538 (quoting United States v. Testan, 424 U.S. at 398-99), reh'g denied, 446 U.S. 992 (1980); White Mountain Apache Tribe v. United States, 249 F.3d 1364, 1372 (Fed. Cir. 2001), aff'd, 537 U.S. 465 (2003); Cyprus Amax Coal Co. v. United States, 205 F.3d 1369, 1373 (Fed. Cir. 2000), cert. denied, 532 U.S. 1065 (2001); New York Life Ins. Co. v. United States, 118 F.3d 1553, 1555-56 (Fed. Cir. 1997), cert. denied, 523 U.S. 1094 (1998); United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc), cert. denied, 465 U.S. 1065 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. United States v. Mitchell, 445 U.S. at 538. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" White Mountain Apache Tribe v. United States, 249 F.3d at 1372 (quoting United States v. Mitchell, 463 U.S. 206, 216-17 (1983)); United States v. Testan, 424 U.S. at 400; Tippett v. United States, 185 F.3d 1250, 1254 (Fed. Cir. 1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998), reh'g denied (1999)); Doe v. United States, 100 F.3d 1576, 1579 (Fed. Cir. 1996), reh'g and reh'g en banc denied (1997); Eastport Steamship Corp. v. United States, 178 Ct. Cl. at 607, 372 F.2d at 1009.

In his supplemental briefing, the plaintiff argues that this court has jurisdiction because Mr. Bianchi's entitlement to VECP royalties is a matter of contract based on paragraph two of the settlement agreement, which allows plaintiff to pursue his VECP claims. The plaintiff also argues that Mr. Bianchi's right to apply for VECP royalties is a part of his original contract with the government because incorporated into the contracts between Mr. Bianchi and the Defense Personnel Support Center (DPSC) were master solicitation clauses, including clause JO9, titled "Value Engineering Incentive," which permitted Mr. Bianchi to apply for VECP royalties. The plaintiff relies on 28 U.S.C. § 1491(a)(1), quoted above, to argue that: "Whether or not the government paid Mr. Bianchi the VECP royalties pursuant to the reserved contract clauses is an issue of contract, or its breach, and, therefore, this Court has jurisdiction to resolve Mr. Bianchi's claims pursuant to 28 U.S.C. § 1491(a)(1)." According to the plaintiff, the clauses of Mr. Bianchi's contract with DPSC set forth the procedure for bringing VECP claims. The plaintiff states that the clauses require VECP claims to be submitted to the contracting officer for an initial determination as to whether the proposal is accepted or rejected. The plaintiff asserts, however, that "further proceedings were necessary to vindicate Mr. Bianchi's claim to VECP royalties." In this case, the court notes that those further proceedings were conducted at the ASBCA.

Additionally, the plaintiff argues that this court has jurisdiction to enforce plaintiff's

VECP awards because the account between Mr. Bianchi and the government is unsettled and that 28 U.S.C. § 1494 (2000) provides this court with jurisdiction over unsettled accounts. Section 1494 states in relevant part:

> The United States Court of Federal Claims shall have jurisdiction to determine the amount, if any, due to or from the United States by reason of any unsettled account of any officer or agent of, or contractor with, the United States, or a guarantor, surety or personal representative of any such officer, agent or contractor . . . .

28 U.S.C. § 1494. Plaintiff asserts that the ASBCA liquidated the amount due to Mr. Bianchi, however, the account between the government and Mr. Bianchi remained unsettled "upon the failure of the government to pay money to Mr. Bianchi pursuant to the reserved contract claims." Finally, the plaintiff argues that regardless of how the term "unsettled" is interpreted, 28 U.S.C. § 1491(a)(1) vests this court with jurisdiction to render judgments for liquidated or unliquidated damages not sounding in tort, and even upon the ASBCA's liquidation of the amount due.

The defendant responds that the Court of Federal Claims does not have jurisdiction to enforce an ASBCA award. While acknowledging that the court could have jurisdiction over an alleged breach of a settlement agreement between Mr. Bianchi and the government, the defendant states that Mr. Bianchi is not alleging a breach of a settlement agreement in his complaint. Instead, the defendant argues that paragraph two of the settlement agreement gave plaintiff only a right to pursue VECP claims and that Mr. Bianchi's complaint actually seeks payment of the VECP awards achieved in two later ASBCA decisions awarding him VECP recovery.

**A. The Election of Forum Doctrine**

This court is not convinced by the plaintiff's arguments that either 28 U.S.C. § 1491 or section 1494 confers jurisdiction on this court to enforce awards made by the ASBCA. After the settlement agreement, Mr. Bianchi elected to pursue his two later VECP claims at the ASBCA. This court is without jurisdiction to entertain or enforce those claims. The Contract Disputes Act (CDA) permits contractors to appeal a contracting officer's final decision to this court or to appeal such a decision to an agency Board of Contract Appeals. See 41 U.S.C. § 609(a)(1). The contractor is required to elect one or the other forum. According to the United States Court of Appeals for the Federal Circuit, which reviews appeals from this court as well as from the Boards of Contract Appeals:

> It is well established that, pursuant to the Contract Disputes Act, a contractor wishing to contest an adverse final decision by the contracting officer either may appeal the contracting officer's adverse decision to the appropriate board of contract appeals or may contest the contracting officer's decision directly to the Claims Court. This choice has given rise to a body of jurisprudence known as the "Election Doctrine."

* * *

> Once a contractor makes a binding election under the Election Doctrine to appeal the contracting officer's adverse decision to the appropriate board of contract appeals, that election must stand and the contractor can no longer pursue its claim in the alternate forum. Under the Election Doctrine, the binding election of forums is an "either-or" alternative, and, as such, does not provide a contractor with dual avenues for contesting a contracting officer's adverse decision.

Nat'l Neighbors, Inc. v. United States, 839 F.2d 1539, 1541-42 (Fed. Cir. 1988) (citing Tuttle/White Constructors, Inc. v. United States, 228 Ct. Cl. 354, 361, 656 F.2d 644, 647, 649 (1981)) (footnote omitted). This rule was reiterated in Texas Health Choice, L.C. v. Office of Personnel Management, in which the court stated:

> The CDA provides alternative forums for challenging a [contracting officer's] final decision: a contractor may file an appeal with the appropriate board of contract appeals, 41 U.S.C. § 606 (1988), or appeal directly to the Court of Federal Claims, 41 U.S.C. § 609(a)(1) (Supp. V 1993). Courts have consistently interpreted the CDA as providing the contractor with an either-or choice of forum.

Texas Health Choice, L.C. v. Office of Pers. Mgmt., 400 F.3d 895, 899 (Fed. Cir.), reh'g and reh'g en banc denied (2005); see also Bonneville Assocs. v. United States, 43 F.3d 649, 653 (Fed. Cir. 1994); Am. Telecom Corp. v. United States, 59 Fed. Cl. 467, 471 (2004) ("The 'in lieu of' language in section 609(a) clearly indicates that the contractor has a choice of forums but does not allow the contractor to pursue its claims before both forums.") (citing Tuttle/White Constructors, Inc. v. United States, 228 Ct. Cl. at 361, 656 F.2d at 649). For the election doctrine to apply, the contractor's choice of forum must be knowing, informed, and voluntary. See Bonneville Assocs. v. United States, 43 F.3d at 655.

The plaintiff contends that this court has jurisdiction to adjudicate his claims and that this court should interpret the settlement agreement to determine whether the government should pay him in addition to the Bank. Admittedly, this court has jurisdiction to review settlement agreements in the nature of a contract between a private citizen or business entity and the government because a settlement agreement is a contract. See Kasarsky v. Merit Sys. Prot. Bd., 296 F.3d 1331, 1336 (Fed. Cir. 2002) ("Disputes involving settlement agreements are governed by contract principles."); Greco v. Dep't of the Army, 852 F.2d 558, 560 (Fed. Cir. 1988) ("It is axiomatic that a settlement agreement is a contract. Equally settled is the principle that interpretation of the terms of a contract is a question of law."); Fausto v. United States 16 Cl. Ct. 750, 754 (1989). In his complaint, however, Mr. Bianchi does not seek enforcement of a settlement agreement, instead, he seeks enforcement of the ASBCA VECP awards, stating that:

> [D]espite the prior decisions, judgments and awards by the ASBCA in favor of Bianchi, the United States, by and through the Defense Logistics Agency ('DLA') has failed and refused to pay the VECP awards to Mr. Bianchi in the amounts of $58,613.03 and $16,574.74 . . . . Wherefore, Bianchi now demands judgment in his favor from this Court ordering the payment from the United States of his VECP awards in the amounts of $58,613.03 and $16,574.74 respectively . . . . (emphasis added).

According to the words of the plaintiff's own complaint filed in this court, what Mr. Bianchi asks this court to determine is whether the government fulfilled the terms of the ASBCA's decisions awarding VECP damages when, after the ASBCA decisions, the government paid the Bank instead of Mr. Bianchi.

The plain language of paragraph two of the original settlement agreement incorporated into the earlier ASBCA decision states that the agreement was made "without prejudice to Mr. Bianchi's right to pursue any and all Value Engineering Change Proposal Claims under his contracts with DPSC . . . ." This language reserved the opportunity for Mr. Bianchi to pursue VECP royalty claims against the government in litigation separate from the litigation which the settlement agreement brought to a finish. The settlement agreement did not address plaintiff's entitlement to VECP claims, it addressed only Mr. Bianchi's "right to pursue" VECP royalty claims. Entitlement to payment for any VECP claims was left for another day and another forum. It also was left to the plaintiff's option as to whether he wished to pursue a VECP claim, and, if so, in which forum he would choose to litigate his VECP claims. Ultimately, Mr. Bianchi did seek VECP royalties, however, he sought those royalties at the ASBCA and not in this court.

In Bianchi III, the Ninth Circuit addressed the issue of in which forum Mr. Bianchi should pursue enforcement of his VECP I royalty award. The Ninth Circuit found that, pursuant to 28 U.S.C. § 1346(a)(2), the United States District Court for the District of Nevada lacked subject matter jurisdiction to enforce the ASBCA award. That statute restricts a District Court to jurisdiction of contract claims against the government under $10,000.00. See Bianchi III, 163 F.3d at 569. The Ninth Circuit stated that Mr. Bianchi should have filed his claim in the United State Court of Federal Claims. See id. It is fundamental, however, that one court cannot confer jurisdiction or determine another court's jurisdiction. This court disagrees with the Ninth Circuit's direction to Mr. Bianchi to bring his claim to enforce an ASBCA award in this court. See Myers v. United States, 272 U.S. 52, 64 (1926) ("Except as to the original jurisdiction of the Supreme Court, it is settled that the federal courts have only such jurisdiction as Congress sees fit to confer."); Mitsubishi Elecs. Am., Inc. v. United States, 44 F.3d 973, 977 (Fed. Cir. 1994) ("Federal courts may only hear cases as authorized by Congress.") (citing Bell v. New Jersey & Pennsylvania, 461 U.S. 773, 777 (1983); Sampson v. Murray, 415 U.S. 61, 68 (1974)).

Pursuant to the Election Doctrine and paragraph two of the settlement agreement, Mr. Bianchi could have brought his VECP claims to this court initially. In that event, this court would have had jurisdiction to review entitlement to plaintiff's VECP claims, the

amount of any entitlement and whether Mr. Bianchi and/or the Bank should be awarded the VECP monies. Mr. Bianchi, however, elected to pursue his original VECP I claim, which the Ninth Circuit discussed in Bianchi III, at the Board in ASBCA Case No. 36518. Several years later, Mr. Bianchi chose to pursue his VECP II royalty claim also at the Board in ASBCA Case No. 37029, rather than in this court. In both of those actions, the ASBCA awarded Mr. Bianchi VECP royalties. There was no separate settlement agreement entered into by the parties and the government paid the Bank as the plaintiff's assignee. Mr. Bianchi cannot now continue to litigate and seek enforcement of awards made by the ASBCA in this court, an alternate forum. The Court of Federal Claims does not have jurisdiction to review an ASBCA judgment and any disagreement with the ASBCA's decision should have been brought at the ASBCA or to the United States Court of Appeals for the Federal Circuit. See 41 U.S.C. § 607(g)(1)(A) (2000). Having elected to pursue his VECP claims at the ASBCA, this court cannot now determine whether the Board awarded the plaintiff the correct amount for his VECP claims or to which individual or entity the judgment should be paid.

### B. Statute of Limitations

Despite its finding above that the court lacks jurisdiction to address plaintiff's claims, the court continues to address other issues raised by the defendant's motion to dismiss plaintiff's complaint in an effort to discourage this litigious plaintiff from pursuing arguments which this court believes cannot succeed. Even if this court had jurisdiction over Mr. Bianchi's enforcement claim, this court would lack jurisdiction over Mr. Bianchi's claim for the VECP I royalties awarded on February 10, 1993, because Mr. Bianchi failed to timely pursue his claim after it was dismissed from the District Court and certiorari was denied by the United States Supreme Court. The statute of limitations to seek relief regarding his VECP I award had long passed. The statute of limitations with respect to the VECP II royalties, awarded on December 28, 2000, however, had not run.

The statute at 28 U.S.C. § 2501 (2000) sets an express limitation on the jurisdiction granted to this court under the Tucker Act. Martinez v. United States, 333 F.3d 1295, 1304 (Fed. Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004); Franconia Assocs. v. United States, 240 F.3d 1358, 1362 (Fed. Cir. 2001), rev'd on other grounds, 536 U.S. 129 (2002); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1376-77 (Fed. Cir. 1998); Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1454 (Fed. Cir. 1997); Hart v. United States, 910 F.2d 815, 817 (Fed. Cir. 1990) (citing Soriano v. United States, 352 U.S. 270, 273-74 (1957)); Holloway v. United States, 60 Fed. Cl. 254, 256 (2004). The six-year time bar on actions against the United States is "jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491(a)(1)." Caguas Cent. Fed. Sav. Bank v. United States, 215 F.3d 1304, 1310 (Fed. Cir. 2000), cert. denied, 531 U.S. 1070 (2001); see also Martinez v. United States, 333 F.3d at 1316; Block v. North Dakota, 461 U.S. 273, 287 (1983); Frazer v. United States, 288 F.3d 1347, 1351 (Fed. Cir. 2002); Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d at 1454; Holloway v. United States, 60 Fed. Cl. at 256. Because the statute of limitations affects this court's subject matter

jurisdiction, the requirement is strictly construed, and may not be waived by the court. Alder Terrace, Inc. v. United States, 161 F.3d at 1376-77; Holloway v. United States, 60 Fed. Cl. at 256; Martinez v. United States, 48 Fed. Cl. at 857; Entines v. United States, 39 Fed. Cl. 673, 678 (1997), aff'd, 185 F.3d 881 (Fed. Cir.) (table), cert. denied, 526 U.S. 1117 (1999); McDonald v. United States, 37 Fed. Cl. 110, 113 (1997), aff'd, 135 F.3d 778 (Fed. Cir. 1998) (table).

The statute of limitations for a claim against the United States begins to run "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment . . . .'" Martinez v. United States, 333 F.3d at 1303 (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240, 368 F.2d 847, 751 (1966), reh'g denied, 184 Ct. Cl. 390, 396 F.2d 977 (1968)); Franconia Assocs. v. United States, 240 F.3d at 1362; Alder Terrace, Inc. v. United States, 161 F.3d at 1377; Hopland Band of Pomo Indians v. United States, 855 F.2d at 1577; Lins v. United States, 231 Ct. Cl. 579, 582, 688 F.2d 784, 786 (1982), cert. denied, 459 U.S. 1147 (1983); Oceanic Steamship Co. v. United States, 165 Ct. Cl. 217, 225 (1964); Holloway v. United States, 60 Fed. Cl. at 256.

With respect to Mr. Bianchi's claim for VECP I royalties, the government contends that because Mr. Bianchi filed his claim in this court more than eleven years after the ASBCA awarded him royalties on his VECP I claims on February 10, 1993, Mr. Bianchi's claim in this court is barred by the six-year statute of limitations in 28 U.S.C. § 2501. The government argues that even if Mr. Bianchi became aware of his claim on August 31, 1994, the date he filed suit in the United States District Court for the District of Nevada seeking payment, he is still barred because more than nine years had elapsed before he filed his claim in this court.

In his reply brief to the government's motion to dismiss, Mr. Bianchi acknowledges these dates, but claims that the statute of limitations was tolled by 28 U.S.C. § 1494(2) and 28 U.S.C. § 1500 (2000), making his filing timely. Mr. Bianchi claims that 28 U.S.C. § 1494, and, in particular, 28 U.S.C. § 1494(2) prohibited him from bringing his claim against the government in the United States Court of Federal Claims for three years, during which time the statute of limitations was tolled. Mr. Bianchi claims that the six-year statute of limitations period did not start to run until after that three-year period had passed. Mr. Bianchi also claims that 28 U.S.C. § 1500 further extended the tolled period because Mr. Bianchi was litigating his claim in the Bianchi III line of cases, thus making his filing timely. In the alternative, Mr. Bianchi argues that the six-year statute of limitations was reset by vesting in Mr. Bianchi a new claim that would allow for the VECP I royalties claim to be brought until December 23, 2005, when the government paid the VECP I royalties, allegedly due Mr. Bianchi, to the Bank.

**1. Tolling Pursuant to 28 U.S.C. § 1494**

In order to determine whether or not 28 U.S.C. § 1494 applies to Mr. Bianchi's situation and would extend plaintiff's time to file beyond the normal, applicable six-year statute of limitations, the words of 28 U.S.C. § 1494 must be reviewed. The first step in

statutory construction is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 450 (2002) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)). The inquiry ceases "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" Id. (quoting Robinson v. Shell Oil Co., 519 U.S. at 340). In interpreting the plain meaning of the statute, it is the court's duty, if possible, to give meaning to every clause and word of the statute. See TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (quoting Duncan v. Walker, 533 U.S. 167, 173 (2001)); Williams v. Taylor, 529 U.S. 362, 404 (2000) (describing as a "cardinal principle of statutory construction" the rule that every clause and word of a statute must be given effect if possible). Similarly, the court must avoid an interpretation of a clause or word which renders other provisions of the statute inconsistent, meaningless, or superfluous. See Duncan v. Walker, 533 U.S. at 167 (noting that courts should not treat statutory terms as "surplusage"). "[W]hen two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective." Radzanower v. Touche Ross & Co., 426 U.S. 148, 155 (1976); see also Hanlin v. United States, 214 F.3d 1319, 1321 (Fed. Cir.), reh'g denied (2000).

When the statute provides a clear answer, the court's analysis is at an end. See Barnhart v. Sigmon Coal Co. Inc., 534 U.S. at 450. Thus, when the "statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" Johnson v. United States, 529 U.S. 694, 723 (2000) (quoting United States v. Ron Pair Enterps., Inc., 489 U.S. 235, 241 (1989) (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917))). In such instances, the court should not consider "conflicting agency pronouncements" or "extrinsic evidence of a contrary intent." Weddel v. Sec'y of Dep't of Health and Human Servs., 23 F.3d 388, 391 (Fed. Cir.) (citing Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 476 (1992) (noting that courts must not defer to agency interpretation contrary to the intent of Congress evidenced by unambiguous language) and Darby v. Cisneros, 509 U.S. 137, 147 (1993)), reh'g denied, en banc suggestion declined (1994). "[O]nly language that meets the constitutional requirements of bicameralism and presentment has true legal authority." Weddel v. Sec'y of Dep't of Health and Human Servs., 23 F.3d at 391 (citing INS v. Chadha, 462 U.S. 919 (1983)). "'[C]ourts have no authority to enforce [a] principl[e] gleaned solely from legislative history that has no statutory reference point.'" Shannon v. United States, 512 U.S. 573, 583-84 (1994) (quoting Int'l Bhd. of Elec. Workers, Local Union No. 474 v. NLRB, 814 F.2d 697, 712 (D.C. Cir. 1987)). Consequently, if a statute is plain and unequivocal on its face, there is usually no need to resort to the legislative history underlying the statute. See Whitfield v. United States,125 S. Ct. 687, 692 (2005) ("Because the meaning of [the statute's] text is plain and unambiguous, we need not accept petitioners' invitation to consider the legislative history . . . ."); Chamberlain Group, Inc. v. Skylink Techs., Inc., 381 F.3d 1178, 1196 (Fed. Cir. 2004) ("Though 'we do not resort to legislative history to cloud a statutory text that is clear,' Ratzlaf v. United States, 510 U.S. 135, 147-48 (1994), we nevertheless recognize that 'words are inexact tools at best, and hence it is essential that we place the words of a

statute in their proper context by resort to the legislative history.'") (quoting Tidewater Oil Co. v. United States, 409 U.S. 151, 157 (1972)), reh'g and reh'g en banc denied (2004).

Section 1494 of title twenty-eight of the United States Code, on which Mr. Bianchi bases his assertion that the statute of limitations did not begin to run for three years, states:

> The United States Court of Federal Claims shall have jurisdiction to determine the amount, if any, due to or from the United States by reason of any unsettled account of any officer or agent of, or contractor with, the United States, or guarantor, surety or personal representative of any such officer, agent or contractor, and to render judgment thereof, where–
>
> (1) claimant or the person he represents has applied to the proper department of the Government for settlement of the account;
>
> (2) three years have elapsed from the date of such application without settlement; and
>
> (3) no suit upon the same has been brought by the United States.

28 U.S.C. § 1494.

More than 100 years ago, in Gerding v. United States, 26 Ct. Cl. 319, 322 (1891), the United States Court of Claims defined the purpose of 28 U.S.C. § 1494, which in substance has remained unchanged to the present date, as "bring[ing] to a speedy and final settlement claims upon the part of the Government which in the absence of any right upon the part of claimants . . . might remain dormant in the Department for years." The court further explained, making no reference to this statute as a tolling provision, that the statute serves a beneficial purpose in "compelling the Government to bring to a determination claims which might remain in the Departments indefinitely." Id. Mr. Bianchi's reliance on this statute as a tolling provision that prevented him from bringing his claim, or offered him additional time to file, for three years, however, is misplaced. In the present case, Mr. Bianchi's account was settled with the DLA when the ASBCA awarded him VECP I royalties on February 10, 1993. Also, this court cannot and is not being asked to "determine the amount, if any, due to or from the United States" because the ASBCA has already determined the amount due, which plaintiff does not dispute. See 28 U.S.C. § 1494. Since February 10, 1993, the date of the ASBCA award, Mr. Bianchi has sought to alter the designation of the payee, not to determine the amount due. Furthermore, if section 1494 were to be interpreted as Mr. Bianchi suggests, as a broad provision that prevented him from bringing his claim for three years on an "unsettled account" or potentially unpaid account, the statute of limitations on any claim against the government would effectively be nine years by adding the three years in section 1494 and the six years permitted in section 2501. This would render the six-year statute of limitations period meaningless. Thus, Mr. Bianchi's argument to extend the statute of limitations fails.

**2. Tolling Pursuant to 28 U.S.C. § 1500 and Equitable Tolling**

Mr. Bianchi next contends that 28 U.S.C. § 1500 (2000) also prevented him from bringing his claim and, thereby, tolled the statute of limitations. Assuming that Mr. Bianchi can claim that he was not aware of his claim until August 31, 1994, when he filed in the United States District Court for the District of Nevada, Mr. Bianchi appears to argue that the statute of limitations was tolled for four and one-half years, from the time that he filed in the District Court to the time that certiorari was denied by the Supreme Court on October 4, 1999.

Section 1500 of Title 28 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. This statute dates back to the Civil War and was intended to keep the United States from defending multiple lawsuits over the same matter simultaneously. See UNR Indus., Inc. v. United States, 962 F.2d 1013, 1017-19 (Fed. Cir. 1992) (en banc), aff'd sub nom. Keene Corp. v. United States, 508 U.S. 200 (1993). The United States Court of Appeals for the Federal Circuit explained:

> Its purpose was to "force plaintiffs to choose between pursuing their claims in the Court of Claims or in another court" and to prevent the United States from having to litigate and defend against the same claim in both courts.

Harbuck v. United States, 378 F.3d 1324, 1328 (Fed. Cir. 2004) (quoting UNR Indus., Inc. v. United States, 962 F.2d at 1018, 1021), reh'g and reh'g en banc denied (2004), cert. denied, 125 S. Ct. 1386 (2005), reh'g denied, 125 S. Ct. 1831 (2005).

According to 28 U.S.C. § 1500, the United States Court of Federal Claims is without jurisdiction if the same claim is pending or is filed simultaneously in federal District Court at the time the complaint is filed in the Court of Federal Claims. See UNR Indus., Inc. v. United States, 962 F.2d at 1021. This court, however, is not divested of jurisdiction over a complaint filed in the Court of Federal Claims by a later filing in a federal District Court. See El-Shifa Pharm. Indus. Co. v. United States, 378 F.3d 1346, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (2004), cert. denied, 125 S. Ct. 2963 (2005). In Loveladies Harbor, Inc. v. United States, the United States Court of Appeals for the Federal Circuit developed a two part test to determine if a claim in the Court of Federal Claims is the same as a claim pending in another court according to section 1500: "For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from the same operative facts, and must seek the same relief."

Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1551 (Fed. Cir. 1994) (emphasis in original), aff'd, 28 F.3d 1171 (Fed. Cir.), reh'g and reh'g en banc denied (2004); see also Harbuck v. United States, 378 F.3d at 1329.

Applying the two part test established by the United States Court of Appeals for the Federal Circuit in Loveladies Harbor, Inc., the VECP I claim brought by Mr. Bianchi in this court is the same VECP I claim that was filed in the United States District Court for the District of Nevada. Mr. Bianchi filed his action in the United States District Court for the District of Nevada "in the nature of mandamus for an order to compel the United States to pay the amount awarded to him by the ASBCA. The ASBCA had determined that the Government was liable to Mr. Bianchi in the amount of $58,613.03 under a VECP provision of an express contract." Bianchi III, 163 F.3d at 567. Regardless of the lable plaintiff put on the action, Mr. Bianchi sought in the District Court the same $58,613.03 awarded by the ASBCA that he claims in this court. In the District Court case, "[Mr. Bianchi] asserted that he was entitled to the $58,613.03 because the Government had agreed to pay the VECP claim as part of a stipulated agreement that was integrated into the decision of the ASBCA." Bianchi III, 163 F.3d at 568. He argued that the government should not have paid the Bank as his assignee. Although the case in the District Court was filed under a different legal theory, the claim filed in the District Court sought the same relief and involved the same operative facts as the claim filed in this court. Since the operative facts and the relief sought in the District Court are for the same relief as in the claim pending before this court, Mr. Bianchi would have been precluded by 28 U.S.C. § 1500 from bringing this claim in the Court of Federal Claims while the claim was pending in the District Court.

While section 1500 would have prevented Mr. Bianchi from bringing a claim in the Court of Federal Claims that he already had brought in the District Court, Mr. Bianchi raises the issue of whether or not section 1500 can operate as a tolling provision. In Corona Coal Co. v. United States, the United States Supreme Court dismissed an appeal, agreeing with the United States Court of Claims, which had dismissed an action brought by the plaintiff. The plaintiff had brought an action in the United States Court of Claims to prevent the statute of limitations from running while he had the same "causes of action" pending in a District Court. Corona Coal Co. v. United States, 263 U.S. 537, 539-40 (1924). The United States Supreme Court wrote:

> It is urged, however, that the actions were brought, ex necessitate rei, because they were about to become barred by expiration of the statutory period of limitation, and that, for this and other reasons, the case is not within the spirit of section 154 [§ 1500 predecessor] properly construed. But the words of the statute are plain, with nothing in the context to make their meaning doubtful; no room is left for construction, and we are not at liberty to add an exception in order to remove apparent hardship in particular cases.

Corona Coal Co. v. United States, 263 U.S. at 540.

Thirty years after the decision in Corona Coal Co. v. United States, in Wessel, Duval & Co. v. United States, 129 Ct. Cl. 464, 465, 124 F. Supp. 636, 637 (1954), a plaintiff brought the same claim in both the District Court for the Southern District of New York and in the United States Court of Claims. The plaintiff apparently filed in both courts because of uncertainty as to which court had jurisdiction over its claims. The court wrote: "Plaintiff states that its purpose in filing in this court was to protect itself against the running of the statute of limitation should the District Court deny jurisdiction." Id. at 465, 124 F. Supp. at 637. The court, in its decision to dismiss the plaintiff's claim, rejected the plaintiff's arguments:

> Although plaintiff's desired result is an appealing one, we believe the language of 28 U.S.C. § 1500 is quite explicit and to defer action in this court would foster just the type of occurrence which section 1500 was enacted to prevent, i.e., the maintaining of two suits against the United States on the same claims and at the same time in two different courts.

Wessel, Duval & Co. v. United States, 129 Ct. Cl. at 465, 124 F. Supp. at 637. Even though the plaintiff hoped to avoid being barred by the statute of limitations by filing in both courts, section 1500 prevented the practice.

The claims in Ball v. United States 133 Ct. Cl. 841, 845-48, 137 F. Supp. 740, 744-45 (1956), cert. denied, 352 U.S. 827 (1956), also involved section 1500 and the statute of limitations, but, unlike the filings in Corona Coal Co. v. United States and Wessel, Duval & Co. v. United States, the claims in Ball were filed in succession. In Ball v. United States, the second claim filed in the Court of Claims was dismissed for violating the six-year statute of limitations. The Court of Claims in Ball v. United States held that a reinstatement proceeding pending in a District Court could not toll the statute of limitations for a pay claim in the Court of Claims. See Ball v. United States 133 Ct. Cl. at 845-48, 137 F. Supp. at 744-45. The court decided that the "plaintiffs might have brought suit for pay in the Court of Claims when their causes of action accrued, but elected to seek reinstatement in the District Court by suits against the Government officials responsible . . . ." Id. at 848, 137 F. Supp. at 745. The court compared the equitable claim filed in the District Court to an unnecessary administrative proceeding that could not toll the statute of limitations. Id. at 845; 137 F. Supp. at 744. Although the court did not decide whether or not section 1500 prevented the pay claim from being litigated in the Court of Claims while the equitable claim was pending in the District Court, the Court of Claims commented on section 1500 as a tolling provision:

> Assuming that section 1500 would have prevented plaintiffs from maintaining their suits against the Government for back salary in the Court of Claims while their suits for specific relief against individual Government officials were pending in the Federal District Court, a point which we do not decide, we do not think that the statute of limitations was tolled while plaintiffs' suits in the District Court were still pending. Prior to the commencement of the District Court suits against individual Government

> officials, plaintiffs had a completely accrued cause of action for pay against the Government itself on which they might have then brought suit in the Court of Claims. Plaintiffs' right to recover on the salary claims was in no way dependent upon a final judgment in reinstatement proceeding.

Ball v. United States 133 Ct. Cl. at 846, 137 F. Supp. at 744.

The United States Court of Appeals for the Federal Circuit in Johns-Manville Corp. v. United States reviewed and adopted the decisions in Corona Coal Co. v. United States, Wessel, Duval & Co. v. United States, and Casman v. United States, 135 Ct. Cl. 647 (1956) with regards to section 1500 as a tolling provision and added additional insight on the issue. See Johns-Manville Corp. v. United States, 855 F.2d 1556, 1562-67 (Fed. Cir. 1988), cert. denied, 489 U.S. 1066 (1989) . In Johns-Manville Corp., the plaintiff brought the same monetary claim under two different legal theories, one based on contract and another based on tort. See id. at 1558. The Federal Circuit affirmed the decision of the lower court, which had dismissed for lack of jurisdiction pursuant to section 1500 because the claims were the same, despite being brought under different legal theories. The court stated:

> The possibility that the statute of limitations may run on one theory while the other theory is being prosecuted is the only substantive basis for Johns-Manville's argument that section 1346(a)(2), (b) is repugnant to section 1500. As already discussed, Court of Claims precedent which is binding on us has expressly rejected this argument.

Johns-Manville Corp. v. United States, 855 F.2d at 1566.

In UNR Industries, Inc. v. United States, the United States Court of Appeals for the Federal Circuit explicitly overruled several of the earlier section 1500 precedents, including Casman v. United States, 135 Ct. Cl. at 647, and Brown v. United States, 175 Ct. Cl. 343, 358 F.2d 1002 (1966). See UNR Indus., Inc. v. United States, 962 F.2d at 1023. The Federal Circuit, in overruling Brown v. United States, which would have permitted plaintiffs to bring claims in the Court of Federal Claims after the statute of limitations had run if originally filed in a court without jurisdiction, pointed out that the option to transfer cases could aid in softening the harshness of the ruling of the Supreme Court in Corona Coal Co. v. United States and the subsequent decisions consistent with that opinion. The court wrote:

> It may have seemed unfair "to deprive plaintiffs of the only forum they [had] in which to test their demand," [Brown v. United States, 358 F.2d] at 1004, but that does not justify rewriting the statute. Brown is overruled. To the extent Brown can be read as a case brought in the wrong court, 28 U.S.C. § 1631 (1988) now permits a transfer to the court that has jurisdiction if the transferring court believes it to be in the interest of justice.

UNR Indus., Inc. v. United States, 962 F.2d at 1022. The Federal Circuit referenced the statement about section 1631 in United States v. County of Cook, Illinois by writing that: "Section 1631 mandates that the transferred claims be treated as if they were filed in the transferee court at the time they were filed in the transferor court." United States v. County of Cook, Ill., 170 F.3d 1084, 1089 n. 8 (Fed. Cir. 1999).

In a short comment, titled "additional views" following the majority opinion in UNR Industries, Inc. v. United States, then Chief Judge Nies recognized the inevitable statute of limitations issues that could arise and suggested that relief could be obtained by the doctrine of equitable tolling:

> Moreover, Ball would require revisiting in any event because of the recent decision of the Supreme Court, Irwin v. Veterans Admn., 498 U.S. 89, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990) holding that equitable tolling may be available in suits against the United States. Where a party has possibly two claims for relief and is barred from asserting them concurrently by section 1500, I do not believe the period allowed for bringing the additional or alternative claim should arbitrarily be cut off or even shortened. Section 1500 does not require such forfeiture. Some cases may be dealt with by the transfer statute, 28 U.S.C. § 1631 (1988). . . . In any event, the option of tolling the statute of limitations should be available to the Claims Court despite the Ball decision.

UNR Indus., Inc. v. United States, 962 F.2d at 1026.

The Court of Federal Claims in George F. Miller Farms, Ltd. v. United States, 27 Fed. Cl. 672, 675 (1993) adopted the suggestion in UNR Industries, Inc. v. United States that equitable tolling should be considered in cases in which section 1500 would prevent a money damages claim from being filed in the Court of Federal Claims while an equitable suit was pending in a District Court. See George F. Miller Farms, Ltd. v. United States, 27 Fed. Cl. at 675. In 1986, Miller Farms filed a complaint for equitable relief in a District Court and a complaint for money damages in the Claims Court. Id. at 673. The Claims Court case was dismissed pursuant to section 1500. Id. More than six years later, on July 27, 1992, Miller Farms filed a complaint in the Court of Federal Claims asserting that based on the recent UNR Industries, Inc. v. United States decision the statute of limitations was tolled while their suit was in the District Court system. The court in George F. Miller Farms, Ltd. concluded that "Irwin[v. Dep't of Veterans Affairs, 498 U.S. 89 (1990)] implicitly overruled Ball [133 Ct. Cl. 841 (1956)] by holding that a defective pleading was an appropriate ground for tolling." George F. Miller Farms, Ltd. v. United States, 27 Fed. Cl. at 675. The court in George F. Miller Farms, Ltd. ultimately found that it had jurisdiction over the plaintiff's complaint through the doctrine of equitable tolling because the plaintiff was vigilant in the filing of its complaint before it was dismissed pursuant to section 1500:

> These plaintiffs filed a timely action in this court seeking precisely the same relief on the same legal theory as the instant action. In these circumstances,

> plaintiffs cannot be said to have slept on their rights, and the defendant cannot claim prejudice due to lack of notice within the statutory period.

George F. Miller Farms, Ltd. v. United States, 27 Fed. Cl. at 676.

If Mr. Bianchi had transferred his case filed in the United States District Court for the District of Nevada to a court with jurisdiction, he could have claimed the benefit of the initial filing date in the District of Nevada for statute of limitations purposes. See United States v. County of Cook, Ill., 170 F.3d at 1089 n. 8. For whatever reason, Mr. Bianchi chose not to do so. The federal transfer statute, 28 U.S.C. § 1631, provides that a court may transfer an action to another court if the transferor court lacks jurisdiction to hear the claim and the transferee court would have jurisdiction. See id. Even though the Ninth Circuit in Bianchi III recognized that Mr. Bianchi's claim, although filed in the nature of a writ of mandamus, should not have been brought in the District Court, Mr. Bianchi did not request that his claim be transferred. Instead, Mr. Bianchi filed a new claim in this court on March 18, 2004, more than four years after the United States Supreme Court denied certiorari of the Ninth Circuit decision on October 4, 1999. In Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990), the Court stated that it had "generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." (citing Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151 (1984)). Even if Mr. Bianchi's claims had been tolled during the pendency of his case in other federal courts, Mr. Bianchi waited far too long to initiate a suit in this court. The interests of justice, therefore, do not direct application of the equitable tolling doctrine to the plaintiff's case.

**3. New Claim Argument**

Finally, Mr. Bianchi alleges that when the government paid the VECP I royalties to the Bank on December 23, 1999, Mr. Bianchi was vested with a new claim to the VECP I royalties that restarted the statute of limitations. Therefore, according to Mr. Bianchi, he had another six years, until December 23, 2005, before the statute of limitations ran out, to file in the United States Court of Federal Claims. The statute of limitations for a claim against the United States begins to run "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment . . . .'" Martinez v. United States, 333 F.3d at 1303 (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240, 368 F.2d 847, 851 (1966)). Mr. Bianchi first demanded payment to himself rather than to the Bank for the VECP I royalties awarded by the ASBCA when he filed in the United States District Court for the District of Nevada on August 31, 1994. The government's payment to the Bank after the ASBCA award did not fix a new liability and, thus, did not start the running of a new statute of limitations time period. The claim that Mr. Bianchi filed in the United States District Court for the District of Nevada sought that the same VECP I amount of damages, $58,613.03, plus interest, be paid to Mr. Bianchi, whether or not it had been paid to the Bank.

**4. Impact of Prior Litigation/Res Judicata**

Since there are no material facts in dispute, the questions to consider are whether or not the government is liable to Mr. Bianchi for VECP royalties according to paragraph two of the settlement agreement and the impact of prior litigation on plaintiff's claims. Mr. Bianchi argues that the decisions in Bianchi I by the United States Court of Appeals for the Federal Circuit and Bianchi II by the United Sates Court of Appeals for the Ninth Circuit are controlling precedent that establish that the government has incurred dual liability, one to Mr. Bianchi according to paragraph two of the settlement agreement and one to the Bank through the assignments. The government, in opposition, argues that Bianchi I and Bianchi II are not controlling precedent on the issue before this court because they do not involve paragraph two of the settlement agreement, which is the portion of the settlement agreement that exclusively addresses VECP royalties. The government further argues that because the prior litigation is not binding with respect to paragraph two, that paragraph should be interpreted as merely reserving a right to pursue VECP royalties. Finally, the defendant asserts that the government met its obligation to Mr. Bianchi by paying the Bank, Mr. Bianchi's assignee.

The United States Supreme Court summarized the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) as follows:

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . ." Southern Pacific R. Co. v. United States, 168 U.S. 1, 48-49 (1897). Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. Cromwell v. County of Sac, 94 U.S. 351, 352 (1877); Lawlor v. National Screen Service Corp., 349 U.S. 322, 326 (1955); 1B J. Moore, Federal Practice ¶ 0.405[1], pp. 621-624 (2d ed. 1974) (hereinafter 1B Moore); Restatement (Second) of Judgments § 47 (Tent. Draft No. 1, Mar. 28, 1973) (merger); id., § 48 (bar). Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979); Scott, Collateral Estoppel by Judgment, 56 Harv. L. Rev. 1, 2-3 (1942); Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, Apr. 15, 1977) (issue preclusion). Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. Southern Pacific R. Co., supra, at 49; Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 299 (1917). To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple

> lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

Montana v. United States, 440 U.S. 147, 153-54 (1979) (footnote omitted).

The Supreme Court has established that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981); see also In re Deckler, 977 F.2d 1449, 1452 (Fed. Cir. 1992); Mark Smith Constr. Co. v. United States, 15 Cl. Ct. 32, 35-36 (1988). By affording a claimant only one opportunity to obtain redress, the doctrines conserve judicial resources, foster reliance upon judicial decisions, and protect litigants from vexatious and needless litigation. Id. at 36; Martin v. United States, 30 Fed. Cl. 542, 546, aff'd, 41 F.3d 1519 (Fed. Cir. 1994) (table); Lins v. United States, 4 Cl. Ct. 772, 777, aff'd, 758 F.2d 666 (Fed. Cir. 1984) (table).

The United States Court of Appeals for the Federal Circuit, following the precedent set by the Supreme Court, also discussed issue preclusion and claim preclusion writing that "unlike issue preclusion, which only bars matters actually litigated in a prior proceeding, claim preclusion forecloses matters that, although never litigated or even raised, could have been advanced in an earlier suit." Carson v. Department of Energy, 398 F.3d 1369, 1375, n. 8 (Fed. Cir.), reh'g denied (2005). The Federal Circuit, in further discussing the doctrine of res judicata, or claim preclusion, specified that "res judicata applies if (1) the prior decision was rendered by a forum with competent jurisdiction; (2) the prior decision was a final decision on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." Id. at 1375; see also Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1362 (Fed. Cir. 2000), reh'g and reh'g en banc denied (2000); Int'l Nutrition Co. v. Horphag Research, Ltd., 220 F.3d 1325, 1328 (Fed. Cir. 2000) (defining the third element as involving "the same claims that were raised, or could have been raised, in the prior action."); Amgen, Inc. v. Genetics Institute, Inc., 98 F.3d 1328, 1331 (Fed. Cir. 1996), reh'g denied, en banc suggestion declined (1997) ; Schickler, Tmd, U.S.A., Inc. v. United States, 54 Fed. Cl. 264, 270 (2002) (citing Blonder-Tongue Lab., Inc. v. University of Ill. Found., 402 U.S. 313, 323-24 (1971)), appeal dismissed, 70 Fed. Appx. 584 (2003). Further clarifying the third requirement in terms of claim preclusion, the Federal Circuit wrote:

> A subsequent suit is barred if it arises out of the same subject matter as a previous suit and which, "through the exercise of diligence, could have been litigated in a prior suit." [Restatement (Second) of Judgments § 24 (1982).] What constitutes the subject matter of a suit depends on the factual basis of the complaint, and any cause of action that arises out of the same facts should be litigated in the same action. See id. at 630; see also Flores v. Edinburg Consol. Independent School Dist., 741 F.2d 773, 777 (5th Cir. 1984).

United Tech. Corp. v. Chromalloy Gas Turbine Corp., 189 F.3d 1338, 1344 (Fed. Cir.),

reh'g denied, en banc suggestion declined (1999).

Mr. Bianchi contends that the prior litigation, and Bianchi I in particular, establish that the United States has incurred dual liability through two separate legal theories, one to Mr. Bianchi through the language of the settlement agreement and one to the Bank through the loan assignments. In his brief, the plaintiff states:

> Just as the United States had to pay Mr. Bianchi the monetary award pursuant to the settlement agreement and the Bank of America pursuant to the assignments, the United States is required to pay the reserved VECP royalties to Mr. Bianchi pursuant to the terms of the Stipulation to Board Decision, irrespective of whether the United States is commensurately indebted to the bank for the amount of those royalties purusant to the disclosed assignments.

In Bianchi I, the United States Court of Appeals for the Federal Circuit concluded that the government was liable to the Bank, not through the settlement agreement, but because of the inferior interest assigned to the SBA, according to the assignments created pursuant to the Assignment of Claims Act. See Bianchi I, 23 F.3d at 384. In its opinion, the court interpreted the first paragraph of the settlement agreement and determined the government's liability to Mr. Bianchi pursuant to that paragraph before analyzing the government's liability through the assignment documents. See id. at 383-84. The court also determined the government's liability to Mr. Bianchi for contract damages pursuant to the settlement agreement. See id. at 383. Unlike in Bianchi I, in which the Federal Circuit decided the government's contract liability to both the Bank and Mr. Bianchi at the same time, the government's liability to the Bank through the assignments for VECP royalties was addressed by the United States District Court for the District of Nevada and the Ninth Circuit. See Bianchi III, 163 F.3d at 570. The Ninth Circuit in Bianchi III affirmed the decision by the District Court that the government was liable to the Bank for VECP royalties through the assignments made by Mr. Bianchi on the original military clothing contracts. See id. The government made payments to the Bank pursuant to the District Court's decision.

Although the Bank was paid for both VECP royalty awards, the issue raised by Mr. Bianchi is whether or not the government also is indebted to him for VECP royalties based on the language in the second paragraph of the settlement agreement. Each paragraph of the settlement agreement has been raised in of separate litigation and resulted in a decision by an appellate court. Paragraph one led to the Federal Circuit's decision in Bianchi I, paragraph three led to the Ninth Circuit's decision in Bianchi II, and paragraph two, directly discussing VECP claims, was briefly addressed in the Ninth Circuit's decision in Bianchi III. The issue before this court is the interpretation of the language that reserves a "right to pursue" VECP royalties within the second paragraph of the settlement agreement. In contrast, the issue before the Federal Circuit in Bianchi I was the interpretation of the first paragraph, which established a specific settlement amount for the contract damage claim by stating plainly that Mr. Bianchi "is entitled to recover $617,500.00

on his claims." See Bianchi I, 23 F.3d at 383. The Federal Circuit decided that the government's liability to Mr. Bianchi arose from the government's specific promise in the first paragraph, despite its knowledge about the legally binding assignment to the Bank, that Mr. Bianchi was entitled to recover. Id. at 383-84. In its decision, the Federal Circuit asserted as a matter of policy that:

> [T]he government cannot now renege on its commitment to honor its settlement with Bianchi, into which it entered voluntarily and with full knowledge of the facts. "To permit [the government] to escape its obligation under the settlement would seriously decrease the willingness of parties to settle litigation on mutually agreeable terms and thus weaken the efficacy of settlements generally." Hemstreet [v. Spiegel, Inc.], 851 F.2d [348,] 350 [(Fed. Cir. 1988)].

Bianchi I, 23 F.3d at 383. The Federal Circuit made this statement after interpreting the first paragraph of the settlement agreement, finding that the government was liable to Mr. Bianchi and could not recover funds erroneously paid. See Bianchi I, 23 F.3d at 383. The Federal Circuit did not interpret or analyze the language of the second or third paragraphs of the settlement agreement or indicate what commitments the government had made to Mr. Bianchi pursuant to paragraphs other than paragraph one. Therefore, Bianchi I does not trigger the doctrines of res judicata or issue or claim preclusion regarding interpretation of paragraph two of the settlement agreement.

After the Federal Circuit addressed the dual liability issue, the court also rejected the government's right to setoff the amount that Mr. Bianchi owed to the SBA against any money owed to the Bank by virtue of the settlement. See Bianchi I, 23 F.3d at 384-85. The Federal Circuit's decision, which the Ninth Circuit later acknowledged as res judicata with regards to setoff in Bianchi II, relied on the technicalities of the Assignment of Claims Act and on whether or not Mr. Bianchi's assignments were independent of the original military contract, not on the language of the settlement agreement. See id. at 385. The Federal Circuit discussed the settlement agreement only to determine the government's continuing obligation to pay Mr. Bianchi the amount that it had agreed to pay, and not to determine the government's possible entitlement to setoff. See id. at 383-85. In its setoff analysis, the Federal Circuit first decided that Mr. Bianchi's assignments contained a "no set-off" clause valid under the Assignment of Claims Act that was included to provide certainty in the financing of his contract with the government. See id. at 385. The Federal Circuit continued its analysis by deciding that the government's claim for setoff was not valid because the assignment and military clothing contracts, although related, were independent of one another and, therefore, could not be properly used for a setoff claim. See id. The court compared the government's claimed entitlement to setoff with that of a contractor's tax liability:

> Even accepting that Bianchi's liability on the notes [assignments to the bank] was "related to" the contracts, however, we agree with the bank that the liability on the notes arose "independently of such contract."

* * *

> Like a contractor's tax liability, Bianchi's liability on the notes did not arise from his defense contracts, it was imposed by the loan documents. He could owe on the notes even if he had no contract. . . . Bianchi's liability to the SBA on the notes is independent of the contracts, barring set-off by the government.

Bianchi I, 23 F.3d at 385. The Federal Circuit's setoff analysis was separate and distinct from the analysis of the dual liability questions and the interpretation of the first paragraph of the settlement agreement.

The line of cases resulting in the Bianchi II decision by the Ninth Circuit about the setoff of EAJA fees addressed in the third paragraph of the settlement agreement, like the setoff issue in Bianchi I, also would not foreclose consideration of possible dual liability on the VECP claims and the second paragraph of the settlement agreement. See Bianchi II, 140 F.3d at 1297. The Ninth Circuit, when opening its analysis, stated that "[t]he hard questions in this case relate to setoff. When the government makes a mistaken agreement to settle a claim (if indeed the agreement or payment was mistaken), should it be allowed to recover the money by setting it off against that claim or another?" Id. To answer this specific setoff question, the Ninth Circuit held:

> Because its ratio decidendi does not allow for a distinction, we conclude that the Federal Circuit [Bianchi I] decision is res judicata. That decision established that the government was not entitled to a setoff against the $617,500 or the interest based on Bianchi's assignment to his bank and bank's assignment to the SBA. The reasoning of the decision establishes that the assignments could not entitle the government to a setoff against the settlement at all. The meaning of that agreement, with respect to setoff, has already been conclusively determined by the Federal Circuit.

Bianchi II, 140 F.3d at 1299. The government and Mr. Bianchi obviously did not perceive a dual liability issue in the Bianchi II line of cases about setoff, because neither tried to involve the Bank as a third party in the action. See id. at 1296-97. The Bank did not claim any right to EAJA fees awarded to Mr. Bianchi by the ASBCA when the issue was litigated, and there is no indication in the record that the Bank has claimed any right to the EAJA fees finally paid to Mr. Bianchi since. See id.

The Ninth Circuit, however, in the course of its opinion on the EAJA setoff issue, addressed the "right to pursue" language in the settlement agreement in passing. The court wrote that the language "right to pursue" included an obligation to pay the award and was not just a reservation of a right. Mr. Bianchi relies heavily on those words by the Ninth Circuit in Bianchi II to argue that the government has incurred a second liability to him for VECP royalties.

Although the line of cases resulting in the Bianchi III decision by the Ninth Circuit may have briefly addressed paragraph two of the settlement agreement, these cases are not res judicata with respect to, and would not collaterally estop this court from interpreting the second paragraph of the settlement agreement to determine whether or not the government is liable to pay Mr. Bianchi the VECP royalties awarded by the ASBCA. When this issue was appealed from the United States District Court for the District of Nevada to the Ninth Circuit, the Circuit Court in Bianchi III found that the District Court did not have jurisdiction over Mr. Bianchi's claim against the government. See Bianchi III, 163 F.3d at 570. The Ninth Circuit believed that the United States Court of Federal Claims possessed jurisdiction because Mr. Bianchi had brought a claim against the government on an express contract for an amount in controversy exceeding $10,000. See id.; see also 28 U.S.C. § 1346(a)(2). Since, according to the Ninth Circuit, the District Court could not reach a decision on the issue for lack of jurisdiction, this lack of jurisdiction also would prevent the Bianchi III line of cases from having res judicata effect in this court. Because the Ninth Circuit found that the District Court did not have jurisdiction, the first requirement in the Federal Circuit's res judicata test, that the prior decision be rendered by a forum with competent jurisdiction, as described in Carson v. Department of Energy, 398 F.3d at 1375, is not satisfied. See Bianchi III, 163 F.3d at 570. Moreover, in addition to finding lack of jurisdiction, the Ninth Circuit found that the District Court did not directly address or make a final judgment on Mr. Bianchi's claim on the merits. Therefore, on the issue of the VECP claims, there would be no res judicata effect from the words of the Ninth Circuit.

**II. Summary Judgment**

In addition to the defendant's motion to dismiss for lack of subject matter jurisdiction, the plaintiff filed a motion for summary judgment on its complaint pursuant to RCFC 56, to which the defendant filed a cross-motion. Even if this court possessed jurisdiction over Mr. Bianchi's VECP enforcement claims, Mr. Bianchi cannot prevail in a motion for summary judgment. Once again, in order to dissuade future litigation by this plaintiff, the court continues below. RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001); Avenal v. United States, 100 F.3d 933, 936 (Fed. Cir. 1996), reh'g denied (1997); Creppel v. United States, 41 F.3d 627, 630-31 (Fed. Cir. 1994). A fact is material if it will make a difference in the result of a case under the governing law. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48; see also Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959), reh'g denied, 361 U.S. 941 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; see, e.g., Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed. Cir. 1998) (the nature of a summary judgment proceeding is such that the trial judge does not make findings of fact); Johnson v. United States, 49 Fed. Cl. 648, 651 (2001), aff'd, 317 F.3d 1331 (Fed. Cir. 2003); Becho, Inc. v. United States, 47 Fed. Cl. 595, 599 (2000). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-52; Jay v. Sec'y of Dep't of Health and Human Servs., 998 F.2d 979, 982 (Fed. Cir.), reh'g denied and en banc suggestion declined (1993). When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Summary judgment:

> saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

Dehne v. United States, 23 Cl. Ct. 606, 614-15 (1991) (citing Pure Gold, Inc. v. Syntex, Inc., 739 F.2d 624, 626 (Fed. Cir. 1984)), vacated on other grounds, 970 F.2d 890 (Fed. Cir. 1992); see also United States Steel Corp. v. Vasco Metals Corp., 394 F.2d 1009, 1011 (C.C.P.A. 1968).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir. 2001), cert. denied, 534 U.S. 1109 (2002); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Wanlass v. Fedders Corp., 145 F.3d 1461, 1463 (Fed. Cir.), reh'g denied and en banc suggestion declined (1998).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving

party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Trilogy Communications, Inc. v. Times Fiber Communications, Inc., 109 F.3d 739, 741 (Fed. Cir.) (quoting Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994)), reh'g denied and en banc suggestion declined (1997); Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1569 (Fed. Cir. 1997). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. at 322; Am. Airlines, Inc. v. United States, 204 F.3d 1103, 1108 (Fed. Cir. 2000); see also Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1207 (Fed. Cir. 2001).

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case. Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)); Chevron USA, Inc. v. Cayetano, 224 F.3d 1030, 1037 n.5 (9th Cir. 2000), cert. denied, 532 U.S. 942 (2001). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." LewRon Television, Inc. v. D.H. Overmyer Leasing Co., 401 F.2d 689, 692 (4th Cir. 1968), cert. denied, 393 U.S. 1083 (1969); see also B.F. Goodrich Co. v. United States Filter Corp., 245 F.3d 587, 593 (6th Cir. 2001); Massey v. Del Labs., Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other necessarily is justified. B.F. Goodrich Co. v. United States Filter Corp., 245 F.3d at 593; Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000); Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d 1, 2 (1st Cir. 1998); Reading & Bates Corp. v. United States, 40 Fed. Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration. DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1322 (Fed. Cir. 2001); Gart v. Logitech, Inc., 254 F.3d 1334, 1338-39 (Fed. Cir. 2001), cert. denied, 534 U.S. 1114 (2002).

The parties in this action do not dispute the facts and a review of the record reveals that there are no material facts in dispute. Both parties agree in the joint stipulation of facts that the plaintiff and the government entered into at least two military clothing contracts and that Mr. Bianchi assigned the proceeds and rights associated with the two contracts to the Bank. They also agree that they entered into a binding settlement agreement at the ASBCA that permitted Mr. Bianchi to independently pursue VECP royalties pursuant to paragraph two of the agreement. Both parties further agree that the United States paid the Bank on December 23, 1999 and June 27, 2002 the VECP I and VECP II royalties, plus interest, respectively, awarded by the ASBCA in litigation separate from and subsequent to the settlement agreement.

A review of the words of the second paragraph of the settlement agreement follows

the guidance set forth in the decision by the United States Court of Appeals for the Federal Circuit in Jowett, Inc. v. United States that:

> In interpreting a contract, we begin with the plain language. We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning. In addition, we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense.

Jowett, Inc. v. United States, 234 F.3d 1365, 1368 (Fed. Cir. 2000) (citations omitted); see also Hunt Constr. Group, Inc. v. United States, 281 F.3d 1369, 1372 (2002) ("We begin with the plain language when interpreting a contract . . . . The contract must be considered as a whole and interpreted to effectuate its spirit and purpose, giving reasonable meaning to all parts.") (citations omitted); Giove v. Dep't of Transp., 230 F.3d 1333, 1340-41 (2000) ("In addition, we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense. Further, business contracts must be construed with business sense, as they naturally would be understood by intelligent men of affairs.") (citations omitted)).

When the terms of a contract are clear and unambiguous, there is no need to resort to extraneous circumstances for its interpretation. See Sea-Land Serv., Inc. v. United States, 213 Ct. Cl. 555, 567, 553 F.2d 651, 658 (1977), cert. denied, 434 U.S. 1012 (1978). Construction of an unambiguous writing, therefore, is an appropriate matter for summary judgment. See Martin v. United States, 20 Cl. Ct. 738, 745 (1990); Kelley v. United States, 19 Cl. Ct. 155, 161 (1989). A written agreement is ambiguous when a plain reading of the contract could result in more than one reasonable interpretation. See also Metric Constructors, Inc. v. NASA, 169 F.3d 747, 751 (Fed. Cir. 1999); Grumman Data Sys. Corp v. Dalton, 88 F.3d 990, 997 (Fed Cir. 1996); A-Transport Northwest Co., Inc. v. United States, 36 F.3d 1576, 1584 (Fed. Cir. 1994) ("A contract is ambiguous only when it is susceptible to two reasonable interpretations."); Tacoma Dept. of Pub. Utils. v. United States, 31 F.3d 1130, 1134 (Fed. Cir. 1994) (citing Hills Materials Co. v. Rice, 982 F.2d 514, 516 (Fed. Cir. 1992)). It is not enough that the parties differ in their interpretation of the contract clause. See Cmty. Heating & Plumbing Co. v. Kelso, 987 F.2d 1575, 1578 (Fed. Cir. 1993). Nor may a court look to extrinsic evidence in determining whether a contract is ambiguous. See McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996); Tacoma Dep't of Pub. Utils. v. United States, 31 F.3d at 1134 ("Outside evidence may not be brought in to create an ambiguity where the language is clear."); Interwest Constr. v. Brown, 29 F.3d 611, 615 (Fed. Cir. 1994) ("Extrinsic evidence ... should not be used to introduce an ambiguity where none exists."). However, because an ambiguous or uncertain writing sometimes can only be understood upon consideration of the surrounding circumstances, extrinsic evidence will be allowed to interpret an ambiguous clause. See Sylvania Elec. Prods., Inc. v. United States, 198 Ct. Cl. 106, 126, 458 F.2d 994, 1005 (1972).

The government argues that the "right to pursue" language in the second paragraph

literally reserves only a right to pursue VECP claims. Using this interpretation of the language of the second paragraph, read separately from the rest of the settlement agreement, the government concludes that because there is only a reservation of a right to pursue VECP claims, the settlement agreement does not create an obligation to pay Mr. Bianchi without further action at the executive agency or in a judicial forum. The monetary obligation from the government on the two VECP claims was created by the later ASBCA decisions following plaintiff's decision to pursue those claims at the Board. The government also asserts that it is not required to pay Mr. Bianchi because the government has fulfilled its obligations by paying the VECP royalties to the Bank pursuant to the assignments that existed.

The "right to pursue" language in the second paragraph does not automatically require payment to Mr. Bianchi. Reading the contract as a whole, the language of the second paragraph is consistent with, but different from, the first and third paragraphs of the settlement agreement. In the first paragraph of the settlement agreement at the Board, the government agreed explicitly to pay Mr. Bianchi $617,500.00, plus interest, even though it knew about the financial arrangements that Mr. Bianchi had made with the Bank. See Bianchi I, 23 F.3d at 383-84. The third paragraph of the settlement agreement, like the first paragraph, includes language that required a direct payment to Mr. Bianchi by using the language "to recover." The second paragraph was the only one written without language requiring specific recovery by Mr. Bianchi. In the second paragraph of the settlement agreement, the government agreed only to give Mr. Bianchi the "right to pursue" his VECP claims, which did not also create an obligation to pay Mr. Bianchi absent further adjudication of his VECP claims. The assignment made to the Bank on the original military clothing contracts, however, also applied to any recovery achieved on any outstanding VECP obligations. The government argues, therefore, that it met its obligations when it paid the Bank after the ASBCA awards on the VECP claims.

Mr. Bianchi relies heavily on the Ninth Circuit's Bianchi II interpretation of the settlement agreement. Although this court is not making a determination of whether the government fulfilled the ASBCA's VECP judgment when it paid the Bank, it appears that Mr. Bianchi stretches the Ninth Circuit's interpretation of the settlement agreement to contend that the "right to pursue" requires payment to him directly. In its decision, reading the agreement as a whole, the Ninth Circuit rejected the distinction between a mere reservation of a right and a requirement to pay. The court, however, did not find that the "right to pursue" in paragraph two required a payment to Mr. Bianchi specifically. The Ninth Circuit in Bianchi II, acknowledging that "[n]ot a single one of the provisions is written in parallel phrasing with any other," interpreted the paragraphs in the settlement agreement as parallel with regards to the government's obligation to pay. Bianchi II, 140 F.3d at 1298. The Ninth Circuit, in discussing the "right to pursue" language in the third paragraph that is idential to that in the second paragraph, reasoned that:

> In the context of this dispute, the word "pursue" meant that Bianchi had to win an EAJA award, but once the award was established, the government would pay it. In private actions where there is a right to attorneys' fees,

> lawyers frequently agree to settle for a principal amount and to allow one side to pursue an attorneys' fees award, meaning that they will pay it once entitlement to attorneys' fees and amount are determined. Were an insurance defense lawyer to enter into such a settlement agreement on behalf of an insurance company, and then claim that they only promised to allow pursuit of the money, not to pay it, the best the lawyer and insurer could hope for would be long-term distrust, and more likely they could expect bad faith litigation. Giving the settlement agreement so strained construction would encourage sharp practice.

Bianchi II, 140 F.3d at 1298 (emphasis added). Certainly, it would be improper for the government to withhold payment without justification after a court with proper jurisdiction awards a judgment. The government in this case, however, has not withheld payment. The government paid the VECP royalties awarded by the ASBCA to the Bank to satisfy Mr. Bianchi's assignment and paragraph two of the settlement agreement did not explicitly create a second liability to Mr. Bianchi.

## CONCLUSION

Because Mr. Bianchi initially pursued his claim for VECP royalties at the ASBCA, under the election doctrine, this court is divested of jurisdiction to enforce the VECP amounts awarded by that Board. Moreover, even if this court had jurisdiction to review Mr. Bianchi's claims, the legal theories advanced by the plaintiff would be rejected by this court. The plaintiffs' case, therefore, is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** in accordance with this opinion.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**