# United States Court of Appeals for the Federal Circuit

06-5042

MAURICE L. BIANCHI,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

## JUDGMENT

ON APPEAL from the United States Court of Federal Claims

CASE NO.: 04-CV-440

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED.

ENTERED BY ORDER OF THE COURT

DATED JAN 29 2007

Jan Horbaly /JB

Jan Horbaly, Clerk

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

By: Judith Brown Date: 3/22/07

ISSUED AS A MANDATE: MAR 22 2007

# United States Court of Appeals for the Federal Circuit

06-5042

MAURICE L. BIANCHI,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Scott Michael Cantor, Graziadei & Cantor, Ltd., of Las Vegas, Nevada, argued for plaintiff-appellant.

Timothy P. McIlmail, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Donald E. Kinner, Assistant Director. Of counsel on the brief was Kathleen Hallam, Office of Counsel, Defense Supply Center, Philadelphia, of Philadelphia, Pennsylvania.

Appealed from: United States Court of Federal Claims

Judge Marian Blank Horn

# United States Court of Appeals for the Federal Circuit

06-5042

MAURICE L. BIANCHI,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

---

DECIDED: January 29, 2007

---

Before BRYSON and PROST, Circuit Judges, and SARIS, District Judge.*

PROST, Circuit Judge.

Plaintiff-Appellant, Maurice L. Bianchi, appeals the judgment of the United States Court of Federal Claims, which dismissed his suit for lack of subject matter jurisdiction. Bianchi v. United States, 68 Fed. Cl. 442 (2005). Because we hold that the court had jurisdiction over one of Bianchi's two claims, we affirm-in-part and reverse-in-part. With respect to the claim over which the court had jurisdiction, we remand with instructions to enter judgment in favor of the government.

---

* Honorable Patti B. Saris, District Judge, United States District Court for the District of Massachusetts, sitting by designation.

## I. BACKGROUND

This case has a long and tortuous history. In 1979 and 1980, the government awarded Bianchi three contracts to produce military clothing. To finance his performance of the contracts, Bianchi borrowed money from Bank of America (the "Bank") and assigned the proceeds and rights associated with each contract to the Bank as security for the loan. The Bank properly notified the government of its assignments under the Assignment of Claims Act. 31 U.S.C. § 3727; 41 U.S.C. § 15. Thereafter, the Bank received payments from the government of the money due under the contracts. In 1980 and 1981, the Bank loaned Bianchi additional money to fund performance of the contracts. These additional loans were guaranteed by the Small Business Administration ("SBA") and the collateral for the loans included a third lien on all receivables, including contract rights.

A dispute then arose between Bianchi and the government regarding Bianchi's performance under the contracts and the government terminated two of the contracts for default. Shortly thereafter, Bianchi defaulted on his loans from the Bank. The Bank applied to the SBA for payment on the guaranteed loans. In exchange for payment, the Bank assigned its interest in the guaranteed loans to the SBA.

In 1981, Bianchi brought a series of claims on the contracts before the Armed Services Board of Contract Appeals ("ASBCA"). In 1988, the government and Bianchi entered into an agreement to settle the ASBCA claims ("1988 settlement agreement"). The agreement provided, in pertinent part (emphases added):

> The parties to the [ASBCA] appeals agree to stipulate to the following decision by the Board:
>
> (1) <u>The parties agree that Mr. Maurice Bianchi, as the successor to M. Bianchi of California, is entitled to recover $617,500.00 on his claims</u> in

the following appeals: ASBCA Nos. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933, and 29934; that the government is entitled to take nothing on its claims in the following appeals: ASBCA Nos. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933, and 29934; that Mr. Bianchi is entitled to interest computed in accordance with Clauses L78 (Disputes (1979 MAR)) of the contracts, at the rates prescribed by the Secretary of the Treasury, under the Renegotiation Act, Public Law 92-41, on the principal amount of $617,500, such interest to run from June 19, 1981 until the date of payment; and that the parties waive their rights to seek reconsideration of this stipulated decision of the Board or to appeal that stipulated decision;

(2) This settlement is without prejudice to Mr. Bianchi's right to pursue any and all Value Engineering Change Proposal Claims under his contracts with DPSC; and

(3) This settlement is without prejudice to Mr. Bianchi's right to pursue an application under the Equal Access to Justice Act to recover whatever legal fees and litigation expenses to which he may be entitled in connection with these claims and appeals. The parties stipulate that the issues of prevailing party and substantial justification will be decided on the basis of the record made at the first trial. The parties agree that the application for legal fees and litigation expenses under the Equal Access to Justice Act will be submitted within thirty days of receipt by appellant of the agreed-upon settlement payment.

Except as noted, above, [Mr. Bianchi] and the government agree to stipulate to the dismissal of these appeals with prejudice.

The government paid Bianchi over $1.1 million pursuant to paragraph one of the 1988 settlement agreement ($617,500 plus interest from June 1981).

Two years later, the Bank filed suit against the government in the United States Claims Court arguing that, as Bianchi's contract assignee, it should have been paid the $1.1 million. The government, in turn, filed a third-party claim against Bianchi to recover the $1.1 million it had paid him. On appeal, this court held that the Bank, as Bianchi's contract assignee, was entitled be paid the amount awarded to Bianchi under the 1988 settlement agreement. Bank of Am. Nat'l Trust & Sav. Assoc. v. United States, 23 F.3d 380, 384 (Fed. Cir. 1994) ("Bianchi I"). The court further held that the SBA's security interests in the contracts were subordinate to the Bank's rights under the assignments,

and that the Assignment of Claims Act prohibited the government from setting off Bianchi's debts to the SBA against the money owed to the Bank. Id. at 384-85.

With respect to the government's third-party complaint against Bianchi, the court acknowledged that the terms of the 1988 settlement agreement barred the government from challenging its settlement with Bianchi. Accordingly, the court held that the government could not recover by way of a third-party complaint the $1.1 million it paid Bianchi under paragraph one of the 1988 settlement agreement. Id. at 383-84 ("The government's right to recoup erroneously paid funds cannot be invoked by the government as a means to circumvent a legal obligation.").

Meanwhile, before the Bank sued the government, Bianchi pursued a claim for Equal Access to Justice Act ("EAJA") legal fees as permitted by paragraph three of the 1988 settlement agreement. In September 1990, the ASBCA awarded Bianchi $475,724.51 in EAJA fees. The government, however, refused to pay. As a result, Bianchi filed a complaint in the nature of a writ of mandamus in the United States District Court for the District of Nevada seeking to compel payment. The case was eventually appealed to the Ninth Circuit. Bianchi v. Perry, 140 F.3d 1294 (9th Cir. 1998) ("Bianchi II"). On appeal, the government argued that it was entitled to set off the mistaken payment to Bianchi against the award of EAJA legal fees. The Ninth Circuit disagreed, holding that the government could not attempt to recover the erroneously paid funds by way of a setoff against Bianchi's EAJA award. Id. at 1299.

In addition to pursuing EAJA legal fees, Bianchi also pursued Value Engineering Change Proposal ("VECP") claims under the contracts, as permitted by paragraph two of the 1988 settlement agreement. In February 1993, the ASBCA awarded Bianchi

VECP royalties for one of the original contracts in the amount of $58,613.03 plus interest ("VECP I royalties"). Once again, Bianchi filed a complaint in the nature of a writ of mandamus in the District of Nevada seeking to compel payment by the government. The government interpleaded the Bank in order to avoid liability to both Bianchi and the Bank. The district court held that the Bank, as Bianchi's contract assignee, was entitled to the VECP I royalties, and the Ninth Circuit affirmed. Bianchi v. Walker, 163 F.3d 564 (9th Cir. 1998) ("Bianchi III"). Subsequently, the government paid the Bank $110,339.94 ($58,613.03 plus interest from November 1987).

One of Bianchi's arguments on appeal to the Ninth Circuit was that this court's holding in Bianchi I established that he was entitled to recover the VECP I royalties under the terms of the 1988 settlement agreement regardless of whether the government also owed those royalties to the Bank. The Ninth Circuit, however, held that the district court did not have jurisdiction to entertain this argument because it was, in essence, a breach of contract claim against the United States—the contract being the 1988 settlement agreement. Id. at 569 ("Because Bianchi seeks damages totaling more than $10,000 based on the [1988] settlement agreement, the complaint for a writ of mandamus should have been filed in the Court of Federal Claims.").

In December 2000, the ASBCA awarded Bianchi VECP royalties for a second of the original contracts in the amount of $16,574.74 plus interest ("VECP II royalties"). In June 2002, the government paid the Bank $44,807.02 ($16,574.74 plus interest from March 1988).

Bianchi filed this case in the Court of Federal Claims on March 18, 2004, alleging that he was entitled to payment of the VECP I and VECP II awards under the terms of

the 1988 settlement agreement. Both sides moved for summary judgment. On October 31, 2005, the court dismissed the case for lack of subject matter jurisdiction. Bianchi, 68 Fed. Cl. at 468. Although the court acknowledged that a settlement agreement is a contract and that it has jurisdiction over a contract dispute between a citizen and the government, it nevertheless characterized Bianchi's suit as an improper attempt to enforce ASBCA awards in the Court of Federal Claims. Id. at 450. In addition, the court held that it lacked jurisdiction over Bianchi's claim for payment of the VECP I royalties because that claim was time-barred. Id. at 452. Finally, the court addressed the merits of the case and stated that even if it had jurisdiction over Bianchi's claims, the government would be entitled to summary judgment. Id. at 464-68. Bianchi timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

Bianchi makes three arguments on appeal. First, he argues that because his claims are based upon a breach of the 1988 settlement agreement, the Court of Federal Claims erred in holding that it lacked jurisdiction. Second, he argues that the court erred in holding that his VECP I claim was time-barred. Finally, he takes issue with the court's determination that even if it had jurisdiction, summary judgment should be entered in favor of the government.

We review de novo whether the Court of Federal Claims properly dismissed the case for lack of jurisdiction. Bowen v. United States, 292 F.3d 1383, 1385 (Fed. Cir. 2002). Contract interpretation is also reviewed de novo. NVT Techs. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." R. Ct. Fed. Cl. 56(c).

A

Bianchi's first argument is that because his suit is based upon the government's breach of the 1988 settlement agreement, which is an express contract with the government, the Court of Federal Claims improperly dismissed the case for lack of jurisdiction. In response, the government acknowledges that the Court of Federal Claims has jurisdiction over a suit alleging a breach of contract. Nevertheless, the government argues that Bianchi's complaint is not well pled in that it makes no mention of a breach of contract theory. Instead, the government alleges, Bianchi's claim is really an improper attempt to enforce decisions of the ASBCA.

With respect to the government's contention that Bianchi's complaint is insufficient, "[a]ll that Rule 8(a)(2), [R. Ct. Fed. Cl.] (comparable to Rule 8(a)(2), Fed. R. Civ. P.), requires 'is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Gould v. United States, 935 F.2d 1271, 1276 (Fed. Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Here, Bianchi's complaint sets forth the language of the 1988 settlement agreement and states that his claims for payment of the VECP awards "arise under" that agreement. The complaint also cites the Ninth Circuit's opinion in Bianchi III and states that "the Court of Appeals [for the Ninth Circuit] held that only the Court of Federal Claims can resolve the issue as to whether or not the United States Government is liable to pay Bianchi for his Value Engineering Change Proposal awards." Although the remainder of the complaint is hardly a model of clarity, we view

the above-quoted statements as sufficient to support Bianchi's breach of contract claim under a notice pleading standard.

We further hold that the Court of Federal Claims had jurisdiction over Bianchi's claims to the extent that they allege a breach of the 1988 settlement agreement by the government. The Tucker Act confers jurisdiction upon the Court of Federal Claims for "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). On appeal, the parties do not dispute that the 1988 settlement agreement is an express contract between Bianchi and the government and that breach of the contract by the government gives rise to jurisdiction in the Court of Federal Claims. We agree. See Massie v. United States, 166 F.3d 1184, 1188-89 (Fed. Cir. 1999) (upholding jurisdiction in the Court of Federal Claims for a suit alleging breach of a settlement agreement by the United States). Thus, we conclude that the Court of Federal Claims had jurisdiction to the extent that Bianchi alleges a breach of the 1988 settlement agreement. Because we hold that the Court of Federal Claims had jurisdiction over the breach claims, it is necessary to reach the court's alternative holdings with respect to the VECP I and VECP II awards.

B

Next, Bianchi argues that the Court of Federal Claims erred in holding that it did not have jurisdiction over his claim for the VECP I royalties because it held that the claim was time-barred. He argues that the government breached the 1988 settlement agreement in 1999 when the government paid "his" VECP I royalties to the Bank after

the Ninth Circuit's decision in Bianchi III. Thus, he contends, his suit is timely because it was filed in 2004, within six years of the government's breach. We agree with the Court of Federal Claims, however, and hold that Bianchi's claim for the VECP I royalties is time-barred.

Section 2501 of Title 28 states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." The six-year statute of limitations set forth in § 2501 is a jurisdictional requirement. Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988). "A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)).

With respect to Bianchi's claim for the VECP I awards, all events had occurred to fix the government's alleged liability by 1993. In that year, the ASBCA determined the amount of the VECP I royalties. Bianchi contends that his right to these royalties arises under the settlement agreement executed in 1988. Thus, any entitlement Bianchi had for payment of the VECP I royalties pursuant the 1988 settlement agreement had accrued by 1993. Because Bianchi's suit was filed in 2004, more than six years after his claim accrued, the Court of Federal Claims properly held that Bianchi's claim for the VECP I royalties was barred under § 2501.

In so holding, we reject Bianchi's contention that his claim for the amount of the VECP I royalties did not arise until 1999, when the government paid these royalties to the Bank after Bianchi III. In our view, it should not matter if the government paid the Bank the money in 1993 or 1999 or never at all. Under Bianchi's breach of contract theory, he was entitled to be paid the money regardless of whether the government also paid the Bank because his claim is necessarily premised on the argument that the government amassed a dual liability to himself and the Bank as a result of the 1988 settlement agreement. Accordingly, the government's payment to the Bank of the VECP I royalties in 1999 had no bearing on Bianchi's claim for these royalties under the 1988 settlement agreement. Thus, we hold that this claim is time-barred.[1]

C

Because we affirm the Court of Federal Claims' determination that it lacked jurisdiction over the VECP I claim, only Bianchi's claim for the VECP II royalties remains. Although the court dismissed this claim for lack of jurisdiction, it went on to address the merits and determined that even if it had jurisdiction over Bianchi's claim, the government would be entitled to summary judgment. On appeal, both parties agree that there are no material facts in dispute and the case need not be remanded back to the Court of Federal Claims. Accordingly, we address Bianchi's argument that the court erred in determining that the government was entitled to summary judgment on his VECP II claim.

---

[1] Although Bianchi raised tolling arguments below, the court rejected these arguments. Bianchi has not raised any tolling arguments on appeal.

The essence of Bianchi's argument on appeal is that both this court's holding in Bianchi I and the Ninth Circuit's holding in Bianchi II are res judicata. He argues that these prior cases conclusively established that the 1988 settlement agreement required the government to pay any VECP awards obtained under the original contracts to Bianchi personally. We disagree.

Bianchi I dealt with paragraph one of the 1988 settlement agreement, which states that "Mr. Maurice Bianchi . . . is entitled to recover $617,500.00 [plus interest] on his claims." In that case, this court held that it would be an impermissible attack on the settlement agreement for the government to recoup the money it had paid Bianchi under paragraph one of that agreement. Bianchi I, 23 F.3d at 383-84. Unlike Bianchi I, this appeal relates to paragraph two of the settlement agreement, which states that "[the] settlement is without prejudice to Mr. Bianchi's right to pursue any and all Value Engineering Change Proposal Claims under his contracts." The meaning of this paragraph was not decided in Bianchi I. Accordingly, we reject Bianchi's argument that Bianchi I is res judicata. See Bianchi III, 163 F.3d at 569 ("Bianchi's contention that the Government was required to pay the money due on the VECP claims was not presented to the Court of Federal Claims or the Federal Circuit in [Bianchi I]. Therefore, Bianchi's reliance on the doctrine of res judicata is misplaced.").

Bianchi's reliance on Bianchi II is also misplaced. In Bianchi II, the Ninth Circuit dealt with paragraph three of the settlement agreement and held that the government could not use its mistaken payment to Bianchi as a setoff against Bianchi's EAJA legal fees. 140 F.3d at 1299. In so holding, the Ninth Circuit stated: "Any honest and competent lawyer would understand this settlement agreement in the same way. It

means Bianchi gets $617,500 plus interest, plus whatever he can win on his 'Value Engineering Change Proposal claims,' plus whatever he can win on his Equal Access to Justice Act claim." Id. at 1297. Bianchi latches on to this language from Bianchi II to argue that Bianchi II conclusively determined his personal entitlement to any VECP awards obtained under the original contracts.

The above-quoted language from Bianchi II, however, must be read in context. Bianchi II did not determine Bianchi's personal entitlement to VECP awards under paragraph two of the 1988 settlement agreement. Instead, that case dealt with Bianchi's entitlement to EAJA legal fees, which Bianchi was permitted to pursue under paragraph three of the agreement. Moreover, Bianchi II was about setoff: there, the Ninth Circuit held that the government could not set off its mistaken payment to Bianchi against Bianchi's EAJA legal fees award. This case, in contrast, is not about setoff: here, the government is not trying to set off its mistaken payment to Bianchi against the VECP awards. Instead, the government argues that it paid Bianchi the VECP awards when it paid the Bank, Bianchi's designated contract assignee. Consequently, Bianchi II is inapposite.

Paragraph two of the settlement agreement merely reserved Bianchi the right to pursue VECP claims under the original contracts. Bianchi did pursue these claims and won. Subsequently, the government paid Bianchi by paying the Bank, whom Bianchi

had designated as his contract assignee.[2] We see no basis for interpreting paragraph two of the settlement agreement to require the government to also pay Bianchi personally. We therefore remand with instructions to enter judgment in favor of the government with respect to Bianchi's VECP II claim.

III. CONCLUSION

For these reasons, the judgment of the Court of Federal Claims is affirmed-in-part, reversed-in-part, and remanded.

AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: Judith Baum Date: 3/22/07

---

2 Bianchi devotes much of his reply brief to arguing that the Bank's assignments had been discharged and that the government erroneously paid the VECP awards to the Bank. Bianchi is precluded from relitigating this issue, however, because it was litigated and decided in Bianchi III. There, the Ninth Circuit affirmed the district court's determination that the Bank's assignments had not been discharged and the Bank, as Bianchi's contract assignee, was entitled to payment of the amount owed by the government on Bianchi's VECP claim. Bianchi III, 163 F.3d at 570.